## UNITED STATES DISTRICT AND BANKRUPTCY COURTS
## FOR THE DISTRICT OF COLUMBIA

**STEVEN H. HALL**
**7141 CHESAPEAKE VILLAGE BLVD**
**CHESAPEAKE BEACH, MARYLAND 20732**
**(301) 801-6506**
**Plaintiff in Pro Per**
                  **Plaintiff,**

                  **vs.**

| |
|---|
| Case: 1:16-cv-01471          (F-Deck) |
| Assigned To : Boasberg, James E. |
| Assign. Date : 7/15/2016 |
| Description: Pro Se Gen. Civil   Jury Demand |

**DEPARTMENT OF HOMELAND SECURITY (DHS)**

**Letitia Byers,**
**245 Murray Lane, SW,**
**Mail Stop 0485**
**Washington, DC 20528**
**(202) 447-3507**

**FEDERAL EMPLOYEES LEGAL SERVICE CENTER (FELSC)**

**Rosemary Dettling**
**1629 K Street, NW, Suite 300**
**Washington, DC 20006**
**(202) 390-4741**

**Joanne Dekker**
**16848 Hamilton Station Road**
**Hamilton, VA 20158**
**(540) 338-4841**
                  **Defendants.**

RECEIVED
Mail Room

JUL 15 2016

Angela ...
U.S. District Court, District of Columbia

**DEMAND FOR JURY TRIAL**

## COMPLAINT FOR DAMAGES PURSUANT TO 42 USC 1983

## COMPLAINT FOR MISREPRESENTATION, LACK OF COMPETENT REPRESENTATION, ADMINISTRATIVE ERRORS, COERCION, FRAUD TO DECEIVE, NEGLECTING AGE DISCRIMINATION, AND MEDICAL HEALTH AND MENTAL STRESS, AND DENIED REASONABLE ACCOMMODATIONS, AND CIVIL RESTORATION RIGHTS

Plaintiff Steven Hall has met the criteria set forth in 5 C.F.R. 1201.115 and files this complaint

for misrepresentation against Ms. Letitia Byers, Department of Homeland Security (DHS)

attorney and lack of competent representation against Ms. Rosemary Dettling and Ms. Joanne

Dekker, Federal Employees Legal Services Center attorneys. Also, files this complaint

regarding administrative errors, coercion, fraud to deceive, and neglecting age discrimination,

medical, and mental stress to include anxiety and depression, and for being denied twice

reasonable accommodations and civil restoration rights. On June 23, 2016, my Petition for

Review was dismissed as nonprecedential by the Merit System Protection Board (MSPB).

**(Exhibit A).**

### THE PARTIES

1.      Letitia Byers, DHS attorney responsibilities, and duties were to represent DHS

with honesty and integrity under the laws of the Federal government and DC Bar Rules and

Professional Conduct while negotiating with my former FELSC attorneys termination and

removal of me from Federal service. Ms. Byers email address is Letitia.Byers@HQ.DHS.gov,

DHS General Counsel for Labor Employment and General Law and her contact number is

2

(202) 447-3507 and facsimile (202) 447-3111.

2.     Rosemary Dettling, FELSC attorney responsibilities, and duties were to represent

me with honesty, integrity, and competence under the laws of the Federal government and DC

Bar Rules and Professional Conduct while negotiating with DHS attorney termination and

removal of me from Federal service.  Ms. Dettling email address; RDettling@FELSC.com and

her contact number is (202) 390-4741 and facsimile is (202) 379-9772.

3.     Joanne Dekker, FELSC attorney responsibilities, and duties were to represent

me with honesty, integrity, and competence under the laws of the Federal government and the

DC Bar Rules and Professional Conduct while negotiating with DHS attorney termination and

removal from Federal service.  FELSC attorney email address; JDekker@FELSC.com and her

contact numbers are (540) 338-4841, (703) 447-1988, and facsimile is (202) 379-9772.

## JURISDICTION AND VENUE

4.     This court has jurisdiction under 28 U.S.C 1331 and 1338(a).   Federal question

jurisdiction arises pursuant to 42 U.S.C. 1983.  Venue is proper pursuant to 28 U.S.C.1391

because the defendant  is a Federal government agency, and this complaint arose in this district.

## FACTUAL BACKGROUND

5.     I am a 50 year-old African-American male that is a Veterans Affairs Service-

connected Disabled Veteran and is currently employed with the Department of Navy at the

Washington Navy Yard (WNY).  Before the WNY, I worked for the Department of Homeland

Security from August 2, 2010 through November 18, 2013.  From August 2, 2012 through

August 28, 2012 and from February 19, 2013 through February 26, 2013, I was in a

performance of duty at the St. Elizabeth's construction site.  The noxious working environment

at St. Elizabeth's exacerbated my pre-existing Reactive Airway Disease (RAD) to include

diabetes and sleep apnea.  Around April 19, 2013, my former DHS Management (MGMT)

supervisor did not inform the Office of Workers' Compensation Programs (OWCP) that

outside/outdoors air quality test results/information for HMD1, HMD2, Security trailers, and

Hitchcock Hall (Bldg.37) were not provided to me.  Also, amorphous debris (dust) was not

mentioned in DHS MGMT Air Quality Sample Report (AQSR) for HMD1 and Hitchcock Hall

(Bldg.37).  (**Exhibit B**).  My DHS MGMT supervisor continued to charge me AWOL and

this resulted in me being removed from the Federal service on November 18, 2013.  Prior to

the Prehearing Conference, from June 2015 to November 19, 2015, Ms. Byers did not

schedule meetings or teleconferences with Ms. Dettling and Ms. Dekker to discuss the Older

Workers Benefits Protection Act (OWBPA); age discrimination, nor discussed air quality test

results/information.  Had Ms. Byers contacted Ms. Dettling and myself, a clear understanding

would have been established and would have eliminated any confusion regarding the outdoors

air quality test results/information.  All AWOL charges could have been nullified, and this

would have changed the outcome at the prehearing conference with the MSPB Administrative

Judge (AJ). Ms. Byers ultimate concern was to handle and collect an alleged workers'

compensation overpayment. (**Exhibits C**). Day of the Prehearing Conference, on November

20, 2015, Ms. Byers did not explain the OWBPA and Ms. Dekker was not familiar with the

OWBPA. Ms. Dettling was not available prior or during the prehearing conference. Also, Ms.

Dettling was not available to negotiate with Ms. Byers a more equitable amount of damages

regarding two MSPB and more than six EEOC cases, and a "clean paper" that would have

nullified the termination from my permanent record. After the Prehearing Conference, from

November 21-22, 2015, Ms. Byers and Ms. Dekker did not fully explain to me the OWBPA in

detail. Ms. Dettling asked via text message if I had raised age discrimination in any of my

cases and indicated that my age would slow down the agreement and allow me time to think

about it before its final. (**Exhibit D**, pg 15). Prior to signing Agreement 1, Ms. Byers and Ms.

Dettling did not inform me that I would not be able to back out of the Agreement. Prior and

after signing the Agreement, from November 23-30, 2015, DHS and FELSC attorneys

deceived, coerced, and misled me into involuntary signing Agreement 1. DHS and FELSC

attorneys were aware that I was at work in and out of meetings and not able to dispute or re-sign

Agreement 2. (**Exhibits E, F, G**). First most disturbing factor, Ms. Byers and Ms. Dettling was

aware that Ms. Dekker provided me Agreement 1 with several errors for which did not include

the OWBPA statement.  Second most disturbing factor, my original signature from Agreement

1 was photocopied.  Third most disturbing factor, Ms. Byers received Agreement 2 from Ms.

Dekker and it was signed immediately and provided to MSPB AJ as the final Agreement 3 for

review and execution into the record.  My original signatures are identical in Agreements 1, 2,

and 3 and Ms. Dekker's signatures are identical in Agreements 2 and 3.  DHS and FELSC

attorneys corroborated and collaborated in misrepresentation, lack of competent representation,

coercion, and fraud to deceive an MSPB AJ.  Mr. Kenneth R. Kent contended that the

Department of the Air Force procured his acceptance of the Agreement by fraud.  (See Kenneth

R. Kent v. Air Force, 2013-3034).  All emails and text messages confirm that I was not

adequately informed about the OWBPA.  Ms. Dekker provided me the unrevised Agreement

without the OWBPA statement several times to review and sign.  Ms. Dekker faxed a copy of

Agreements 1to me and Agreement 2 to Ms. Byers.  (**Exhibit E, F, G**).  Misrepresentation by

Ms. Byers and lack of competent representation by Ms. Dekker overlooked the fact that I was in

compliance and under contract with Agreement 1.  Agreement 1 is the only valid Agreement,

and my request to revoke it should have been granted by MSPB.  My signatures in Agreements

2 and 3 are not valid and should have been nullified by MSPB.  There is much ambiguity

regarding the Agreement based on the understandings between Ms. Byers and Ms. Dettling was

that I had 7-days to think before signing the agreement.  Ms. Byers and Ms. Dettling

understandings contradicted Agreements 2 and 3 for which paragraph 1.g clearly states; "*he may revoke this Agreement at any time within seven (7) days after signing it.*"   Overall, the final Agreement 3 allowed Ms. Byers to saved her agency several thousands of dollars in damages regarding two MSPB and more than six EEOC cases at that time.   Again, ambiguity is that DHS and FLSC attorney emails and text messages confirms that they were not communicating and highlighted the fact that FELSC attorneys did not fully understand the specific guidelines of the OWBPA. The faxing and emailing of the Agreement resulted in several administrative errors, coercion, and fraud to deceive.   MSPB, Office of the Clerk Board was biased for neglecting and not acknowledging paragraph 1g of the final Agreement 3 that stated I could have revoked the Agreement "at anytime" within seven (7) days after signing it.   From November 23-30, 2015, DHS and FELSC attorneys refuse to meet with me face-to-face and discuss the fraudulent Agreement that negatively impacted my career and quality of life.   Ms. Dekker mentioned over the phone several times quote; "*DHS don't want you back*" and that I was prohibited from entering all DHS facilities due to false statements regarding an alleged threat made by me.   I recently discovered that my picture and information was recycled back on to a secret DHS Do Not Admit  List at the Nebraska Avenue Complex.   (**Exhibit K**).  Ms. Dekker erred by not reading Agreement 1 that did not include the OWBPA statement and she continued to fax the Agreement.  Ms. Byers and Ms. Dekker did not schedule conference meetings and

teleconferences, or make sure I had fully understood the Agreement, nor allowed me time to

dispute or re-sign the revised Agreement 2 while I was at work.  I had realized that Ms. Dettling

and Ms. Dekker were not following all necessary administrative procedures and legal protocol

by allowing misrepresentation from Ms. Byers.   The executed Agreement 3 in the MSPB

record confirms that my signatures are identical in Agreements 1, 2, and 3.  MSPB neglected

the fact that DHS and FELSC attorneys misled me and deceived the MSPB AJ, and this resulted

in my case being dismissed as nonprecedential.  The lack of competent representation

influenced me to part ways with FELSC attorneys.  The final Agreement 3 guaranteed FELSC

attorneys another $30K in attorney fees totaling $60K for which Agreement 3 is not valid due to

administrative errors, ambiguity, coercion, deception, and fraud to deceive by DHS and FELSC

attorneys named in this complaint.  I have provided a substantial amount of evidence and

information and have met the criteria set forth in 5 C.F.R. 1201.115 regarding the fraudulent

Agreement.

## CLAIM I
## MISREPRESENTATION UNDER 34 C.F.R., SECTIONS 668.71-74

6.     Ms. Byers concealed vital information from an MSPB AJ regarding a biased,

untimely, and inconclusive outdoors Air Quality Tests (AQT) results/information that was not

provided to me around April 19, 2013.  This resulted in OWCP refusing to process my CA-7

claims for workers compensation benefits from March 30, 2013 to October 18, 2013 and this allowed my DHS supervisor to continue charging me AWOL.  On November 18, 2013, I was unjustifiably removed from the Federal service.  From June 2015 to the present date, Ms. Byers attempted to handle and collect an alleged workers' compensation benefits overpayment to justify that my former supervisors correctly charged me AWOL.  (**Exhibit C**).  Ms. Byers misstatements of facts protected her from being investigated due to a conflict of interest, fraud to deceive, and concealing vital information from an MSPB AJ.  Prohibited personnel practices saved DHS several thousands of dollars in damages due to misrepresentation.

**CLAIM II**
**LACK OF COMPETENT REPRESENTATION UNDER RULES AND**
**PROFESSIONAL CONDUCT**

7.    Ms. Dettling failed to make herself available during the prehearing conference on November 20, 2015, but directed Ms. Dekker to represent me for which the MSPB AJ noticed incompetence from Ms. Dekker during the prehearing conference.  Ms. Dekker demanded that I sign a promissory letter to not seek future employment with DHS, rather than negotiate with Ms. Byers a more equitable Agreement or work out a return to gainful employment.  Also, Ms. Dettling negotiated via email to Ms. Byers that I would not seek future employment with DHS for which was never true.  Ms. Dekker photocopied my original signature from Agreement 1 and sign it, then forwarded Agreement 2 to Ms. Byers to sign.  The final Agreement 3 was

forward to the MSPB AJ to review and was place into the record as the final executed

Agreement.  Ms. Dekker was aware that I was not able to review or sign Agreement

2 while I was at work.  Agreement 3 guaranteed FELSC attorneys additional $30K in fees for a

lack of competent representation.

## CLAIM III
## COERCION AND ENTICEMENT UNDER 42 C.F.R. 3617 AND 18 U.S.C 2422

8.      Ms. Byers, Ms. Dettling, and Ms. Dekker did not adequately explain the OWBPA

statement prior, during, or after the prehearing conference.  On November 23, 2015, Ms. Byers

pressured Ms. Dettling and Ms. Dekker to coerce and entice me into involuntary signing the

fraudulent Agreement 1 that did not include the OWBPA statement.  Ms. Dettling indicated that

I had 7-days to make a decision while Ms. Dekker reminded me via text message that the

deadline was near.  (**Exhibit D**).  Ms. Dekker under the direction of Ms. Dettling provided me

the fraudulent Agreements 1 that did not include the OWBPA statement.  Ms. Dekker

forwarded the fraudulent Agreement 1 to Ms. Byers to sign, both knowingly that they were

committing fraud.  However, coercion and enticement were a strategy that saved DHS several

thousands of dollars in damages and guaranteed FELSC attorneys an additional $30K in

attorney fees totaling $60K.

## CLAIM IV
## FRAUD TO DECEIVE UNDER RULES AND PROFESSIONAL CONDUCT

9.    Ms. Byers erred by not pay attention to detail, and this resulted in providing

Ms. Dekker Agreement 1 that included several administrative errors to include duplicated

paragraphs 3j, 4, 5, 6 and did not include the OWBPA statement.  Ms. Dekker was aware that I

had only signed Agreement 1 and that she fail to immediately provide me the revised

Agreement 2 that included the OWBPA statement.  Ms. Dekker quickly provided the revised

Agreement 2 to Ms. Byers for her signature.  Ms. Byers signed it and forwarded Agreement 3 to

the MSPB AJ for execution into the record.  My original signature under Agreement 1 is valid,

my signatures under Agreements 2 and 3 were photocopied and are not valid because I was not

able to dispute or re-sign Agreements 2 while at work.  DHS and FELSC attorneys corroborated

and collaborated in coercion and fraud to deceive and misled me and the MSPB AJ.

## CLAIM V
## VIOLATION OF AMERICAN DISABILITY ACT OF 1990 AND 1991 UNDER 28 CFR PART 35 AND 28 CFR PART 36

10.    DHS and FELSC attorneys were aware that my age was more than 40 years-old

due to the fact that I had entered the military at age 17 and completed 24 years of honorable

service in the United States Navy.  I provided Ms. Dettling several pages of medical and mental

stress documentation that confirmed me as a service-connected disabled veteran with a 90

percent disability rating.  DHS and FELSC attorneys were aware of my medical and mental

stress; anxiety and depression was the ultimate reason for my absence from work that led to me

being removed from the Federal service.  DHS and FELSC attorneys were aware that I was

prescribed medications to include Metformin HCL 1000mg (Diabetes), Bupropion HCL

1000mg (anxiety and depression), Simvastatin 80mg (High Cholesterol), Quetiapine Fumarate

100mg (sleep disorder), and respiratory inhalers due to a noxious working environment at St.

Elizabeth's construction site.  DHS and FELSC attorneys did not follow administrative

procedures or legal protocol when it was known that my age was over 40 years-old.

## CLAIM VI
## VIOLATION OF RESTORATION CIVIL RIGHTS  UNDER 5 USC 8151; 5 CFR 302, 5 CFR 330, 5 CFR 353.301, AND 5 CFR 353.401

11.  From March 30, 2013 to April 26, 2013, OWCP refused to process my CA-7 claim for

benefits and this resulted in my DHS MGMT supervisor indefinitely suspending me on May 28,

2013.  DHS MGMT failed to determine if I had partially or fully recovered from my RAD

conditions, nor assisted me by providing rehabilitation that would help me return to gainful

employment.  DHS MGMT never complete forms CA-16, CA-17, CA-20, or provide me an

Eligibility Job Offer letter.  DHS MGMT refused to make any reasonable efforts to place me

back in my former or equivalent job position according to 20 CFR 10.505.  DHS MGMT had

two vacant job positions located at 650 Mass Avenue and Nebraska Avenue Complex and there

were several vacant job positions in other components throughout DHS.  Ms. Byers was aware

that the DHS Disability Program Manager confirmed me as an "individual with a disability" on

October 15, 2012 and a "qualified individual with a disability" on May 13, 2013.  (**Exhibit H**).

DHS attorney misrepresentation and FELSC attorneys lack of competent representation fail

to acknowledge that DHS MGMT employees violated my Title VII rights to include the

American Disability Act, Rehabilitation Act, denied me twice adequate reasonable

accommodation, and denied me civil restoration rights.

## CLAIM VII
## VIOLATION OF ADMINISTRATIVE PROCEDURES ACT
## UNDER 5 USC 552, 552(a)(b), 553, AND 556

6.    Around April 19, 2013, DHS Management (MGMT) did not inform OWCP that

outdoors Air Quality Tests (AQT) test results/information were not provided to me.  From April

29, 2013 to June 9, 2013, DHS MGMT manipulated and deceived OWCP and this resulted in

my CA-7 claim for benefits not being processed and this violated OWCP administrative

guidelines to process my claim according to OWCP internal procedures and Federal Employees

Compensation Act (FECA) guidelines.  On May 8, 2013, DHS MGMT fail to inform OWCP

that the AQSR was biased, untimely, and inconclusive.  DHS MGMT AQSR did not mention

outdoors air quality test results/information for HMD1, HMD2, Security trailers, nor did it

mention amorphous debris (dust) for HMD1 trailer and Hitchcock Hall (Bldg.37) at the St.

Elizabeth's construction site in August 2012 and February 2013. To the present date, DHS

MGMT never provided OWCP outdoors air quality test results/information regarding

amorphous debris (dust). This was manipulation and deception by DHS MGMT to justify

charging me AWOL that resulted in me being unjustifiably removed from the Federal service

on November 18, 2013. (**Exhibit I**). Ms. Byers was aware that DHS MGMT employees

concealed vital information from OWCP in an effort to remove me from Federal service. These

prohibited personnel practices influenced Ms. Byers to request from OWCP to handle and

collect alleged workers' compensation benefits payments. (**Exhibit C**). DHS and FELSC

attorneys corroborated and collaborated as a team to provide the MSPB AJ a fraudulent

Agreement. (**Exhibit J**).

## REQUEST FOR RELIEF

12.    For the above reasons, I Steven Harold Hall respectfully request that this United

States District and Bankruptcy Courts grant the following relief in my favor and against DHS

and FELSC attorneys:

13.    I am requesting revocation of settlement Agreements 1, 2, and 3 dated November

23, 2015 that were executed by MSPB around November 30, 2015.

14.    Requesting loss salary as a GS-12 Step 4 Federal employee totaling $82, 359.00.

15.    Requesting loss salary as a GS-12 Step 5 Federal employee totaling $83,183.00.

16.    Requesting $500,000.00 for emotional and mental stress abuse.

17.    Requesting $1,000, 000.00 for misrepresentation from DHS attorneys and lack of competent representation by FELSC attorneys.

18.    Requesting $60, 000.00 for coercion and enticement and fraud to deceive.

19.    Requesting $500, 000.00 for violating the Administrative Procedures Act.

20.    Requesting $500, 000.00 from FELSC for neglecting and DHS for violating my Title VII, Civil Rights to include the American Disability Act and Rehabilitation Act as mentioned previously and for denying me twice adequate reasonable accommodations.

## DEMAND FOR JURY TRIAL

21.    My exhibits supports this complaint, and I am requesting a jury trial regarding my complaints and request for $2,725,542.00 dollars in total damages from DHS and FELSC.

Date:  July 14, 2016

By: Steven H. Hall

Plaintiff in Pro Per

# UNITED STATES OF AMERICA
## MERIT SYSTEMS PROTECTION BOARD

STEVEN H. HALL,
              Appellant,

v.

DEPARTMENT OF HOMELAND
   SECURITY,
              Agency.

DOCKET NUMBER
DC-0752-14-0243-I-1

DATE: June 23, 2016

## THIS FINAL ORDER IS NONPRECEDENTIAL[1]

Steven H. Hall, Chesapeake Beach, Maryland, pro se.

Letitia Byers, Washington, D.C., for the agency.

### BEFORE

Susan Tsui Grundmann, Chairman
Mark A. Robbins, Member



RECEIVED
Mail Room

JUL 1 5 2016

Angela ? ... ... U.S. District Court District of Columbia

### FINAL ORDER

¶1      The appellant has filed a petition for review of the initial decision, which dismissed the removal appeal as settled.  Generally, we grant petitions such as this one only when:  the initial decision contains erroneous findings of material fact; the initial decision is based on an erroneous interpretation of statute or

---

[1] A nonprecedential order is one that the Board has determined does not add significantly to the body of MSPB case law.  Parties may cite nonprecedential orders, but such orders have no precedential value; the Board and administrative judges are not required to follow or distinguish them in any future decisions.  In contrast, a precedential decision issued as an Opinion and Order has been identified by the Board as significantly contributing to the Board's case law.  See 5 C.F.R. § 1201.117(c).

Exhibit A

regulation or the erroneous application of the law to the facts of the case; the administrative judge's rulings during either the course of the appeal or the initial decision were not consistent with required procedures or involved an abuse of discretion, and the resulting error affected the outcome of the case; or new and material evidence or legal argument is available that, despite the petitioner's due diligence, was not available when the record closed.  Title 5 of the Code of Federal Regulations, section 1201.115 (5 C.F.R. § 1201.115).   After fully considering the filings in this appeal, we conclude that the petitioner has not established any basis under section 1201.115 for granting the petition for review. Therefore, we DENY the petition for review and AFFIRM the initial decision, which is now the Board's final decision.  5 C.F.R. § 1201.113(b).

## DISCUSSION OF ARGUMENTS ON REVIEW

¶2        The appellant appealed his removal from the position of Administrative Specialist for misconduct.  Initial Appeal File (IAF), Tab 1.  The administrative judge issued an initial decision dismissing the appeal as settled.  IAF, Tab 30, Initial Decision (ID).   The initial decision notes that the appellant timely requested to revoke the settlement agreement and subsequently rescinded the revocation.  ID at 1 n.1.

¶3        The appellant has filed a petition for review raising issues concerning the merits of his appeal and alleging, among other things, that the settlement agreement is invalid because both parties' representatives misled him to believe he could revoke it within 7 days of its execution and that the administrative judge was biased.  Petition for Review (PFR) File, Tab 1.  The agency has filed a response arguing that the petition for review should be dismissed pursuant to the settlement agreement.  PFR File, Tab 3.

¶4        A settlement agreement is a contract between the parties and, as such, may be set aside or voided only on the basis of certain limited grounds, including fraud, coercion, or mutual mistake.  *Woodjones v. Department of the Army*,

2                                                                    EX A

89 M.S.P.R. 196, ¶ 11 (2001).  The party challenging the validity of a settlement agreement bears a heavy burden.  *Id.*  An appellant's mere post-settlement remorse or change of heart cannot serve as a basis for setting aside a valid settlement agreement.  *Thompson v. Department of Veterans Affairs*, 52 M.S.P.R. 233, 237 (1992).

¶5          Under the Older Workers Benefit Protection Act (OWBPA), the waiver of an Age Discrimination in Employment (ADEA) claim is not considered knowing and voluntary unless it meets certain criteria, including allowing the employee 7 days to revoke the agreement.  29 U.S.C. § 626(f).  It is undisputed that the appellant did not raise an age discrimination claim in the Board appeals or equal employment opportunity complaints settled by the agreement.  PFR File, Tab 1 at 3, 6-7, Tab 3 at 14.  The parties' agreement states, in relevant part, "[a]ppellant acknowledges that he was further advised that he may revoke this Agreement at any time within seven (7) days after signing it." IAF, Tab 26 at 6.

¶6          The agency argues that the 7-day revocation period provision was "inapplicable" to the appellant and of no consequence.  PFR File, Tab 3 at 14.  We do not agree.  In construing a contract, we look first to the terms of the agreement itself.  *Greco v. Department of the Army*, 852 F.2d 558, 560 (Fed. Cir. 1988).  The agency may have intended for the revocation period to only apply if the appellant claimed that he had been discriminated against based on age, but the settlement agreement does not set any such limit, and the Board cannot add it after the fact.  Only if there is some ambiguity should parol evidence be considered.  *Id.*  There is no ambiguity in the terms of this agreement.  The fact that the OWBPA only requires a 7-day revocation period in agreements settling claims brought under the ADEA is irrelevant because the settlement agreement at issue includes a 7-day revocation period.  *See Jackson v. Department of the Army*, 123 M.S.P.R. 178, ¶¶ 7-12 (2016).  The appellant states, "I had signed the settlement agreement based on the understanding that I could revoke the agreement seven days after signing it according to the Older Workers' Benefit

EX A

Act." PFR File, Tab 1 at 6. Thus, the revocation provision was material to the appellant's decision to sign the settlement agreement. *Jackson*, 123 M.S.P.R. 178, ¶ 10. Based on the plain language of the agreement, the appellant could have revoked the settlement agreement within 7 days of signing it.

¶7    The appellant alleges that he signed the settlement agreement because he was misled by the administrative judge, his representative, and the agency's representative. PFR File, Tab 1 at 7. A settlement agreement may be invalid if the appellant shows that the agreement was based on misrepresentation by the agency. *Hamilton v. Department of Veterans Affairs*, 92 M.S.P.R. 467, ¶ 19 (2002). On the issue of misrepresentation, it is sufficient to show that a reasonable person would have been misled by the statements. *Id.*

¶8    The appellant was not misled. As discussed above, the appellant must have understood that he could revoke the settlement agreement within 7 days because he requested to revoke the agreement. ID at 1 n.1; IAF, Tab 28. That revocation would have cancelled the settlement agreement. However, after a conference call with the administrative judge and the agency's representative, the appellant rescinded his revocation stating, "I wish to go forward with the agreement after carefully considering my options." IAF, Tab 29. Therefore, the appellant's revocation is no longer in effect, and the parties are bound by the terms of the settlement agreement. Although the appellant may believe that his representatives failed to act in his best interest in negotiating the settlement agreement, he is bound by his chosen representatives' actions and consequently bound by the terms of the settlement agreement. *Merriweather v. Department of Transportation*, 64 M.S.P.R. 365, 372-73 (1994), *aff'd*, 56 F.3d 83 (Fed. Cir. 1995) (Table).

¶9    The appellant alleges that the administrative judge was biased and conspired with the representatives to pressure him into settling. PFR File, Tab 1 at 2-3. In making a claim of bias or prejudice against an administrative judge, a party must overcome the presumption of honesty and integrity that

EX A

accompanies administrative adjudicators.   *Oliver v. Department of Transportation*, 1 M.S.P.R. 382, 386 (1980).   To support his bias claim, the appellant alleges that the administrative judge and his representative discussed the weakness of his appeal prior to the prehearing conference.   PFR File, Tab 1 at 2.   In settlement negotiations, administrative judges are permitted to inform the parties of the relative strengths and weaknesses of their cases.   *Forston v. Department of the Navy*, 60 M.S.P.R. 154, 160 (1983).   Such statements do not indicate bias or coercion.   *Id.*

¶10        We find that, by the terms of the settlement agreement, the appellant withdrew his appeal with prejudice, he knowingly and voluntarily signed the settlement agreement, he waived further Board appeal rights concerning his removal, and the waiver is enforceable.   Accordingly, we deny the petition for review of the initial decision dismissing this appeal as settled.   Because this appeal has been settled, we need not reach the other issues raised by the appellant on review. [2]   *See Lee v. U.S. Postal Service*, 111 M.S.P.R. 551, ¶ 10 (2009), *aff'd*, 367 F. App'x 137 (Fed. Cir. 2010).

## NOTICE TO THE APPELLANT REGARDING
## YOUR FURTHER REVIEW RIGHTS[3]

You have the right to request further review of this final decision.

---

[2] The appellant's arguments challenging the merits of his removal and the conduct of both parties' representatives do not present a reason to disturb the initial decision dismissing his appeal as settled.   *See Hinton v. Department of Veterans Affairs*, 119 M.S.P.R. 129, ¶ 4 (2013); *see also Thompson*, 52 M.S.P.R. at 236-37 (explaining that an appellant is responsible for the actions or inactions of his chosen representative and the alleged inadequacy of his representation is not grounds to set aside a settlement agreement).

[3] The administrative judge did not provide the appellant with notice of his mixed-case rights to appeal from the initial decision on his discrimination claims to the Equal Employment Opportunity Commission and/or an appropriate U.S. district court.   This was error, but it does not constitute reversible error because we notify the appellant of his mixed-case appeal rights in this Final Order.   *See Grimes v. U.S. Postal Service*, 39 M.S.P.R. 183, 186-87 (1988).

EX A

Discrimination Claims:  Administrative Review

You may request review of this final decision on your discrimination claims by the Equal Employment Opportunity Commission (EEOC).  *See* title 5 of the U.S. Code, section 7702(b)(1) (5 U.S.C. § 7702(b)(1)).  If you submit your request by regular U.S. mail, the address of the EEOC is:

Office of Federal Operations
Equal Employment Opportunity Commission
P.O. Box 77960
Washington, D.C. 20013

If you submit your request via commercial delivery or by a method requiring a signature, it must be addressed to:

Office of Federal Operations
Equal Employment Opportunity Commission
131 M Street, NE
Suite 5SW12G
Washington, D.C. 20507

You should send your request to EEOC no later than 30 calendar days after your receipt of this order. If you have a representative in this case, and your representative receives this order before you do, then you must file with EEOC no later than 30 calendar days after receipt by your representative.  If you choose to file, be very careful to file on time.

Discrimination and Other Claims:  Judicial Action

If you do not request EEOC to review this final decision on your discrimination claims, you may file a civil action against the agency on both your discrimination claims and your other claims in an appropriate U.S. district court. *See* 5 U.S.C. § 7703(b)(2).  You must file your civil action with the district court no later than 30 calendar days after your receipt of this order.  If you have a representative in this case, and your representative receives this order before you do, then you must file with the district court no later than 30 calendar days after receipt by your representative.  If you choose to file, be very careful to file on time.  If the action involves a claim of discrimination based on race, color,

EX A

7

religion, sex, national origin, or a disabling condition, you may be entitled to representation by a court-appointed lawyer and to waiver of any requirement of prepayment of fees, costs, or other security.  *See* 42 U.S.C. § 2000e-5(f) and 29 U.S.C. § 794a.

FOR THE BOARD:                    _____

                                  William D. Spencer
                                  Clerk of the Board

Washington, D.C.

7            EX A



November 6, 2012

Mr. James Hodges
GSA Safety Environment and Fire Protection Branch
301 7th Street, S.W., Room 2080
Washington, D.C. 20407

**RE:** **Indoor Air Quality Monitoring**
*Homeland Security Department - St. Elizabeth's Complex*
2701 Martin Luther King Avenue, S.E.
Washington, D.C.

TTL Arc Environmental, JV Job Number: 8742.24/988-1

Dear Mr. Hodges,

In accordance with our on-call contract with the General Services Administration (GSA), TTL Arc Environmental, JV, LLC performed indoor air quality monitoring in three trailers at the Department of Homeland Security (DHS) Saint Elizabeths Campus located at 2701 Martin Luther King Avenue, S.W., Washington, D.C. The project involved area sampling for indoor air quality parameters including temperature, relative humidity, carbon dioxide, carbon monoxide, total volatile organic compounds, respirable dust, particulate characterization, viable fungi, and viable bacteria; the survey was conducted in response to occupancy concerns regarding indoor air quality.

Certified Industrial Hygienist (CIH), Mr. Edmond VandenBosche measured conditions with direct reading meters and collected samples for viable fungi analysis on <u>September 28, 2012</u>. Samples for viable bacteria were collected on <u>October 1, 2012.</u> A TSI VelociCalc (Model 9565 P) affixed with a TSI Model 982 probe was used to measure temperature (Temp), relative humidity (RH), carbon dioxide ($CO_2$), and carbon monoxide (CO). A mini-Rae 2000 photoionization detector with a 10.6 eV lamp was used to measure total volatile organic compounds (TVOCs). A TSI DustTrak II was used to measure respirable dust (Resp). An inlet conditioner with a 50% cut point of four microns was used to sample only the respirable dust and exclude larger particles. Results for parameters measured with direct reading meters are presented in Table 1.

| Table 1 | | | | | | | |
|---------|---|---|---|---|---|---|---|
| **Results for Direct Reading Instrument Measurements** | | | | | | | |
| Location | Date @ Time | Temp (°F) | RH (%) | $CO_2$ (ppm) | CO (ppm) | VOCs (ppm) | Resp (mg/m³) |
| HMD 1 | 9/28/12 @ 14:11 | 82.4 | 40.7 | 553 | 1.4 | 0.0 | 0.028 |
| HMD 2 | 9/28/12 @ 14:52 | 74.4 | 67.6 | 286 | 0.0 | 0.0 | 0.019 |
| Outdoor by HMD1 & 2 | 9/28/12 @ 14:43 | 79.0 | 53.8 | 184 | 0.1 | 0.0 | 0.033 |
| Security Trailer | 10/1/12 @10:39 | 72.8 | 49.4 | 585 | 0.0 | 0.0 | 0.018 |
| Outdoor by Security Trailer | 10/1/12 @ 10:18 | 67.8 | 50.1 | 136 | 0.4 | 0.0 | 0.042 |

Exhibit B

*Mr. James Hodges*
*Homeland Security Department – St. Elizabeth's Complex – IAQ Testing*
*November 6, 2012*
*Page 2*

TTL Arc Environmental collected one viable bacteria and one viable fungal sample from each of the three trailers, in addition to one set of outdoor samples for comparison purposes. During the survey, occupants of the Security Trailer reported that previous moisture intrusion events had occurred within the trailer.

Samples for bacteria and fungi were collected using a one-stage bioaerosol sampler with a flow rate of 28.3 liters per minute for a five minute sampling period. The sampler was wiped down with alcohol prior to collecting each sample. Bacteria samples were collected on petri dishes containing tryptic soy agar. Bacteria were cultured at EMSL in Cinnaminson, New Jersey. Results for bacteria are presented in Table 2.

| Table 2 Bacteria Sample Results in CFU/$m^3$ | | | | | |
|---|---|---|---|---|---|
| **Type of Bacteria** | **HMD1** | **HMD2** | **Outdoors by HMD 1 & 2** | **Security Trailer** | **Outdoors by Security Trailer** |
| Bacillus sp. | 147 | 77 | 21 | 140 | |
| Bacillus cereus | | | 28 | | |
| Bacillus megaterium | | | | 42 | |
| Gram positive Coccobacillus | 14 | | | | |
| Pantoea agglomerans | | | | 28 | |
| Staphylococcus cohnii | | | | | 7 |
| **Total** | **161** | **77** | **49** | **210** | **7** |

Fungal samples were collected on petri dishes containing malt extract agar. Fungi were cultured by either EMLab P & K in San Bruno, California or by EMSL Analytical in Cinnaminson, New Jersey. Results for fungi are presented in Table 3.

| Table 3 Fungal Sample Results in CFU/$m^3$ | | | | | |
|---|---|---|---|---|---|
| **Type of Fungus** | **HMD1** | **HMD2** | **Outdoors by HMD 1 & 2** | **Security Trailer** | **Outdoors by Security Trailer** |
| Artrhospore - former | | 14 | | | |
| Aspergillus fumigatus | | | | 21 | |
| Aspergillus niger | | | | | 7 |
| Aspergillus oryzae | | | | | 7 |
| Aspergillus sydowii | | | | 7 | |
| Aureobasidium sp. | | | | | |
| Aureobasidium pullulans | | | 7 | | |
| Bipolaris / Drechslera group | | 21 | | | |
| Cladosporium sp. | | 28 | | | |
| Cladosporium cladosporides | 220 | | 560 | 56 | 196 |
| Cladosporium sphaerospermum | | | | 63 | |
| Curvularia sp. | | | | 7 | |
| Non-sporulating fungi | 7 | | 14 | | |

EX B

*Mr. James Hodges*
*Homeland Security Department – St. Elizabeth's Complex – IAQ Testing*
*November 6, 2012*
*Page 3*

| Table 3 Fungal Sample Results in CFU/m$^3$ | | | | | |
|---|---|---|---|---|---|
| Type of Fungus | HMD1 | HMD2 | Outdoors by HMD 1 & 2 | Security Trailer | Outdoors by Security Trailer |
| Penicillium sp. | | | | | |
| Penicillium Chrysogenum | | | | | 14 |
| Penicillium glabrum | 7 | | 14 | 7 | 7 |
| Penicillium implicatum | | | | 7 | 21 |
| Penicillium mineoluteum | | | | 7 | |
| Pithomyces sp. | | | | 7 | |
| Rhizopus stolonifer | 7 | | | | |
| Sporothrix sp. | | | | 7 | |
| Sterile dark | | | | 7 | |
| Sterile white | | | | 35 | 35 |
| Total | 240 | 64 | 590 | 231 | 287 |

Settled dust was sampled by vacuuming an unmeasured area using a 28 mm cassette with a 0.8 micron mixed cellulose ester filter. Samples were submitted to either EMLab P & K in San Bruno, California or to EMSL in Cinnaminson, NJ. Particles were analyzed by direct microscopic examination. Results are presented in Table 4.

| Type of Particle | HMD2 |
|---|---|
| Algae | - |
| Amorphous Debris | 45 |
| Animal Hair | 3 |
| Cellulose Fibers | 13 |
| Crystalline Particles | - |
| Epithelial Cells | 10 |
| Fern, Moss, Etc. | 1 |
| Fungal Spores | 2 |
| Glass Fiber | 1 |
| Human Hair | - |
| Hyphal Fragments | 1 |
| Insect Parts | 1 |
| Mites | - |
| Other | 12 |
| Pollen | 2 |
| Starch Particles | 1 |
| Synthetic Fibers | 9 |

*Dust* →

## Discussion and Conclusions

The American Society of Heating, Refrigeration, and Air Conditioning Engineers (ASHRAE) standard 62.1 recommends that indoor carbon dioxide remain below the outdoor concentration plus 700 ppm. All tests were within this range.

*/dust*

✱DHS fail to provide air quality test information for HMD1, security trailers, Hitchcock Hall (Bldg. 37), HMD2 LAN server room, and areas/locations outdoors.

3                                        EX B

ASHRAE standard 55 recommends that indoor summer temperatures range between 73° F and 79° F and that winter temperatures range between 68° F and 74° F to keep most occupants comfortable. Temperatures with the HMD1 and HMD2 trailers were above the ASHRAE recommended temperature for occupant comfort; if occupants express discomfort with the warmth of the trailer(s), the thermostats should be adjusted to provide ambient conditions with ASHRAE recommended guidelines.

ASHRAE standard 55 recommends that indoor humidity levels be maintained between 30% and 60% relative humidity. One reading collected from within HMD 2 was 67.7%. All other readings were within the recommended range. When humidity exceeds 60%, the potential for condensation and microbial growth increases. The relative humidity within the trailers should be controlled to prevent potential microbial growth.

EPA air quality standards require carbon monoxide to be below 9 ppm as an 8-hour average. All readings were below this level.

Volatile organic compounds were not detected within the trailers during the sampling events. VOCs in indoor air should be kept as low as reasonably achievable.

The American Council of Governmental Hygienists (ACGIH) recommends that respirable particulates be maintained below 3 $mg/m^3$. All readings collected from within the trailers were below the ACGIH recommended threshold.

The bioaerosol samples collected on the day of the survey contained low bacteria and mold concentrations.

The mold concentrations ranged from 64 to 240 $CFU/m^3$ (Colony Forming Units Per Cubic Millimeter). The fungi concentrations were below the level detected outside (287 $CFU/m^3$ for the security trailer and 590 $CFM/m^3$ for outside of HMD 1 and 2). Additionally, the indoor mold concentrations were below the OSHA Technical Guideline level of 1,000 CFU/m3.

The bacteria concentrations ranged from 77 to 210 $CFU/m^3$. The bacteria concentration outside was 49 $CFU/m^3$ by HMD 1 and 2 and 7 $CFU/m^3$ by the Security Trailer. Indoor counts are considered to be normal for occupied areas, and do not indicate inadequate ventilation or indoor amplification sites.

The particulate characterization indicated that nearly half of the dust volume is amorphous debris (non-biological). The optical evaluation of the particulate did not indicate significant levels of fungal spores or other notable particulate. Minimal settled particulate was observed within the trailers.

All of the parameters measured are within standard indoor air quality guidelines.

4                                    EXB

**EMLab P&K**
1150 Bayhill Drive, Suite 100, San Bruno, CA 94066
(866) 888-6653  Fax (650) 829-5852  www.emlab.com

Client: TTL Associates, Inc.
C/O: Ed Vandenbosche
Re: 8742.24; GSA, St Eliz, IAQ

Date of Sampling: 10-01-2012
Date of Receipt: 10-03-2012
Date of Report: 10-05-2012

## PARTICULATE CHARACTERIZATION - DIRECT MICROSCOPIC EXAMINATION REPORT

| Location: | HMD2:<br>HMD 2, settled dust | Security:<br>Security trailer, settled dust |
|---|---|---|
| Comments (see below) | None | None |
| Lab ID-Version‡: | 4364060-1 | 4364061-1 |
| | Percentage (%)† | Percentage (%)† |
| Algae | | |
| Amorphous debris | 45 | 40 |
| Animal hair | 3 | 2 |
| Cellulose fibers | 13 | 18 |
| Crystalline particles | | |
| Epithelial (skin) cells | 10 | 10 |
| Fern, moss, etc. | 1 | |
| Fungal spores | 2 | 2 |
| Glass fiber | 1 | 1 |
| Human hair | | |
| Hyphal fragments | 1 | 1 |
| Insect parts | 1 | 2 |
| Mites | | |
| Other (wood, trichome, etc.) | 12 | 9 |
| Pollen | 2 | 2 |
| Starch particles | | 1 |
| Synthetic fibers | 9 | 12 |

Comments:

† The percentages reported are approximate values.
Interpretation is left to the company and/or persons who conducted the field work.
‡ A "Version" indicated by -"x" after the Lab ID# with a value greater than 1 indicates a sample with amended data. The revision number is reflected by the value of "x".
EMLab P&K, LLC

EMLab ID: 978174, Page 2 of 2

5

Ex B

**EMLab P&K**
1150 Bayhill Drive, Suite 100, San Bruno, CA 94066
(866) 888-6653  Fax (650) 829-5852  www.emlab.com

Client: TTL Associates, Inc.
C/O: Ed Vandenbosche
Re: 8742-24; GSA-DHS-IAQ

Date of Receipt: 10-01-2012
Date of Report: 10-15-2012

## CULTURABLE AIR FUNGI REPORT

| Location: | 1:<br>650 4th, 14 | | 2:<br>650 Loading Dock | |
|---|---|---|---|---|
| Comments (see below): | None | | None | |
| Lab ID-Version‡: | 4370727-1 | | 4370728-1 | |
| Analysis Date: | 10/11/2012 | | 10/11/2012 | |
| Medium: | MEA | | MEA | |
| | raw ct. | cfu*/m3 | raw ct. | cfu*/m3 |
| Aureobasidium pullulans | | | | |
| Cladosporium cladosporioides | 1 | 7 | 27 | 200 |
| Cladosporium herbarum | | | | |
| Cladosporium sphaerospermum | | | | |
| Cylindrocarpon destructans | | | | |
| Epicoccum nigrum | | | | |
| Non-sporulating fungi | | | 3 | 21 |
| Paecilomyces marquandii | | | | |
| Penicillium canescens | | | | |
| Penicillium citreonigrum | | | | |
| Penicillium glabrum | | | | |
| Penicillium griseofulvum | | | | |
| Penicillium hirsutum | | | | |
| Penicillium janczewskii | | | | |
| Penicillium olsonii | | | | |
| Penicillium purpurogenum | | | | |
| Penicillium spinulosum | | | | |
| Penicillium variabile | | | 1 | 7 |
| Phoma exigua | | | | |
| Rhizopus stolonifer | | | | |
| Stachybotrys chartarum | | | | |
| Ulocladium atrum | | | | |
| Wallemia sebi | | | | |
| Yeasts, Rhodotorula species | | | | |
| Zygosporium echinosporum | | | | |
| Positive Hole | 400 | | 400 | |
| Sample volume (liters) | 141.5 | | 141.5 | |
| § TOTAL CFU*/M3 | | 7 | | 230 |

* cfu = colony forming units     Positive hole correction chart used for all calculations

**Comments:**

The limit of detection is 1 raw count per volume of air sampled. The analytical sensitivity is 1 raw count/volume x the positive hole correction factor.
For more information regarding analytical sensitivity, please contact QA by calling the laboratory.

Note: Interpretation is left to the company and/or persons who conducted the field work. Variation is an inherent part of biological sampling.
The presence or absence of a few genera in small numbers should not be considered abnormal.
‡ A "Version" indicated by -"x" after the Lab ID# with a value greater than 1 indicates a sample with amended data.  The revision number is reflected by the value of "x".
§ Total CFU/m3 has been rounded to two significant figures to reflect analytical precision.
Fungal culture types listed without a count or data entry were not detected during the course of the analysis for the respective sample.

EMLab P&K, LLC

EMLab ID: 976953, Page 2 of 3

6

EX B

**EMLab P&K**
1150 Bayhill Drive, Suite 100, San Bruno, CA 94066
(866) 888-6653 Fax (650) 829-5852 www.emlab.com

Client: TTL Associates, Inc.
C/O: Ed Vandenbosche
Re: 8742-24; GSA-DHS-IAQ

Date of Receipt: 10-01-2012
Date of Report: 10-15-2012

## CULTURABLE AIR FUNGI REPORT

| Location: | 5:<br>HMD-1 | | 7:<br>HMD Outdoor | |
|---|---|---|---|---|
| Comments (see below) | None | | None | |
| Lab ID-Version‡: | 4370729-1 | | 4370730-1 | |
| Analysis Date: | 10/11/2012 | | 10/11/2012 | |
| Medium: | MEA | | MEA | |
| | raw ct. | cfu*/m3 | raw ct. | cfu*/m3 |
| Aureobasidium pullulans | | | 1 | 7 |
| Cladosporium cladosporioides | 30 | 220 | 72 | 560 |
| Cladosporium herbarum | | | | |
| Cladosporium sphaerospermum | | | | |
| Cylindrocarpon destructans | | | | |
| Epicoccum nigrum | | | | |
| Non-sporulating fungi | 1 | 7 | 2 | 14 |
| Paecilomyces marquandii | | | | |
| Penicillium canescens | | | | |
| Penicillium citreonigrum | | | | |
| Penicillium glabrum | 1 | 7 | 2 | 14 |
| Penicillium griseofulvum | | | | |
| Penicillium hirsutum | | | | |
| Penicillium janczewskii | | | | |
| Penicillium olsonii | | | | |
| Penicillium purpurogenum | | | | |
| Penicillium spinulosum | | | | |
| Penicillium variabile | | | | |
| Phoma exigua | | | | |
| Rhizopus stolonifer | 1 | 7 | | |
| Stachybotrys chartarum | | | | |
| Ulocladium atrum | | | | |
| Wallemia sebi | | | | |
| Yeasts, Rhodotorula species | | | | |
| Zygosporium echinosporum | | | | |
| Positive Hole | 400 | | 400 | |
| Sample volume (liters) | 141.5 | | 141.5 | |
| § TOTAL CFU*/M3 | | 240 | | 590 |

* cfu = colony forming units      Positive hole correction chart used for all calculations
**Comments:**

The limit of detection is 1 raw count per volume of air sampled. The analytical sensitivity is 1 raw count/volume x the positive hole correction factor.
For more information regarding analytical sensitivity, please contact QA by calling the laboratory.

Note: Interpretation is left to the company and/or persons who conducted the field work. Variation is an inherent part of biological sampling. The presence or absence of a few genera in small numbers should not be considered abnormal.
‡ A "Version" indicated by -"x" after the Lab ID# with a value greater than 1 indicates a sample with amended data. The revision number is reflected by the value of "x".
§ Total CFU/m3 has been rounded to two significant figures to reflect analytical precision.
Fungal culture types listed without a count or data entry were not detected during the course of the analysis for the respective sample.

EMLab P&K, LLC

Ex B

**EMLab P&K**
1150 Bayhill Drive, Suite 100, San Bruno, CA 94066
(866) 888-6653  Fax (650) 829-5852  www.emlab.com

Client: TTL Associates, Inc.
C/O: Ed Vandenbosche
Re: DHS; TBD

Date of Sampling: 09-28-2012
Date of Receipt: 10-01-2012
Date of Report: 10-16-2012

## CULTURABLE AIR FUNGI REPORT

| Location: | 8:<br>HMD-2 | | 7:<br>HMD Outdoor | |
|---|---|---|---|---|
| Comments (see below) | None | | A | |
| Lab ID-Version‡: | 4358991-1 | | 4358992-1 | |
| Analysis Date: | 10/15/2012 | | 10/15/2012 | |
| Medium: | MEA | | MEA | |
| | raw ct. | cfu*/m3 | raw ct. | cfu*/m3 |
| Arthrospore-former | 2 | 14 | | |
| Aspergillus ochraceus | | | | |
| Aspergillus versicolor | | | | |
| Aureobasidium | | | 1 | 7 |
| Basidiomycetes | | | | |
| Bipolaris/Drechslera group | 3 | 21 | | |
| Botrytis | | | | |
| Chaetomium | | | | |
| Cladosporium | 4 | 28 | 72 | 560 |
| Curvularia | | | | |
| Epicoccum | | | | ' |
| Fusarium | | | | |
| Non-sporulating fungi | | | 2 | 14 |
| Paecilomyces | | | | |
| Penicillium | | | 2 | 14 |
| Phoma | | | | |
| Rhizopus | | | | |
| Stachybotrys chartarum | | | | |
| Ulocladium | | | | |
| Yeasts | | | | |
| Positive Hole | 400 | | 400 | |
| Sample volume (liters) | 141.5 | | 141.5 | |
| § TOTAL CFU*/M3 | | 64 | | 590 |

* cfu = colony forming units          Positive hole correction chart used for all calculations
Comments: A) Data transferred from EMLab P&K ID: 976953 at clients request.

Note: Interpretation is left to the company and/or persons who conducted the field work. Variation is an inherent part of biological sampling. The presence or absence of a few genera in small numbers should not be considered abnormal.
NORMAL SPORE LEVELS: Indoor spore levels usually average 30 to 80% of the outdoor spore level at the time of sampling, with the same general distribution of spore types. Filtered air, air-conditioned air, or air remote from outside sources may average 5 to 15% of the outside air at the time of sampling. (These percentages are guidelines, only. A major factor is the accessibility of outdoor air. A residence with open doors and windows and heavy foot traffic may average 95% of the outdoor level while high rise office buildings with little air exchange may average 2%. Dusty interiors may exceed 100% of the outdoors to some degree, but will still mirror the outdoor distribution of spore types.)
PROBLEM INTERIORS: A substantial increase of one or two spore types which are inconsistent with and non-reflective of the outside distribution of spore types is usually indicative of an indoor reservoir of mold growth.

The limit of detection is 1 raw count per volume of air sampled. The analytical sensitivity is 1 raw count/volume x the positive hole correction factor.

‡ A "Version" indicated by -"x" after the Lab ID# with a value greater than 1 indicates a sample with amended data. The revision number is reflected by the value of "x".
§ Total CFU/m3 has been rounded to two significant figures to reflect analytical precision.
Fungal culture types listed without a count or data entry were not detected during the course of the analysis for the respective sample.

EMLab P&K, LLC

EMLab ID: 976958, Page 2 of 2

EX B

*Mr. James Hodges*
*Homeland Security Department – St. Elizabeth's Complex – IAQ Testing*
*November 6, 2012*
*Page 5*

TTL Arc Environmental JV is pleased to have performed this indoor air quality assessment for GSA.  If you have any questions please call us at (410) 659-9971.

Sincerely,
**TTL / Arc Environmental JV, LLC.**

Edmond R. VandenBosche, CIH, CSP
Project Certified Industrial Hygienist

Stacy Kahatapitiya, CHMM, LEED GA
Project Manager

9

EX B

**Steven Hall's Air Quality Report Assessment of St. Elizabeth's Construction Site**

**\*DHS encouraged Mr. VandenBosche to manipulate numbers and this revealed more Fungus and Particles**

**\*\* Numbers added correctly**

**Table 2**

**Bacteria Sample Results in CFU/m3**

| Types of Bacteria | HMD1 | HMD2 | OUTDOORS BY HMD1 & HMD2 | SECURITY TRAILER | OUTDOORS BY SECURITY TRAILER | OVERALL TOTAL NUMBERS |
|---|---|---|---|---|---|---|
| TOTALS | 161 | 77 | 49 | 210 | 7 | 504 |

The bacteria concentration ranged from 7 to 504 CFU/m3 a difference of 497 CFU/m3.
504 divided by 5 equates to an average of 101.  Average 24 more Bacteria's than HMD2.

**Table 3**

**Fungal Sample Results in CFU/m3**

| Types of Fungus | HMD1 | HMD2 | OUTDOORS BY HMD1 & HMD2 | SECURITY TRAILER | OUTDOORS BY SECURITY TRAILER | OVERALL TOTAL NUMBERS |
|---|---|---|---|---|---|---|
| | \*240/\*\*241 | \*64/\*\*63 | \*590/\*\*595 | 231 | 287 | 1412/\*\*1417 |

The mold concentration ranged from 63 to 1417 a difference of 1354 CFU/m3.  Mr. VandenBosche
manipulated fungal sample numbers, this adjustment changed the overall of total numbers.
1412/1417 divided by 5 equates to an average of 282/283.  Four times more Fungals than HMD2.

**Table 4**

**Types of Particles**

| Types of Particles | HMD1 | HMD2 | OUTDOORS BY HMD1 & HMD2 | SECURITY TRAILER | OUTDOORS BY SECURITY TRAILER | OVERALL TOTAL NUMBERS |
|---|---|---|---|---|---|---|
| | 0 | 101 | 0 | 100 | 0 | 201 |

The Types of Particles ranged from 100 to 101 a difference of 1.  DHS never requested for an Air Quality Test
(AQT) regarding Types of Particles be performed at HMD1 and all Outdoors locations.

**Totals Samples and Particles for Tables 2, 3, and 4**

| Bacteria, Fungus, & Particles | HMD1 | HMD2 | OUTDOORS BY HMD1 & HMD2 | SECURITY TRAILER | OUTDOORS BY SECURITY TRAILER | OVERALL TOTAL NUMBERS |
|---|---|---|---|---|---|---|
| | \*401/\*\*402 | \*242/\*\*241 | \*639/\*\*644 | 541 | 294 | 2117/\*\*2122 |

Total Bacteria and Fungal Samples and Types of Particles ranged from 7 to 2122 CFU/m3 a difference of 2115
CFU/m3.   DHS never informed Mr. VandenBosche that I was Outdoors at HMD1, HMD2, Security Trailer,
Hitchcock Hall(Bldg 37), and performed escorts and tours. The AQT report excluded Large Particles and Types
of Particles. 2117/2122 divided by 5 equates to an average of 423/424. Overall: Twice the amount of Bacterial
and Fungal Samples and Types of Particles existed at St. Elizabeth's than in the HMD2 trailer.
**Mr. VandenBosche's AQT was bias and inconclusive.**

Attachment (   )

EX B

File Number: 252510109
ff-O-NO

U.S. DEPARTMENT OF LABOR

OFFICE OF WORKERS' COMP PROGRAMS
PO BOX 8300 DISTRICT 3 PHI
LONDON, KY 40742-8300
Phone:  (267) 687-4160

June 29, 2015

Date of Injury: 08/04/2012
Employee:  STEVEN H. HALL

DEPARTMENT OF HOMELAND SECURITY
MANAGEMENT DIRECTORATE
CHCO-HRMS-WORKERS' COMP COORDINATOR
245 MURRAY LANE, SW, STOP 0175
WASHINGTON, DC 20528

ATTN: Letitia Byers, Esquire

Dear Ms. Beyers:

I am writing in response to your recent phonecalls concerning the compensation claim of Steven H. Hall, Case #252510109.

You have inquired regarding whether DOL will be handling the overpayment or will Homeland Security.  Please be advised that we will address this matter as soon as possible.

I trust that this is responsive to your inquiries.

Sincerely,

Ann Bazik
Supervisory Claims Examiner

STEVEN H HALL
7141 CHESAPEAKE VILLAGE BLVD
CHESAPEAKE BEACH. MD 20732

If you have a disability (a substantially limiting physical or mental impairment), please contact our office/claims examiner for information about the kinds of help available, such as communication assistance (alternate formats or sign language interpretation), accommodations and modifications.

1

Exhibit C

**U.S. Department of Labor**

Employment Standards Administration
Office of Workers' Compensation Programs
Division of Federal Employees' Compensation

File Number   252515038



| Caller Name : | *AGENCY | Phone No : |
|---|---|---|
| Caller Type : | AGCY | |
| Call Reason : | GEN | |
| Subject : | STATUS OF THE CLAIM | |

| | | Call Date : | 01/08/2016 |
|---|---|---|---|
| Case No: | 252515038 | District Office : | PHI |
| Call Status : | CLOSED | Received By : | Weaver, Karla |
| Call Type : | PHONE BANK | Referred To : | Weaver, Karla |
| Response Date : | 01/08/2016 | Response By : | Weaver, Karla |
| Last Updated Date : | 01/08/2016 | Last Updated By : | Weaver, Karla |

| Case Status : | C3 | Claimant Name : | HALL, STEVEN, H |
|---|---|---|---|
| Adjudication Status : | D9 | Date of Injury : | 02/20/2013 |
| Form Received : | | Occupation Code : | |

*CA-110 Notes :*

Closed by Weaver, Karla at 01/08/2016 09:37:49 AM

*Agency, OGC Homeland Security, Letisha Buyers  was calling to find out the status of the case
*Agency rep advised that the case had a denial and the reconsideration decision was that the denial was not modified
*No request for call back

**U.S. Department of Labor**

Employment Standards Administration
Office of Workers' Compensation Programs
Division of Federal Employees' Compensation

File Number:  032135157



| Caller Name : | *AGENCY | Phone No : | |
|---|---|---|---|
| Caller Type : | AGCY | | |
| Call Reason : | GEN | | |
| Subject : | STATUS OF CLAIM | | |

| | | Call Date : | 01/08/2016 |
|---|---|---|---|
| Case No: | 032135157 | District Office : | PHI |
| Call Status : | CLOSED | Received By : | Weaver, Karla |
| Call Type : | PHONE BANK | Referred To : | Weaver, Karla |
| Response Date : | 01/08/2016 | Response By : | Weaver, Karla |
| Last Updated Date : | 01/08/2016 | Last Updated By : | Weaver, Karla |

| Case Status : | C3 | Claimant Name : | HALL, STEVEN, H |
|---|---|---|---|
| Adjudication Status : | D4 | Date of Injury : | 11/20/2012 |
| Form Received : | | Occupation Code : | |

*CA-110 Notes :*

Closed by Weaver, Karla at 01/08/2016 09:40:22 AM

*Agency, OGC Homeland Security, Letisha Buyers, calling to find out the status of the claim
*Agency rep advised that the claim was originally denied and the reconsideration decision was to not modify the original denial
*No request for call back



**U.S. Department of Labor**

Employment Standards Administration
Office of Workers' Compensation Programs
Division of Federal Employees' Compensation

File Number:  252510109



---

| | |
|---|---|
| **Caller Name :** *AGENCY | **Phone No :** |
| **Caller Type :**  AGCY | |
| **Call Reason :**  GEN | |
| **Subject :**      STATUS OF CLAIM | |

| | |
|---|---|
| | **Call Date :** 01/08/2016 |
| **Case No:**      252510109 | **District Office :** PHI |
| **Call Status :**  CLOSED | **Received By :** Weaver, Karla |
| **Call Type :**   PHONE BANK | **Referred To :** Weaver, Karla |
| **Response Date :**   01/08/2016 | **Response By :** Weaver, Karla |
| **Last Updated Date :** 01/08/2016 | **Last Updated By :** Weaver, Karla |

| | |
|---|---|
| **Case Status :**     C3 | **Claimant Name :** HALL, STEVEN, H |
| **Adjudication Status :** D4 | **Date of Injury :** 08/04/2012 |
| **Form Received :** | **Occupation Code :** |

*CA-110 Notes :*

---

Closed by Weaver, Karla at 01/08/2016 09 34 36 AM

*Agency, OGC Homeland Security, Letisha Buyers. was calling to find out the status of the claim
*Agency advised that the case went to ECAB appeal and the denial of OWCP was affirmed
*Agency rep also asked about the status of the overpayment issue
*Agency rep advised that no other correspondence is showing in the case about it and the last mention is when she called in September 2015
*No request for call back

# COVER SHEET

Total sheets including fax cover sheet: **31**

Date: January 2, 2016

To:  MSPB Clerk of the Board

Fax:   (703) 756-7112

From:  Steven Hall

Cell:  (301) 801-6506
Fax/Home  (410) 286-7170

Subject: **PETITION FOR REVIEW REGARDING MSPB CASE DC-0752-14-0243-I-1**

Comments: I am providing the Clerk of the Board a copy of the subject line case.  For further information contact me at my cellular (301) 801-6506 or email: Steven.H.Hall@comcast.net.

Very respectfully,

STEVEN H. HALL
Navy Chief Petty Officer (Retired)
Veterans Affairs Service-connected
Disabled Veteran

1

Exhibit D

**HP Officejet Pro 8610 Series**

**Fax Log for**
Steven Hall Home Fax
(410) 286-7170
Jan 02 2016 12:47AM

**Last Transaction**

| Date | Time | Type | Station ID | Duration | Pages | Result |
|------|------|------|------------|----------|-------|--------|
| | | | | Digital Fax | | |
| Jan 2 | 12:34AM | Fax Sent | 17037567112 | 13:09<br>N/A | 31 | OK |

2

EX D

# COVER SHEET

Total sheets including fax cover sheet: **31**

Date: January 2, 2016

To:  DHS General Counsel Attorneys
    **Ms. Mary K. Monahan**                     Fax:  (202) 447-3111
    **Ms. Letitia Byers**

From:  Steven Hall                              Cell:  (301) 801-6506
                                       Fax/Home  (410) 286-7170

Subject: **PETITION FOR REVIEW REGARDING MSPB CASE DC-0752-14-0243-I-1**

Comments: I am providing you a copy of the subject line for your records.  For further information contact me at my cellular (301) 801-6506 or email: Steven.H.Hall@comcast.net.

Very respectfully,

STEVEN H. HALL
Navy Chief Petty Officer (Retired)
Veterans Affairs Service-connected
   Disabled Veteran

3                                             EX D

**HP Officejet Pro 8610 Series**

**Fax Log for**
Steven Hall Home Fax
(410) 286-7170
Jan 02 2016 12:27AM

**Last Transaction**

| Date | Time | Type | Station ID | Duration | Pages | Result |
|------|------|------|------------|----------|-------|--------|
| | | | | Digital Fax | | |
| Jan 2 | 12:14AM | Fax Sent | 12024473111 | 13:18 N/A | 31 | OK |

4

EX D

January 2, 2016

The Clerk of the Board
Merit Systems Protection Board
1615 M Street, NW
Washington, DC 20419

### PETITION FOR REVIEW REGARDING MSPB DOCKET NO. DC-0752-14-0243-I-1

I am filing this Petition for Review (PFR) regarding reinstatement back into the Federal

service pursuant to 5 CFR 1201.14, 5 CFR 1201.114(h), and 5 CFR 1201.115. DHS attorneys

and my former private attorneys violated several Rules of Professional Conduct, Ethics

Opinion 365, and Federal Rules of Evidence. All resulted in me making a horrible decisions to

accept the settlement agreement that was not equitable in regards to two MSPB and 6 EEO cases.

On November 3, 2015, Ms. Rosemary Dettling, former attorney stated via text messages that

MSPB Judge Michelle Hudson informed her during a telephone discussion that she would find

against me before the Prehearing Conference on November 20, 2015. (See Exhibit A).

According to 28 USC, Section 144 (Bias or prejudice of judge) states, *"Whenever a party to*

*any proceeding in a district court makes and files a timely and sufficient affidavit that the judge*

*before whom the matter is pending has a personal bias or prejudice either against him or in*

*favor of any adverse party, such judge shall proceed no further therein, but another judge shall*

*be assigned to hear such proceeding."* Ms. Dettling failed to take action and report Judge

Hudson to the proper authorities regarding her biases and prejudices against me. All attorneys

involved, MSPB judge, and DHS Management ultimate goal was to rush me into signing the

settlement agreement and this would eradicate one other MSPB and 6 EEO cases.

5

EX D

According to 28 USC 455 (a)(b)(1)(4) (Disqualification of justice, judge, or magistrate judge) states, "*Any justice, judge, or magistrate judge of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned any other interest that could be substantially affected by the outcome of the proceeding.*" Judge Hudson did not remove herself from the case due to her lack of impartiality and bias concerns expressed to Ms. Dettling.

Ms. Rosemary Dettling and Ms. Joanne Dekker, attorneys for Federal Employees Legal Services Center violated several Rules of Professional Conduct: Rule 1.1(a)(b), 1.2(a), 1.3(a), 1.4(a)(b)(c), 8.3(b), and 8.4(c). Ms. Dettling formally withdrew herself from this case.

The text messages confirm that Judge Hudson and Ms. Dettling discussed that the final decision would not be made in my favor. Ms. Dettling and Ms. Dekker fail to fully explain the Older Worker's Benefits Act, nor requested age discrimination information before November 20, 2015. The text messages clearly confirm that the settlement agreement was executed in bad faith and was misleading.

Judge Hudson and all attorneys involved did not discuss among themselves, nor made it clear to me that I would not be permitted to revoke the settlement agreement if I did not raise any issues of age discrimination. On November 24, 2015, Ms. Dettling informed me after the fact that I was not permitted to revoke the settlement agreement as confirmed by Exhibit A.

Ms. Letitia Byers, DHS attorney violated several Rules of Professional Conduct: Rule 1.7(a)(b)(4), 3.4(a)(d), 8.4(f), and Ethics Opinion 365; conflict of interest by failing to communicate and reasonably inform Judge Hudson that I had a worker's compensation case

EX D

pending and an EEO complaint filed against her because she defended the agency and protected

herself from being investigated by DHS EEO was a conflict of interest regarding my pending

workers' compensation case and EEO complaint. Ms. Byers never removed herself from all

MSPB and EEO cases while obstructing justice, opposing parties and counsel. (See Exhibit B).

Ms. Byers obstructed justice to conceal and withhold evidence while failing to provide clear

notice of circumstances about her conflict of interest. Ms. Byers and agency employees

collaborated and corroborated in prohibited personnel practices and retaliation to abolish my

claims for worker's compensation and charge AWOL, indefinitely suspend me, and this led to

removing me from Federal service. (See Weldon v. Department of Veterans Affairs).

Ms. Dekker informed me to not speak, nor negotiate for more damages during the Prehearing

Conference because this would annoy Judge Hudson and this would prompt her to make a final

decision and demand that I immediately sign the settlement agreement. Judge Hudson and all

attorneys collaborated in ex parte communications and came to an agreement that I would drop

the remaining MSPB case and five EEO cases against DHS. DHS attorneys fail to inform Judge

Hudson that it was two MSPB and six EEO cases pending. (See Exhibit C).

Judge Hudson and all attorneys fail to discuss during the Prehearing Conference that DHS

Disability Program Manager (DPM) granted me reasonable accommodations in October 2012

and May 2013. DHS DPM never provided any information stating that my request for

reasonable accommodation was being denied or rescinded. DPM never consulted with

Management Director, OEEO, Office of General Counsel, or with me in writing indicating that

EX D

my request for reasonable accommodation is being denied or rescinded. (See Exhibit D). DHS

attorney(s) fail to inform Judge Hudson that DHS air quality tests were biased and inconclusive.

   Mr. Chris Mills testified to a DHS FOIA investigator that outdoor air quality tests were not

provided to me and he refused to change AWOL to LWOP/OWCP Injury status on my time

sheets from March 2013 through April 2013, and September 2013. AWOL charges and in-

conclusive air quality tests supported Management decisions to remove me from Federal service.

   On February 19, 2013, I had returned back to work at St. Elizabeth's and AWOL had ceased,

but on February 20th, 22nd, 26th, 2013 I became ill again due to dust and other airborne

contaminants. DHS Management did not have a second air quality test performed at St.

Elizabeth's and DHS refused to inquire or determined if I had fully recovered. Between February

19-26, 2013, DHS Management did not charge me AWOL. On February 27, 2013, DHS

started charging me AWOL and this allowed the AWOL counter to **start over**.

   On February 27, 2013, Mr. Mills endorsed my claim for workers' compensation claims and

this allowed my commencement of compensation to **start over**. (See Exhibit E). From

February 27, 2013 through February 26, 2014, DHS never allowed me the opportunity to recover

fully from my compensable illness/injury within the required year. ***On November 18, 2013,***

***DHS removed me from Federal service three months too early, my commencement of***

***compensation did not expire until February 26, 2014.***

   DHS Management was not authorized to charge me AWOL but continued to remove me from

Federal service knowingly that I had received FECA benefits (See Exhibit E) due to my medical

8

EX D

conditions/disabilities and work-related injuries. DHS Management falsified my time sheets to justify terminating me based on leave procedures and AWOL charges. DHS Management deprived me of my statutory right to job restoration. (See Maria Bair v. DoD).

MSPB states that AWOL charges cannot be sustained if OWCP determines that the employee was entitled to compensation benefits as a result of a work-related injury for the entire period. On 4/26/2013, I submitted my claim for compensation payments, but OWCP fail to process my claim after my commencement of compensation and prior to the expiration date of 2/26/2014.

MSPB recognizes that under 5 USC 8151, *a compensably injured employee who fully recovers within one year after the date of commencement of compensation has an unconditional right to return his former or equivalent position.* (See Maria Bair v. DoD).

*An agency should normally carry compensably injured employees in a LWOP status for the one-year period because employees who fully recover within that period have a right to immediate and unconditional restoration to their prior position or an equivalent one.* (See Hardin v. Department of the Army 18 MSPR at 45). DHS attorney(s) and Management neglected to acknowledge my requests for reasonable accommodations and workers' compensation while focusing on charging AWOL and removing me from Federal service.

I had signed the settlement agreement based on the understanding that I could revoke the agreement seven days after signing it according to the Older Workers' Benefit Act. The settlement agreement is invalid because Judge Hudson and all attorneys fail to inform me that I was not permitted to revoke the agreement because I did not raise issues of age

EX D

discrimination before the Prehearing Conference on November 20, 2015.

Judge Hudson and all attorneys involved in this case communicated in ex parte and I was misled to sign and execute the settlement agreement while under duress due to bad faith and manipulation to execute the settlement agreement. I executed the settlement agreement unknowingly this was a designed strategy by Judge Hudson and DHS attorneys to (1) remove my cases from MSPB and EEOC, (2) save DHS from having to pay me damages for two MSBP and six EEOC cases, (3) and prevent me from proving my innocence regarding false allegations of sexual harassment and a direct threat, and (4) charge me AWOL, and (5) wrongful issue me a SF-50 for termination from Federal service.

Around March 1, 2013, DHS Management issued me a Formal Leave Restriction (FLR) and on March 22, 2013 issued me a Letter of Reprimand (LoR). From September 23, 2012 through March 29, 2013, I was paid workers' compensation benefits, and this invalidated both adverse action letters, I was not required to comply with the adverse action letters while recuperating at home from my work-related illness/injury endured due to dust and other airborne contaminants at St. Elizabeth's construction site in August 2012 and February 2013.

Around November 15, 2013, DHS issued me the SF-50 indicating that I had failed to follow instructions, leave procedures, and AWOL. The adverse letters were invalid and the AWOL was wrongfully charged against me. DHS adverse actions against me violated my Title VII, Civil Rights to include the American Disability Act, Rehabilitation Act, Federal Employees Compensation Act, and Title V, Section 8151 (civil restoration rights). This PFR warrants

EX D

setting aside the settlement agreement.  (See Weldon v. Department of Veterans Affairs).  I am

requesting that the Board dismiss the previous appeal as settled and set aside as invalid and

remand this case to a different MSPB judge for review.

STEVEN H. HALL

11

EX D

Steven Hall

Sent to Ms Dettling on Tue Nov 03, 2015 05:45 PM

Message : DHS falsified my time sheet and charged me AWOL based on insufficient air quality tests. Also, DHS never completed worker's compensation forms CA 16, CA 17, CA 20 nor issues me an Eligibility Job Offer letter, and they denied me reasonable accommodations. I guess that I have no rights,that's not fair due process.

Received from Ms Dettling on Tue Nov 03, 2015 05:37 PM

Message : I talk to the judge today. She called me and I called her back. She wanted to talk about settlement. She said that she didn't think that you would win yo

Sent to Ms Dettling on Tue Nov 03, 2015 04:23 PM

Message : First choice is the maximum $300 if they don't want me back in DHS. Second choice is GS13 Step 10 and $150k. Third choice is GS12 Step 10 and $300k. All money tax free. Steven Hall

EX D

Sent to Ms Dettling on Tue Nov 03, 2015 08:01 PM

Message : I texted you the MSPB Docket numbers already, which Docket number are we talking about?  Mr Hall

Sent to Ms Dettling on Tue Nov 03, 2015 07:54 PM

Message : Letitia Byers just added herself to the reinstatement case today and the judge has already made her decision. I can't wait to receive her biased decision.

Sent to Ms Dettling on Tue Nov 03, 2015 07:32 PM

Message : DHS termination on my record doesn't impact me anymore because I am employed back in the Federal government. Very soon the government is going to hire convicts out of prison.

Sent to Ms Dettling on Tue Nov 03, 2015 07:28 PM

Message : What is she basing her decision on? Dept of Labor (DOL) is scheduled to provide me their decision regarding worker's compensation on Thursday, November 5, 2015. And I have two more cases pending with DOL.

Received from Ms Dettling on Tue Nov 03, 2015 07:23 PM

Message : I talked to her about reinstatement.

Received from Ms Dettling on Tue Nov 03, 2015 07:22 PM

Message : obligation to pass this on.

Received from Ms Dettling on Tue Nov 03, 2015 07:22 PM

Message : sted that that was a good settlement and that she did not think that she would find in your favor. I know this is not what you want to hear. But it's my

Received from Ms Dettling on Tue Nov 03, 2015 07:22 PM

Message : ur case. And told me she wanted me to pass that onto you. She said that she could try to get the agency to take the termination off your record. She insi

Received from Ms Dettling on Tue Nov 03, 2015 07:22 PM

Message : I talk to the judge today. She called me and I called her back. She wanted to talk about settlement. She said that she didn't think that you would win yo

Sent to Ms Dettling on Tue Nov 03, 2015 07:17 PM

Message : DC-0752-14-0243-I-1 is Reinstatement.

DC-0752-15-1063-I-1 is Indefinite suspension. Which one?

EX D

Sent to Ms Dettling on Sat Nov 21, 2015 11:43 AM
Message : Mr Shepherd number is (202) 693-6319 and fax is (202) 693-6310. Steven Hall

Sent to Ms Dettling on Sat Nov 21, 2015 11:41 AM
Message : Can you or Joanne contact Mr. Thomas Shepherd at Dept of Labor, Employees Compensation Advisory Board (ECAB) and negotiate with him based on the fact that I have provided factual evidence and information regarding compensation. Let him know that I am willing to drop the EEO complaint against OWCP if I am granted compensation from April 2013 to September 2013 and the two days in October 2013.

Received from Ms Dettling on Sat Nov 21, 2015 11:37 AM
Message : I forgot your age. Sorry!

Received from Ms Dettling on Sat Nov 21, 2015 11:33 AM
Message : Joanne us saying the judge wants the agreement signed by noon Monday. If you are over 40 you get more time.

Sent to Ms Dettling on Sat Nov 21, 2015 11:27 AM
Message : What's that for?

Sent to Ms Dettling on Sat Nov 21, 2015 11:25 AM
Message : July 25, 1965.

Received from Ms Dettling on Sat Nov 21, 2015 11:23 AM
Message : Hi. Please tell me the date of your birth.

Sent to Ms Dettling on Fri Nov 20, 2015 09:31 PM
Message : Please inform Letitia Byers that if the worker's compensation come through, I will have to email the CA-7 request to Mr Mills.

Sent to Ms Dettling on Sat Nov 07, 2015 12:23 AM
Message : I just realize that I had miscalculated ftom October 2012 to October 2015 lost $240K in salaries. Can we talk soon?

Sent to Ms Dettling on Wed Nov 04, 2015 07:13 PM
Message :
DC-0752-14-0243-I-1 is for  Reinstatement and the prehearing conference is scheduled for November 20, 2015 at 10am. The hearing is scheduled for December 3, 2015 at 9am.
Steven Hall

EX D

Sent to Ms Dettling on Sat Nov 21, 2015 12:21 PM
Message : Even if all AWOL is nullified, to me that suggests that DHS can do whatever they desire to their employees and not be held accountable for all wrongdoings.

Received from Ms Dettling on Sat Nov 21, 2015 12:16 PM
Message : The cash part is not going to increase. The amount they are offering is very high compared what they offer in other cases.

Sent to Ms Dettling on Sat Nov 21, 2015 12:09 PM
Message : I understand the judge wants to rush it, however I want the most cash and the termination dropped. The judge stated that if I had more evidence to erase all AWOL the risk to DHS is that I could possibly return or receive a higher settlement.

Received from Ms Dettling on Sat Nov 21, 2015 12:04 PM
Message : lder workers benefit protection act ensures you have more time.

Received from Ms Dettling on Sat Nov 21, 2015 12:04 PM
Message : That's good you are over 40. It's slows down the settlement and gives you time to think about it before it is final. The judge wants to rush it but the o

Sent to Ms Dettling on Sat Nov 21, 2015 11:59 AM
Message : I thought you only ask me for the date. My age is 50.

Received from Ms Dettling on Sat Nov 21, 2015 11:58 AM
Message : Why are you not giving me your age? Is it a secret?

Sent to Ms Dettling on Sat Nov 21, 2015 11:49 AM
Message : They may have already made a decision to grant the compensation and haven't mailed the letter to me yet.

Received from Ms Dettling on Sat Nov 21, 2015 11:48 AM
Message : nothing. We'll see what the agency says to my email. Age?

Received from Ms Dettling on Sat Nov 21, 2015 11:48 AM
Message : The Judge will probably be very annoyed that you said you were going to settle and then backed out. I've seen people do this before and they end up with

Received from Ms Dettling on Sat Nov 21, 2015 11:47 AM
Message : No. It's too late for that.

EX D

Received from Ms Dettling on Sun Nov 22, 2015 07:09 PM
Message : Hi. That's nice. I'd love that. I'll let you know ASAP tomorrow when I hear back.

Sent to Ms Dettling on Sun Nov 22, 2015 01:47 PM
Message : I'm going to accept what DHS offer and move on from that. You're a good person and I appreciate you. One day me and my wife would like to invite you to our church in Clinton, Md.

Sent to Ms Dettling on Sun Nov 22, 2015 10:04 AM
Message : Please inform Ms Letitia Byers that I am an active church member of Mt Enon Baptist Church and I had provided Ms Dekker a letter from my psychiatrist stating that I am of no threat. This is important to me in hopes of getting the termination lifted. Steven Hall

Sent to Ms Dettling on Sun Nov 22, 2015 12:41 AM
Message : Alright, I will take your advice. Good night.

Received from Ms Dettling on Sun Nov 22, 2015 12:38 AM
Message : it. You are going to drive yourself crazy thinking about it all the time.

Received from Ms Dettling on Sun Nov 22, 2015 12:38 AM
Message : I'm not angry. I just think you should carefully listen to my advice. I think you should try not to figure it all out on your own and let me worry about

Sent to Ms Dettling on Sun Nov 22, 2015 12:36 AM
Message : I want to go on with my life and not be under any termination circumstances in regards to jobs. I know yhat you are angry with me, but I hope you understand my situation.

Sent to Ms Dettling on Sun Nov 22, 2015 12:21 AM
Message : Alright, if DHS lift the termination I will NOT go to court, but if they refuse to lift the termination I want to go court and NOT drop all my other cases.

Received from Ms Dettling on Sun Nov 22, 2015 12:11 AM
Message : That's a really bad decision. You'll realize that some day.

Sent to Ms Dettling on Sun Nov 22, 2015 12:09 AM
Message : I have decided to go and appear in MSPB court on December 3, 2015 at 9am. Steven Hall

Sent to Ms Dettling on Sat Nov 21, 2015 12:25 PM
Message : The air quality tests was DHS ultimate reason for charging  me AWOL and that's why Mr Roy Neigh stated charging me AWOL on November 21, 2012.

off.

Received from Ms Dettling on Mon Nov 23, 2015 11:00 AM
Message : They said feed would give you the clean record or the 55 but not both.

Received from 7034471988 on Mon Nov 23, 2015 10:41 AM
Message : Steven, I need a response from you.

Received from 7034471988 on Mon Nov 23, 2015 10:26 AM
Message : (2/2) asap with your response. Thanks

Received from 7034471988 on Mon Nov 23, 2015 10:26 AM
Message : (1/2) Hi Steven. It's Joanne Dekker. The agency is very angry, but is willing to pay
$30;000 for attorneys fees and five you a clean record. Please let me know

Sent to Ms Dettling on Mon Nov 23, 2015 06:12 AM
Message : The three worker's compensation cases could pay me $30K a piece totalling $90K. DHS
has no say in that matter.

Sent to Ms Dettling on Mon Nov 23, 2015 05:16 AM
Message : I faxed you more information this morning. Also, Ms. Letitia Byers knew I was
prescribed Bupropian and Quetiapine from my indefinite suspension case. She used the strategy
regarding plain cloths security for the hearing to throw off Judge Hudson and to justify lowering
their offer to me. Steven Hall

Sent to Ms Dettling on Sun Nov 22, 2015 09:02 PM
Message : I never raised age discrimination, but I should have especially with my medical issues
and worker's compensation.

Received from Ms Dettling on Sun Nov 22, 2015 08:12 PM
Message : Sorry. That last one was met for my friend!!

Received from Ms Dettling on Sun Nov 22, 2015 07:32 PM
Message : Anything new w Dave and that female friend? It's probably nothing.

Received from Ms Dettling on Sun Nov 22, 2015 07:30 PM
Message : Did you raise age discrimination in any of your cases?

Sent to Ms Dettling on Sun Nov 22, 2015 07:15 PM
Message : K

17                    EX D

Received from 7034471988 on Mon Nov 23, 2015 02:54 PM
Message : With the holiday it's probably going to take at least two weeks. The attorney's fees will be paid directly to FELSC

Sent to 7034471988 on Mon Nov 23, 2015 02:46 PM
Message : About when will I receive both checks?

Sent to 7034471988 on Mon Nov 23, 2015 02:46 PM
Message : K

Received from 7034471988 on Mon Nov 23, 2015 02:44 PM
Message : Yes. It's printing now. Thanks.

Sent to 7034471988 on Mon Nov 23, 2015 02:42 PM
Message : Have you received the revised version?     *Agreement 1*

Received from 7034471988 on Mon Nov 23, 2015 02:38 PM
Message : Please send the revised version. I just resent it to you

Received from 7034471988 on Mon Nov 23, 2015 02:18 PM
Message : I sent a revised one a few minutes ago

Sent to 7034471988 on Mon Nov 23, 2015 02:16 PM
Message : Just received it and will sign and fax back to you.     *Agreement 1*

Received from 7034471988 on Mon Nov 23, 2015 02:02 PM
Message : Hi. Did you receive the settlement agreement? I sent it to your work email     *Agreement 1*

Sent to Ms Dettling on Mon Nov 23, 2015 12:38 PM
Message : I will take the 85 and move on. This matter is too confusing for me.

Received from Ms Dettling on Mon Nov 23, 2015 12:08 PM
Message : I'm in a meeting. Please call Joanne.

Sent to Ms Dettling on Mon Nov 23, 2015 11:57 AM
Message : Ms Dekker stated that security strategy was inflammatory to make it seem like I was disgruntled and dangerous towards DHS employees.

Received from Ms Dettling on Mon Nov 23, 2015 11:08 AM
Message : Do u want to accept the 85 and move on? They are not willing to take the termination

*EX D*

Received from Ms Dettling on Tue Nov 24, 2015 12:20 PM
Message : She did ask you. The 7 day clause only applies to age discrimination claims. You did not raise any. Thus you are not permitted to back out of the agreement.

Sent to Ms Dettling on Tue Nov 24, 2015 07:14 AM
Message : How can the judge find against me when the evidence states otherwise? Ms Dekker never ask me if I wanted to give up all my cases while ignoring the air quality tests. I will make a final decision NLT 11/30/2015.

Received from Ms Dettling on Tue Nov 24, 2015 07:07 AM
Message :  us to keep repeating ourselves.

Received from Ms Dettling on Tue Nov 24, 2015 07:07 AM
Message : nst you. If you want to go to a hearing fine. Please just stop wasting our time on this. You dont listen to anything we are saying, so it's pointless for

Received from Ms Dettling on Tue Nov 24, 2015 07:07 AM
Message : t going to spend more time on this. As I said before, you would be foolish to turn down this settlement. The judge already said she is going to find agai

Received from Ms Dettling on Tue Nov 24, 2015 07:07 AM
Message : Oh brother. You signed it. Didn't you read it? Please stop texting me. When you make a final decision, let us know and we will tell the agency. We are no

Sent to Ms Dettling on Tue Nov 24, 2015 06:41 AM
Message : I never agreed for my cases to be thrown out.

Sent to Ms Dettling on Tue Nov 24, 2015 06:10 AM
Message : When did I not follow procedures and instructions?  Ms Byers never stated when. The AQSR was the ultimate reason for charging me AWOL. Mr Mills admitted that he did not provide me outdoor results. The Formal Leave Restriction was issued around March 1, 2013 while I was in an LWOP / OWCP Injury status. I can still win this without info from ECAB.

Sent to Ms Dettling on Mon Nov 23, 2015 09:25 PM
Message : I have 7 days to revoke the agreement, hopefully I will receive some good news from OWCP.

Sent to 7034471988 on Mon Nov 23, 2015 03:00 PM
Message : K

19                                          EX D

# This PDF file has been generated by Andro Expert Solutions' Backup Messages/Texts Mobile Application.

Sent to Ms Dettling on Tue Nov 24, 2015 01:08 PM
Message : I plan to make my FINAL decision on Monday, November 30, 2015. I would like to inform the judge on that morning around 10am.

Received from Ms Dettling on Tue Nov 24, 2015 01:01 PM
Message : If you want to give up the money and rescind the agreement we need to get the judge on the phone. She will want to hear it from you. When are you available?

Received from Ms Dettling on Tue Nov 24, 2015 01:01 PM
Message : If you want to give up the money and rescind the agreement we need to get the judge on the phone. She will want to hear it from you. When are you available?

Sent to Ms Dettling on Tue Nov 24, 2015 12:50 PM
Message : Ms Dekker could have easily mentioned or recommended that I bring up age discrimination and informed me about the Older Worker's Compensation Act. She was not concerned about my well-being, but focused on getting the case finalized and getting rid of me and my case(s).

Sent to Ms Dettling on Tue Nov 24, 2015 12:34 PM
Message : However, it may have been brought up but not fully explained by no one. You did inform me as bout the Older Worker's Compensation Act until late Friday night, but it was not made clear to me that I had seven days to revoke the agreement. After I had sign it and forwarded to Ms ◄—— Dekker then I was provided a revised copy of the agreement. I was ill-advised and confused to say the least.

Received from Ms Dettling on Tue Nov 24, 2015 12:26 PM
Message : She brought it up. The agency brought it up. The judge brought it up. You were on the call. It was also written in the agreement that you signed.

Sent to Ms Dettling on Tue Nov 24, 2015 12:22 PM
Message : Who ask me?

Received from Ms Dettling on Tue Nov 24, 2015 12:20 PM
Message : She did ask you. The 7 day clause only applies to age discrimination claims. You did not raise any. Thus you are not permitted to back out of the agreement.

EX D

# This PDF file has been generated by Andro Expert Solutions' Backup Messages/Texts Mobile Application.

Sent to 5403384841 on Mon Nov 23, 2015 09:23 PM
Message : I have 7 days to revoke the agreement, hopefully I will receive some good news from OWCP.

Sent to 5403384841 on Mon Nov 23, 2015 07:28 PM
Message : I don't appreciate the outcome, potentially I could have won the other 3 of 6 cases. In the next few days or weeks, my Worker's Compensation cases will confirm my belief. Steven Hall

Sent to 5403384841 on Mon Nov 23, 2015 05:16 PM
Message : I can still apply for Job positions in the other 11 components with the exception of Management?

Sent to 5403384841 on Fri Nov 20, 2015 04:16 PM
Message : My wife is pissed off regarding the settlement.

Sent to 5403384841 on Fri Nov 20, 2015 09:57 AM
Message : I just dialed into the conference. Steven Hall

EX D

## COVER SHEET

Total sheets including fax cover sheet: 8

Date: July 9, 2015

To:  **Mr. Oscar Toledo**

Work: (202) 357-6269
Fax:   (202) 357-1188

From:  Steven Hall

Cell:  (301) 801-6506
Fax/Home  (410) 286-7170

Subject:  RETALIATION AND PROHIBITED PERSONNEL PRACTICES BY DEPARTMENT OF HOMELAND
SECURITY, OFFICE OF GENERAL COUNSEL ATTORNEYS REGARDING MY PHYSICAL
DISABILITY

Comments: I am requesting that my complaints regarding retaliation and prohibited personnel practices be processed
and investigated.  For further information contact me at (301) 801-6506, fax (410) 286-7170, or email:
Steven.H.Hall@comcast.net.

Very respectfully,

STEVEN H. HALL
Navy Chief Petty Officer (Retired)
Veterans Affairs Service-connected
Disabled Veteran



22                                          Exhibit (D)

July 9, 2015

Department of Homeland Security
Equal Employment Opportunity Office
245 Murray Lane, SW, Bldg. 410, MS 0190, Rm. 4300
Washington, DC 20528

Subject:  EEO XII COMPLAINT: RETALIATION AND PROHIBITED PERSONNEL PRACTICES BY
         DEPARTMENT OF HOMELAND SECURITY OFFICE OF GENERAL COUNSEL ATTORNEYS
         REGARDING MY PHYSICAL DISABILITY

As a male African-American I am filing this new EEO complaint regarding two DHS Office of General Counsel
(OGC) Attorneys.  Around June 22, 2015, OGC Attorney never contacted my civilian attorney and discussed my
claim for compensation, but chose to misled and manipulate OWCP District 3 officials in an attempt to handle and
recoup alleged worker's compensation payments. OGC Attorneys allowed a culture of complacency by failing to
investigate and discipline DHS Management employees by secretly contacting OWCP District 3 Office.

On July 2, 2015, I received a letter from OWCP District 25 Office indicating that an OGC Attorney contacted
OWCP officials regarding my compensation claim as confirmed in attachment (1). OGC Attorneys include Ms.
Letitia Byers, OGC Attorney, Letitia.Byers@hq.dhs.gov and Ms. Stephanie Sawyer, Acting Assistant OGC
Attorney, Stephanie.Sawyer@hq.dhs.gov conspired against me. OGC Attorneys were aware and informed as
mentioned in attachment (2) as follows:

-DHS Management denied me the Family Medical Leave Act, refused to reassign me to new job positions free
from dust, and failed to issue me an Elements of Job Offer letter for continuance of compensation benefits
regarding my work-related illness/injury suffered at work.

-DHS Management and Employees Relations Specialist(s) allowed my former Caucasian supervisors to falsify
my time sheets, wrongfully dispute worker's compensation, wrongful indefinite suspension, false allegation of
sexual harassment and a direct threat, and denied reasonable accommodations without authority from DHS
Disability Manager.

-DHS Management violated their own DHS and Merit Systems Protection Board reasonable accommodation
policies and procedures, 5 CFR 752, Title V Section 8151, Title VII Civil Rights Act; American Disability Act,
Rehabilitation Act, and the Department of Labors', Federal Employees Compensation Act.

OGC Attorneys did not provide me "fair due process" and obstructed justice by withholding and concealing
information. Also, failed to investigate or hold DHS Management employees accountable regarding their actions
against me. I am requesting compensation and damages due to retaliation and prohibited personnel practices and
seek the maximum $300, 000 in total damages.

STEVEN H. HALL
Veterans Affairs Service-connected
Disabled Veteran

23                                    Exhibit(D)

File Number: 252510109
ff-O-NO

U.S. DEPARTMENT OF LABOR

OFFICE OF WORKERS' COMP PROGRAMS
PO BOX 8300 DISTRICT 3 PHI
LONDON, KY 40742-8300
Phone:  (267) 687-4160

June 29, 2015

Date of Injury: 08/04/2012
Employee:  STEVEN H. HALL

DEPARTMENT OF HOMELAND SECURITY
MANAGEMENT DIRECTORATE
CHCO-HRMS-WORKERS' COMP COORDINATOR
245 MURRAY LANE, SW, STOP 0175
WASHINGTON, DC 20528

ATTN: Letitia Byers, Esquire

Dear Ms. Beyers:

I am writing in response to your recent phonecalls concerning the compensation claim of Steven H. Hall, Case #252510109.

You have inquired regarding whether DOL will be handling the overpayment or will Homeland Security.  Please be advised that we will address this matter as soon as possible.

I trust that this is responsive to your inquiries.

Sincerely,

Ann Bazik
Supervisory Claims Examiner

STEVEN H HALL
7141 CHESAPEAKE VILLAGE BLVD
CHESAPEAKE BEACH, MD 20732

Attachment (1)

If you have a disability (a substantially limiting physical or mental impairment), please contact our office/claims examiner for information about the kinds of help available, such as communication assistance (alternate formats or sign language interpretation), accommodations and modifications.

24

Exhibit(D)

# COVER SHEET

Total sheets including fax cover sheet: **1**

Date: January 1, 2016

To:  DHS General Counsel Attorneys
    **Ms. Mary K. Monahan**                   Fax:   (202) 447-3111
    **Ms. Letitia Byers**

From:  Steven Hall                              Cell:  (301) 801-6506
                                          Fax/Home  (410) 286-7170

Subject: PENDING MSPB AND EEOC CASES

Comments: I am providing all MSPB and EEO cases that are pending as follows:

(1) **MSPB case DC-0752-14-0243-I-1**
(2) **MSPB case DC-0752-15-1063-I-1**

(1) **EEOC No. 570-2013-00245X** - DHS HS-HQ-22253-2012
(2) **EEOC No. 570-2013-00968X** - DHS HS-HQ-00478-2013
(3) **DHS HS-HQ-00804-2013** - Awaiting EEOC case number.
(4) **EEOC No. 001-2016-0052** - DHS HS-HQ-23609-2015
(5) False allegations of sexual harassment and a direct threat - DHS EEO has not provided a case number.
(6) Retaliation and Prohibited Personnel Practices - DHS EEO has not provided a case number.

I am preparing to submit my Petition for Review regarding MSPB case DC-0752-14-0243-I-1 and providing you this information so you can update your records regarding the eight cases.  For further information contact me at my cellular (301) 801-6506 or email: Steven.H.Hall@comcast.net.

Very respectfully,

STEVEN H. HALL
Navy Chief Petty Officer (Retired)
Veterans Affairs Service-connected
   Disabled Veteran

25

Exhibit ( D )



# DEPARTMENT OF HOMELAND SECURITY

# PROCEDURES TO FACILITATE THE

# PROVISION OF

# REASONABLE ACCOMMODATION

Office for Civil Rights and Civil Liberties
Department of Homeland Security
Washington, DC 20528

2b                    Exhibit(D)

# Granting Or Denying A Reasonable Accommodation Request

I.  **Granting a Reasonable Accommodation Request.**  As soon as the Decision-maker determines that a reasonable accommodation will be provided, that decision should be immediately communicated to the individual by the Decision-maker.  If the accommodation cannot be provided immediately, the Decision-maker must inform the individual of the projected time frame for providing the accommodation.  This notice does not need to be in writing.

II.  **Denial of Reasonable Accommodation Request**

    a.  As soon as the Decision-maker determines that a request for reasonable accommodation will be denied, he/she must issue a written decision to the individual who requested the accommodation, with a copy to the organizational element EEO Officer. The explanation for the denial should be written in plain language, clearly stating the specific reasons for the denial.

        (1)  Where the Decision-maker has denied a specific requested accommodation, but offered to make a different one in its place which was not agreed to during the interactive process, the denial notice should explain both the reasons for the denial of the requested accommodation and the reasons that the Decision-maker believes the chosen accommodation will be effective.

        (2)  Reasons for the denial of a request for reasonable accommodation **must include specific reasons for the denial, for example, why the accommodation would not be effective or why it would result in undue hardship**, and may include the following:

            (a)  The requested accommodation would not be effective.

            (b)  Providing the requested accommodation would result in undue hardship.  Before reaching this determination, the Decision-maker must have explored whether other effective accommodations exist which would not impose undue hardship and therefore can be provided.

27



# U.S. Merit Systems Protection Board



# REASONABLE ACCOMMODATION POLICY AND PROCEDURES

Revised 9/8/11

Exhibit (D)

(a) To enable an applicant to apply for a job.  Depending on the timetable for receiving applications, conducting interviews, taking tests, and making hiring decisions, there may be a need to expedite a request for reasonable accommodation in order to ensure that an applicant with a disability has equal opportunity to apply for a job.

(b) To enable an employee to participate in a specific agency activity that is scheduled to occur shortly, such as attending a meeting scheduled on short notice.

(2) Where the expedited process is necessary, the supervisor is authorized to take the necessary steps to provide the accommodation without consulting with the DPM, but is required to notify the DPM of the actions taken or proposed.

G. **Granting or Denying a Reasonable Accommodation Request**.

(1) If a request for reasonable accommodation is granted by an agency official other than the DPM, the DPM must be informed in writing of the date the accommodation will be provided and if there will be a delay in providing the accommodation, the projected time frame for providing the accommodation and the reason for the delay. If a temporary accommodation can be arranged, the employee will also be informed in writing by the approving agency official with a copy to the DPM.

(2) Employees and applicants may decline an accommodation offered by the agency.  If this occurs, the DPM should document the declination and notify the agency officials involved.

(3) If the DPM decides to deny a request for accommodation, s/he must first consult with the Director, OEEO, and the Office of General Counsel and then notify the requester and management officials in writing, specifying why the request was denied. The DPM should use the attached denial form as a template. (See Attachment 6)  If the attached letter is not used, then the written decision should include the specific reasons for the denial.  Factors supporting the denial of a request for accommodation include, but are not limited to:

(a) A determination that the requested accommodation would result in undue hardship.  This requires MSPB to find that a specific accommodation would result in significant difficulty or expense, and would have a significant negative impact on MSPB's operations or procedures.  When evaluating reasonable accommodation requests to determine if undue hardship exists, the DPM should refer to the EEOC's "Enforcement Guidance on Reasonable Accommodation and Undue Hardship under the Americans with Disabilities Act." EEOC Notice No. 915.002 (October 17, 2002);

Exhibit (D)

Claim for Compensation

# U.S. Department of Labor
### Office of Workers' Compensation Programs



| SECTION 1 | | | EMPLOYEE PORTION | | |
|---|---|---|---|---|---|

**a. Name of Employee**    Last **HALL**    First **STEVEN**    Middle **H**    OMB No. 1240-0046   Expires: 10-31-2014

**b. Mailing Address** *(Including City State, ZIP Code )*
**7141 CHESAPEAKE VILLAGE BLVD**

**c. OWCP File Number**
**252510109**

**CHESAPEAKE BEACH**    **MD**    **20732**

E-Mail Address *(Optional)* **STEVEN.H.HALL@COMCAST.NET**

**d. Date of Injury**
Month Day Year
**08/04/2012**

**e. Social Security Number**
**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**

**f. Telephone No./FAX No.**
**(301) 801-6506**

| SECTION 2 | Compensation is claimed for: | | | |
|---|---|---|---|---|

Inclusive Date Range    From    To     Intermittent?

a. [x] Leave without pay    **09/23/2012**   **01/17/2013**   [ ] Yes [x] No    Go to Section 3

b. [ ] Leave buy back     [ ] Yes [ ] No    Go to Section 3, and Complete Form CA-7b

c. [ ] Other wage loss; specify type, such as downgrade, loss of night differential, etc.    Type:    [ ] Yes [ ] No    Go to Section 3

d. [ ] Schedule Award (Go to Section 4)

If intermittent, complete Form CA-7a, Time Analysis Sheet

**SECTION 3** You must report all earnings from employment ( *outside* your federal job); include any employment for which you received a salary, wages, income, sales commissions, piecework, or payment of *any* kind during the period(s) claimed in Section 2. Include self-employment, involvement in business enterprises, as well as service with the military forces. Fraudulent concealment of employment or failure to report income may result in forfeiture of compensation benefits and/or criminal prosecution. *Have you worked outside your federal job for the period(s) claimed in Section 2 ?*

[ ] Yes    Name and Address of Business:

[x] No
Go to section 4

| Name | Address | City | State | ZIP Code |
|---|---|---|---|---|
| Dates Worked: | | Type of Work: | | |

**SECTION 4**   Is this the first CA-7 claim for compensation you have filed for this injury?

[x] Yes    *Complete Sections 5 through 7 and a Form SF-1199A, "Direct Deposit Sign-up"*

[ ] No    Has there been any change in your dependents, or has your direct deposit account changed, or has there been a claim filed with U.S. Civil Service Retirement, another federal retirement or disability law, or with the Department of Veterans Affairs since your last CA-7 claim?
   [ ] Yes - Complete Sections 5 through 7 or a new SF-1199A to reflect change(s)    [x] No - Complete Section 7

**SECTION 5** List your dependents ( *including spouse* ):

| Name | Social Security # | Date of Birth | Relationship | Living with you? Yes No |
|---|---|---|---|---|
| ANITA HALL | 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 | 11/18/1967 | WIFE | [x] [ ] |
| STEVEN MICHAEL HALL | 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 | 08/29/1996 | SON | [x] [ ] |
| | | | | [ ] [ ] |

*For dependents not living with you complete items a and b below.*

a. Are you making support payments for a dependent shown above?   [ ] Yes [x] No   If Yes, support payments are made to:

| Name | Address | City | State | ZIP Code |
|---|---|---|---|---|

b. Were support payments ordered by a court?   [ ] Yes [x] No   If Yes, attach copy of court order.

**SECTION 6**   a. Was/Will there be a claim made against a 3rd party?   [ ] Yes [x] No

b. Have you ever applied for or received disability benefits from the Department of Veterans Affairs?

[x] Yes   Claim Number   Full Address of VA Office Where Claim Filed **MD**   Nature of Disability and Monthly Payment
[ ] No   **249395840**   **31 HOPKINS PLAZA**   **BALTIMO 21201**   **BACK/SLEEP APNEA**   **$1,634.00**

c. Have you applied for or received payment under any Federal Retirement or Disability law?

| [ ] Yes | Claim Number | Date Annuity Began | Amount of Monthly Payment | Retirement System (CSRS, FERS, SSA, Other) |
|---|---|---|---|---|
| [x] No | | | | [ ] CSRS [x] FERS [ ] SSA [ ] Other |

**SECTION 7** I hereby make claim for compensation because of the injury sustained by me while in the performance of my duty to the United States. I certify that the information provided above is true and accurate to the best of my knowledge and belief.

Any person who knowingly makes any false statement, misrepresentation, concealment of fact, or any other act of fraud, to obtain compensation as provided by the FECA, or who knowingly accepts compensation to which that person is not entitled is subject to civil and administrative remedies as well as felony criminal prosecution and may, under appropriate criminal provisions, be punished by a fine or imprisonment, or both. In addition, a felony conviction will result in termination of all current and future FECA benefits.

Employee's Signature _SE H. Hall_    Date ( Mo., day, year) **1/17/2013**

30

*Exhibit (D)*

Claim for Compensation

## U.S. Department of Labor
Office of Workers' Compensation Programs



| SECTION 1 | | EMPLOYEE PORTION | | |
|---|---|---|---|---|
| a. Name of Employee | Last **HALL** | First **STEVEN** | Middle **H** | OMB No. 1240-0046 Expires: 10-31-2014 |

**b. Mailing Address** ( Including City State, ZIP Code )
**7141 CHESAPEAKE VILLAGE    BLVD**

**c. OWCP File Number**
**252510109**

| CHEASAPEAKE BEACH | **MD** | **20732** | d. Date of Injury Month Day Year 08/06/2012 | e. Social Security Number **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** |
|---|---|---|---|---|

E-Mail Address *(Optional)* **STEVEN.H.HALL@COMCAST.NET**

f. Telephone No./FAX No. **(301) 801-6506**

**SECTION 2**   Compensation is claimed for:

Inclusive Date Range

|  | | From | To | Intermittent? | |
|---|---|---|---|---|---|
| a. | [x] Leave without pay | **01/18/2013** | **02/18/2013** | [ ] Yes [x] No | *Go to Section 3* |
| b. | [ ] Leave buy back | _____ | _____ | [ ] Yes [ ] No | *Go to Section 3, and Complete Form CA-7b* |
| c. | [ ] Other wage loss; specify type, such as downgrade, loss of night differential, etc. | Type: _____ | _____ | [ ] Yes [ ] No | *Go to Section 3* |
| d. | [ ] Schedule Award *(Go to Section 4)* | | | If intermittent, complete Form CA-7a, Time Analysis Sheet | |

**SECTION 3** You must report all earnings from employment ( **outside** your federal job); include any employment for which you received a salary, wages, income, sales commissions, piecework, or payment of any kind during the period(s) claimed in Section 2. Include self-employment, involvement in business enterprises, as well as service with the military forces. Fraudulent concealment of employment or failure to report income may result in forfeiture of compensation benefits and/or criminal prosecution. *Have you worked outside your federal job for the period(s) claimed in Section 2 ?*

[ ] Yes

Name and Address of Business:

[x] No
*Go to section 4*

| Name | Address | City | State | ZIP Code |
|---|---|---|---|---|
| Dates Worked: | | Type of Work: | | |

**SECTION 4**   Is this the first CA-7 claim for compensation you have filed for this injury?

[x] Yes   *Complete Sections 5 through 7 and a Form SF-1199A, "Direct Deposit Sign-up"*

[ ] No   Has there been any change in your dependents, or has your direct deposit information changed, or has there been a claim filed with U.S. Civil Service Retirement, another federal retirement or disability law, or with the Department of Veterans Affairs since your last CA-7 claim?

[ ] Yes - *Complete Sections 5 through 7 or a new SF-1199A to reflect change(s)*   [x] No - *Complete Section 7*

**SECTION 5** List your dependents ( *including spouse* ):

| Name | Social Security # | Date of Birth | Relationship | Living with you? Yes No | |
|---|---|---|---|---|---|
| **ANITA HALL** | **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** | **11/18/1967** | **WIFE** | [x] [ ] | |
| **STEVEN MICHAEL HALL** | **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** | **08/29/1996** | **SON** | [x] [ ] | *For dependents not living with you complete items a and b below.* |
| | | | | [ ] [ ] | |

a. Are you making support payments for a dependent shown above?   [ ] Yes [x] No   If Yes, support payments are made to:

| Name | Address | City | State | ZIP Code |
|---|---|---|---|---|

b. Were support payments ordered by a court?   [ ] Yes [x] No   If Yes, attach copy of court order.

**SECTION 6**   a. Was/Will there be a claim made against a 3rd party?   [ ] Yes [x] No

b. Have you ever applied for or received disability benefits from the Department of Veterans Affairs?

| [x] Yes [ ] No | Claim Number **249395840** | Full Address of VA Office Where Claim Filed **31 HOPKINS PLAZA    BALTIMO 21201** | Nature of Disability and Monthly Payment **BACK/SLEEP APNEA    $1,634.00** |
|---|---|---|---|

c. Have you applied for or received payment under any Federal Retirement or Disability law?

| [ ] Yes [x] No | Claim Number | Date Annuity Began | Amount of Monthly Payment | Retirement System (CSRS, FERS, SSA, Other) [ ] CSRS [x] FERS [ ] SSA [ ] Other |
|---|---|---|---|---|

**SECTION 7** I hereby make claim for compensation because of the injury sustained by me while in the performance of my duty for the United States. I certify that the information provided above is true and accurate to the best of my knowledge and belief.

Any person who knowingly makes any false statement, misrepresentation, concealment of fact, or any other act of fraud, to obtain compensation as provided by the FECA, or who knowingly accepts compensation to which that person is not entitled is subject to civil or administrative remedies as well as felony criminal prosecution and may, under appropriate criminal provisions, be punished by a fine or imprisonment, or both. In addition, a felony conviction will result in termination of all current and future FECA benefits.

Employee's Signature _____   Date ( Mo., day, year) **2/27/2013**

3i

Exhibit (D)

Claim for Compensation

**U.S. Department of Labor**
Office of Workers' Compensation Programs



| SECTION 1 | | EMPLOYEE PORTION | | |
|---|---|---|---|---|

| a. Name of Employee | Last **HALL** | First **STEVEN** | Middle **H** | OMB No. 1240-0046 Expires: 10-31-2014 |
|---|---|---|---|---|

b. Mailing Address ( *Including City State, ZIP Code* )
**7141 CHESAPEAKE VILLAGE   BLVD**

c. OWCP File Number
**252510109**

**CHESAPEAKE BEACH**   **MD**   **20732**

d. Date of Injury
Month  Day  Year
**08/06/2012**

e. Social Security Number
**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**

E-Mail Address  *(Optional)* **STEVEN.H.HALL@COMCAST. NET**

f. Telephone No./FAX No.
**(301) 801-6506**

**SECTION 2**   Compensation is claimed for:

Inclusive Date Range
From    To

Intermittent?

a. [x] Leave without pay    **02/27/2013   03/29/2013**   [ ] Yes  [x] No    *Go to Section 3*

b. [ ] Leave buy back    _____   _____   [ ] Yes  [ ] No    *Go to Section 3, and Complete Form CA-7b*

c. [ ] Other wage loss; specify type, such as downgrade, loss of night differential, etc.   Type: _____   [ ] Yes  [ ] No    *Go to Section 3*
_____   _____

d. [ ] Schedule Award (*Go to Section 4*)

If intermittent, complete Form CA-7a, Time Analysis Sheet

**SECTION 3** You must report all earnings from employment ( *outside* your federal job); include any employment for which you received a salary, wages, income, sales commissions, piecework, or payment of any kind during the period(s) claimed in Section 2. Include self-employment, involvement in business enterprises, as well as service with the military forces. Fraudulent concealment of employment or failure to report income may result in forfeiture of compensation benefits and/or criminal prosecution. *Have you worked outside your federal job for the period(s) claimed in Section 2 ?*

[ ] Yes

Name and Address of Business:

[x] No
*Go to section 4*

Name                Address                City    State   ZIP Code

Dates Worked:                Type of Work:

**SECTION 4**   Is this the first CA-7 claim for compensation you have filed for this injury?

[ ] Yes    *Complete Sections 5 through 7 and a Form SF-1199A, "Direct Deposit Sign-up"*

[x] No    Has there been any change in your dependents, or has your direct deposit information changed, or has there been a claim filed with U.S. Civil Service Retirement, another federal retirement or disability law, or with the Department of Veterans Affairs since your last CA-7 claim?
[ ] Yes - *Complete Sections 5 through 7 or a new SF-1199A to reflect change(s)*   [x] No - *Complete Section 7*

**SECTION 5** List your dependents ( *including spouse* ):

| Name | Social Security # | Date of Birth | Relationship | Living with you? Yes  No |
|---|---|---|---|---|
| **ANITA HALL** | **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** | **11/18/1967** | **WIFE** | [x]  [ ] |
| **STEVEN MICHAEL HALL** | **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** | **08/29/1996** | **SON** | [x]  [ ] |
| | | | | [ ]  [ ]  *For dependents not living with you complete items a and b below.* , |

a. Are you making support payments for a dependent shown above?   [ ] Yes  [x] No   If Yes, support payments are made to:

Name                Address                City    State   ZIP Code

b. Were support payments ordered by a court?   [ ] Yes  [x] No   If Yes, attach copy of court order.

**SECTION 6**   a.  Was/Will there be a claim made against a 3rd party?   [ ] Yes  [x] No

b. Have you ever applied for or received disability benefits from the Department of Veterans Affairs?

| [x] Yes [ ] No | Claim Number **249395840** | Full Address of VA Office Where Claim Filed **31 HOPKINS PLAZA    BALTIMO 21201** | Nature of Disability and Monthly Payment **BACK/SLEEP APNEA    $1,634.00** |
|---|---|---|---|

c. Have you applied for or received payment under any Federal Retirement or Disability law?

| [ ] Yes [x] No | Claim Number | Date Annuity Began | Amount of Monthly Payment | Retirement System (CSRS, FERS, SSA, Other) [ ] CSRS  [x] FERS  [ ] SSA  [ ] Other |
|---|---|---|---|---|

**SECTION 7** I hereby make claim for compensation because of the injury sustained by me while in the performance of my duty for the United States. I certify that the information provided above is true and accurate to the best of my knowledge and belief.

Any person who knowingly makes any false statement, misrepresentation, concealment of fact, or any other act of fraud, to obtain compensation as provided by the FECA, or who knowingly accepts compensation to which that person is not entitled is subject to civil or administrative remedies as well as felony criminal prosecution and may, under appropriate criminal provisions, be punished by a fine or imprisonment, or both. In addition, a felony conviction will result in termination of all current and future FECA benefits.

Employee's Signature _~~Steven H. Hall~~_   Date ( Mo., day, year) **3/29/2013**

27

Exhibit (D)

Claim for Compensation

**U.S. Department of Labor**
Office of Workers' Compensation Programs

✳ *OWCP did not pay me for this claim.*

| SECTION 1 | | EMPLOYEE PORTION | | |
|---|---|---|---|---|
| a. Name of Employee | Last **HALL** | First **STEVEN** | Middle **H** | OMB No. 1240-0046 Expires: 10-31-2014 |

b. Mailing Address ( *Including City State, ZIP Code* )
**7141 CHESAPEAKE VILLAGE     BLVD**

c. OWCP File Number
**252510109**

**CHESAPEAKE BEACH**   **MD**   **20732**

d. Date of Injury
Month Day Year
**08/06/2012**

e. Social Security Number
**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**

E-Mail Address *(Optional)* **STEVEN.H.HALL@COMCAST.NET**

f. Telephone No./FAX No.
**(301) 801-6506**

**SECTION 2**   Compensation is claimed for:

Inclusive Date Range
From / To — Intermittent?

a. [x] Leave without pay   From **5/30/2013** To **4/26/2013**   [ ] Yes [x] No   *Go to Section 3*

b. [ ] Leave buy back   _____ _____   [ ] Yes [ ] No   *Go to Section 3, and Complete Form CA-7b*

c. [ ] Other wage loss; specify type, such as downgrade, loss of night differential, etc.   Type: _____   [ ] Yes [ ] No   *Go to Section 3*

If intermittent, complete Form CA-7a, Time Analysis Sheet

d. [ ] Schedule Award (Go to Section 4)

**SECTION 3** You must report all earnings from employment ( outside your federal job); include any employment for which you received a salary, wages, income, sales commissions, piecework, or payment of any kind during the period(s) claimed in Section 2. Include self-employment, involvement in business enterprises, as well as service with the military forces. Fraudulent concealment of employment or failure to report income may result in forfeiture of compensation benefits and/or criminal prosecution. *Have you worked outside your federal job for the period(s) claimed in Section 2?*

[ ] Yes

Name and Address of Business:

[x] No
Go to
section 4

Name       Address       City   State   ZIP Code

Dates Worked:       Type of Work:

**SECTION 4**   Is this the first CA-7 claim for compensation you have filed for this injury?

[ ] Yes   *Complete Sections 5 through 7 and a Form SF-1199A, "Direct Deposit Sign-up"*

[x] No   Has there been any change in your dependents, or has your direct deposit information changed, or has there been a claim filed with U.S. Civil Service Retirement, another federal retirement or disability law, or with the Department of Veterans Affairs since your last CA-7 claim?

[ ] Yes - Complete Sections 5 through 7 or a new SF-1199A to reflect change(s)   [x] No - Complete Section 7

**SECTION 5** List your dependents ( *including spouse* ):

| Name | Social Security # | Date of Birth | Relationship | Living with you? Yes No |
|---|---|---|---|---|
| **ANITA HALL** | 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 | 11/18/1967 | **WIFE** | [x] [ ] |
| **STEVEN MICHAEL HALL** | 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 | 08/29/1996 | **SON** | [x] [ ] |
| | | | | [ ] [ ] For dependents not living with you complete items a and b below. |

a. Are you making support payments for a dependent shown above?   [ ] Yes [x] No   If Yes, support payments are made to:

Name       Address       City   State   ZIP Code

b. Were support payments ordered by a court?   [ ] Yes [x] No   If Yes, attach copy of court order.

**SECTION 6**   a. Was/Will there be a claim made against a 3rd party?   [ ] Yes [x] No

b. Have you ever applied for or received disability benefits from the Department of Veterans Affairs?

[x] Yes   Claim Number **249395840**   Full Address of VA Office Where Claim Filed **31 HOPKINS PLAZA     BALTIMO 21201**   Nature of Disability and Monthly Payment **BACK/SLEEP APNEA**   **$1,634.00**

[ ] No

c. Have you applied for or received payment under any Federal Retirement or Disability law?

[ ] Yes   Claim Number   Date Annuity Began   Amount of Monthly Payment   Retirement System (CSRS, FERS, SSA, Other)
[x] No   [ ] CSRS [x] FERS [ ] SSA [ ] Other

**SECTION 7** I hereby make claim for compensation because of the injury sustained by me while in the performance of my duty for the United States. I certify that the information provided above is true and accurate to the best of my knowledge and belief.

Any person who knowingly makes any false statement, misrepresentation, concealment of fact, or any other act of fraud, to obtain compensation as provided by the FECA, or who knowingly accepts compensation to which that person is not entitled is subject to civil and administrative remedies as well as felony criminal prosecution and may, under appropriate criminal provisions, be punished by a fine or imprisonment, or both. In addition, a felony conviction will result in termination of all current and future FECA benefits.

Employee's Signature _____   Date ( Mo., day, year) **4/26/2013**

*Exhibit (D)*

## CERTIFICATE OF SERVICE

I certify that the attached Documents(s) was (were) sent as indicated this day to each of the following:

Agency Representatives

Facsimile          Ms. Letitia Byers and Ms. Mary K. Monahan
                   Department of Homeland Security
                   245 Murray Lane, SW
                   Mail Stop 0485
                   Washington, DC 20528
                   Facsimile (202) 447-3111

Facsimile          Administrative Clerk for the Board

                   The Clerk of the Board
                   Merit Systems Protection Board
                   1615 M. Street, NW
                   Washington, DC 20419
                   Facsimile (703) 756-7112

January 2, 2016
(Date)

STEVEN H. HALL
Appellant

34                                        Exhibit (D)

UNITED STATES OF AMERICA
MERIT SYSTEMS PROTECTION BOARD
WASHINGTON REGIONAL OFFICE

STEVEN H. HALL,
      Appellant,

      v.

DEPARTMENT OF HOMELAND
    SECURITY,
      Agency.

DOCKET NUMBER
DC-0752-14-0243-I-1

ADMINISTRATIVE JUDGE
MICHELLE M. HUDSON

## SETTLEMENT AGREEMENT

This is a global Settlement Agreement ("Agreement") resolving all claims, issues, and causes of action raised or which could have been raised between Steven H. Hall ("Appellant") and the Department of Homeland Security ("Agency") (collectively, the "Parties"), up to the date of this Agreement, including Appellant's MSPB Appeal Docket Number DC-0752-14-0243-I-1.

1.  In exchange for the promise(s) of the Agency contained in Paragraph 2, below, Appellant agrees to the following:

    a.  Appellant's signature on this Agreement constitutes his immediate withdrawal of the above-referenced appeal with prejudice.  Once effective, this Agreement shall act as Appellant's withdrawal of his appeal to be filed with the MSPB and the above-referenced Administrative Judge.

    b.  Appellant's signature on this Agreement also constitutes his withdrawal of the following:

        MSPB Appeals: to withdraw, release, or waive, with prejudice, any and all MSPB appeals, petition for review, grievances, or other actions initiated or filed against the Department of Homeland Security or its current or past agents or employees, as of the date of the signing of this Agreement, including, but not limited to:

        (1) MSPB No. DC-0752-14-0723-I-1; and
        (2) MSPB No. DC-0752-15-1063-I-1.

Agreement 1

1

Exhibit E

EEO Complaints: To withdraw, release, or waive, with prejudice, any and all formal and informal EEO claims, complaints, appeals, grievances, or other actions initiated or filed against the Department of Homeland Security or its current or past agents or employees, as of the date of the signing of this Agreement, including, but not limited to:

    (1) Agency No. HS-HQ-22253-2012/EEOC No. 570-2013-00245X;
    (2) Agency No. HS-HQ-00478-2013/EEOC No. 570-2013-00968X;
    (3) Agency No. HS-HQ-00804-2013;
    (4) Agency No. HS-HQ-02179-2013/EEOC No. 570-2014-00583X; and
    (5) Agency No. HS-HQ-23609-2015.

FTCA Claims: To withdraw, release, or waive, with prejudice, any and all pending Federal Tort Claims Act claims, as well as any and all actionable appeals, grievances, district court actions, or other actions initiated, arising out of and or filed against the Department of Homeland Security or its current or past agents or employees, as of the date of the signing of this Agreement, including, but not limited to:

    (1) 186-MGMT-14, Standard Form (SF) 95 dated July 30, 2014; denied on November 24, 2015;
    (2) 186-MGMT-14, first request for reconsideration denied on May 28, 2015;
    (3) 186-MGMT-14, second request for reconsideration denied on July 2, 2015;
    (4) 215-MGMT-15, SF 95 dated November 13, 2014, denied on August 20, 2015;
    (5) 216-MGMT-15, SF 95 dated October 28, 2014; denied on August 20, 2015; and
    (6) 231-MGMT-15, dated June 25, 2015.

FOIA: To withdraw, release, or waive, with prejudice, any and all claims and litigation arising from Freedom of Information Act claims, appeals, grievances or other actions initiated or filed against Department of Homeland Security or its current or past agents or employees, as of the date of the signing of this Agreement.

c.  Appellant's withdrawal of the above matters, as detailed in Paragraph 1.b., above, in no way affects any claims he may have before OWCP, *i.e.*, the Department of Labor.

d.  To accept the terms set forth herein in full satisfaction of any and all claims, issues, and causes of action through the date of the execution of this Agreement;

e.  By entering into this Agreement and as a condition thereto, Appellant, including Appellant's heirs, executors, representatives, attorneys, successors and assigns, hereby settles, releases, relinquishes, waives, and forever discharges the United States of America, Department of Homeland Security, their agents and employees, from any and all demands, rights, claims, or causes of action for any kind of relief whatsoever, whether before any forum, arbitrator, administrative agency, or court which he has raised, or which he may raise, and which arise out of, or are in any manner connected with, or related to Appellant's appeal and other matters referenced in Paragraph 1.b.,

2

EX E

above. Appellant agrees not to institute any lawsuit, complaint, grievance, appeal, or other action against the Agency, or any employee or member of the same, based on any matter which is the subject of the above-referenced Appeal and other matters referenced in Paragraph 1.b., above, or concerning any matter which could have been the subject of the Appeal or other matter referenced in Paragraph 1.b., above, up to and including the date when all parties have executed this Agreement;

   f.  That he enters into this Agreement with the Agency knowingly, voluntarily, and with full knowledge of its terms, and absent any coercion or duress;

   g.  That he fully understands all of the terms and conditions of this Agreement and has been given a reasonable amount of time to consider this Agreement and to thoroughly discuss all aspects of this Agreement with his representative;

   h.  That he is physically and mentally fit so as to comprehend the terms of this Agreement in its entirety; and

   i.  To expressly waive any rights or claims he possesses or may possess to any and all remedies, damages, back pay, attorney's fees or costs, interests, payments or benefits of any kind arising from the above-referenced complaint and the matters that were raised or could have been raised therein.

2. In exchange for the promises of Appellant contained in Paragraph 1 (above), the Agency, subject to the conditions and limits set forth herein, agrees to:

   a.  Pay Appellant the total sum of $55,000.00.

   b.  Pay Appellant's representative the sum total of $30,000.00 for attorney's fees to be paid directly to Rosemary Dettling, Esq., Federal Employee Legal Services Center, 1629 K Street, NW, Suite 300, Washington, DC 20006. Each party shall otherwise be responsible for its/his own costs and attorney's fees arising from or related to the above-referenced Appeal and other matters referenced in Paragraph 1.b.

3. The Parties further understand and agree to the following terms:

   a.  That this Agreement does not constitute an express or implied admission by any party of any liability, fault, wrongdoing, or of any violation of law, rule, or regulation, or of any fact or allegation with respect to the matters giving rise to this Agreement and to the above-referenced Appellant.

   b.  That the content of this Agreement is confidential and is not to be disclosed by any person, except as follows: (1) to any governmental agency when such disclosure is required by federal, state, or local law; (2) to any party when such disclosure is required by a subpoena issued by a court of competent jurisdiction or by an administrative body; (3) to any Agency officials who are responsible for carrying out the terms of the Agreement or Agency employees or officials who otherwise have a

EX E

need to know; (4) in any future proceedings involving the Parties to this Agreement; (5) to Appellant's family, attorney(s), and/or tax advisor; and (6) in any other disclosure required by applicable law or regulation. This Paragraph does not prohibit Agency employees from providing truthful responses about Appellant to an investigator or fact finder during the course of a background investigation or other investigation or inquiry, and the Agency will not be considered in breach of this Agreement for providing truthful responses in any investigation or inquiry.

c. That this Agreement contains the full and complete agreement between the parties. No promises or representations other than those stated herein have been made by either party.

d. That any amendment, modification, or addition to this Agreement must be made in writing and signed by both Parties. The waiver by one party of any breach of this Agreement shall not be deemed a waiver of any other prior or subsequent breach of this Agreement. Neither the Agency nor the Appellant shall be considered to have drafted this agreement for purposes of construing ambiguities against the drafter.

e. That this Agreement is for their mutual benefit and will not establish any precedent, nor will this Agreement be used as a basis for Appellant or any other person(s) or group(s) to seek or justify similar terms in any other case.

f. That any monetary payments of any kind are made to Appellant under the terms of this Agreement, the Agency makes no representation as to the tax consequences or liability arising from said payments. The Parties understand and agree that any tax consequences and/or liability from the payments to Appellant shall be the sole responsibility of Appellant.

g. No other promises or agreements shall be binding on the Parties unless mutually agreed to in writing and made a part of this Agreement by amendment.

h. That there is sufficient consideration supporting this Agreement.

i. That this Agreement shall be binding upon Appellant, his heirs, administrators, representatives, successors and assigns. The Agreement is also binding on the Agency and its successors.

j. That all matters discussed during mediation are confidential, subject to limited exceptions pursuant to the Administrative Dispute Resolution Act of 1996, 5 U.S.C. § 574, as amended.

The Parties agree that this Agreement will be filed with the MSPB, which will retain jurisdiction of the matter only for the purpose of enforcing the terms of this Agreement.

The Parties agree that this Agreement may be executed in counterparts. Signatures received via facsimile or email PDF shall constitute originals for purposes of the Agreement.

4

EX E

j.   That all matters discussed during mediation are confidential, subject to limited exceptions pursuant to the Administrative Dispute Resolution Act of 1996, 5 U.S.C. § 574, as amended.

4.   The Parties agree that this Agreement will be filed with the MSPB, which will retain jurisdiction of the matter only for the purpose of enforcing the terms of this Agreement.

5.   The Parties agree that this Agreement may be executed in counterparts. Signatures received via facsimile or email PDF shall constitute originals for purposes of the Agreement.

6.   This Agreement shall become effective as of the last date on which the Parties or Parties' representatives sign below.


_____          11/23/2015
Appellant                                  Date


_____          _____
Appellant's Representative                 Date


_____          _____
Agency Management Official                 Date
*(Title, Division/Unit)*


5

EX E

UNITED STATES OF AMERICA
MERIT SYSTEMS PROTECTION BOARD
WASHINGTON REGIONAL OFFICE

STEVEN H. HALL,
    Appellant,

    v.

DEPARTMENT OF HOMELAND
    SECURITY,
    Agency.

DOCKET NUMBER
DC-0752-14-0243-I-1

ADMINISTRATIVE JUDGE
MICHELLE M. HUDSON

## SETTLEMENT AGREEMENT

This is a global Settlement Agreement ("Agreement") resolving all claims, issues, and causes of action raised or which could have been raised between Steven H. Hall ("Appellant") and the Department of Homeland Security ("Agency") (collectively, the "Parties"), up to the date of this Agreement, including Appellant's MSPB Appeal Docket Number DC-0752-14-0243-I-1.

1. In exchange for the promise(s) of the Agency contained in Paragraph 2, below, Appellant agrees to the following:

    a. Appellant's signature on this Agreement constitutes his immediate withdrawal of the above-referenced appeal with prejudice. Once effective, this Agreement shall act as Appellant's withdrawal of his appeal to be filed with the MSPB and the above-referenced Administrative Judge.

    b. Appellant's signature on this Agreement also constitutes his withdrawal of the following:

    MSPB Appeals: to withdraw, release, or waive, with prejudice, any and all MSPB appeals, petition for review, grievances, or other actions initiated or filed against the Department of Homeland Security or its current or past agents or employees, as of the date of the signing of this Agreement, including, but not limited to:

        (1) MSPB No. DC-0752-14-0723-I-1; and
        (2) MSPB No. DC-0752-15-1063-I-1.

Agreement 2

1

Exhibit F

EEO Complaints: To withdraw, release, or waive, with prejudice, any and all formal and informal EEO claims, complaints, appeals, grievances, or other actions initiated or filed against the Department of Homeland Security or its current or past agents or employees, as of the date of the signing of this Agreement, including, but not limited to:

    (1) Agency No. HS-HQ-22253-2012/EEOC No. 570-2013-00245X;
    (2) Agency No. HS-HQ-00478-2013/EEOC No. 570-2013-00968X;
    (3) Agency No. HS-HQ-00804-2013;
    (4) Agency No. HS-HQ-02179-2013/EEOC No. 570-2014-00583X; and
    (5) Agency No. HS-HQ-23609-2015.

FTCA Claims: To withdraw, release, or waive, with prejudice, any and all pending Federal Tort Claims Act claims, as well as any and all actionable appeals, grievances, district court actions, or other actions initiated, arising out of and or filed against the Department of Homeland Security or its current or past agents or employees, as of the date of the signing of this Agreement, including, but not limited to:

    (1) 186-MGMT-14, Standard Form (SF) 95 dated July 30, 2014; denied on November 24, 2015;
    (2) 186-MGMT-14, first request for reconsideration denied on May 28, 2015;
    (3) 186-MGMT-14, second request for reconsideration denied on July 2, 2015;
    (4) 215-MGMT-15, SF 95 dated November 13, 2014, denied on August 20, 2015;
    (5) 216-MGMT-15, SF 95 dated October 28, 2014; denied on August 20, 2015; and
    (6) 231-MGMT-15, dated June 25, 2015.

FOIA: To withdraw, release, or waive, with prejudice, any and all claims and litigation arising from Freedom of Information Act claims, appeals, grievances or other actions initiated or filed against Department of Homeland Security or its current or past agents or employees, as of the date of the signing of this Agreement.

c. Appellant's withdrawal of the above matters, as detailed in Paragraph 1.b., above, in no way affects any claims he may have before OWCP, *i.e.*, the Department of Labor.

d. To accept the terms set forth herein in full satisfaction of any and all claims, issues, and causes of action through the date of the execution of this Agreement;

e. By entering into this Agreement and as a condition thereto, Appellant, including Appellant's heirs, executors, representatives, attorneys, successors and assigns, hereby settles, releases, relinquishes, waives, and forever discharges the United States of America, Department of Homeland Security, their agents and employees, from any and all demands, rights, claims, or causes of action for any kind of relief whatsoever, whether before any forum, arbitrator, administrative agency, or court which he has raised, or which he may raise, and which arise out of, or are in any manner connected with, or related to Appellant's appeal and other matters referenced in Paragraph 1.b.,

EX F

above. Appellant agrees not to institute any lawsuit, complaint, grievance, appeal, or other action against the Agency, or any employee or member of the same, based on any matter which is the subject of the above-referenced Appeal and other matters referenced in Paragraph 1.b., above, or concerning any matter which could have been the subject of the Appeal or other matter referenced in Paragraph 1.b., above, up to and including the date when all parties have executed this Agreement;

f.   That Appellant enters into this Agreement with the Agency knowingly, voluntarily, and with full knowledge of its terms, and absent any coercion or duress;

g.   That he fully understands all of the terms and conditions of this Agreement and has been given a reasonable amount of time to consider this Agreement and to thoroughly discuss all aspects of this Agreement with his representative. In accordance with the Older Worker Benefit Protection Act, 29 U.S.C. § 626(f), Appellant was advised and understands that he can take up to twenty-one (21) days to consider this Agreement. Appellant also acknowledges that the Department advised him that could consult with his attorney before signing this Agreement, and the he has done so, having been represented by Rosemary Dettling, Esq., Federal Employee Legal Services Center, 1629 K Street, NW, Suite 300, Washington, DC 20006, during negotiations and prior to signing this Agreement. Appellant acknowledges that he was further advised that he may revoke this Agreement at any time within seven (7) days after signing it.

h.   That he is physically and mentally fit so as to comprehend the terms of this Agreement in its entirety; and

i.   To expressly waive any rights or claims he possesses or may possess to any and all remedies, damages, back pay, attorney's fees or costs, interests, payments or benefits of any kind arising from the above-referenced complaint and the matters that were raised or could have been raised therein.

In exchange for the promises of Appellant contained in Paragraph 1 (above), the Agency, subject to the conditions and limits set forth herein, agrees to:

a.   Pay Appellant the total sum of $55,000.00.

b.   Pay Appellant's representative the sum total of $30,000.00 for attorney's fees to be paid directly to Rosemary Dettling, Esq., Federal Employee Legal Services Center, 1629 K Street, NW, Suite 300, Washington, DC 20006. Each party shall otherwise be responsible for its/his own costs and attorney's fees arising from or related to the above-referenced Appeal and other matters referenced in Paragraph 1.b.

The Parties further understand and agree to the following terms:

a.   That this Agreement does not constitute an express or implied admission by any party of any liability, fault, wrongdoing, or of any violation of law, rule, or regulation, or of

EX F

any fact or allegation with respect to the matters giving rise to this Agreement and to the above-referenced Appellant.

b. That the content of this Agreement is confidential and is not to be disclosed by any person, except as follows: (1) to any governmental agency when such disclosure is required by federal, state, or local law; (2) to any party when such disclosure is required by a subpoena issued by a court of competent jurisdiction or by an administrative body; (3) to any Agency officials who are responsible for carrying out the terms of the Agreement or Agency employees or officials who otherwise have a need to know; (4) in any future proceedings involving the Parties to this Agreement; (5) to Appellant's family, attorney(s), and/or tax advisor; and (6) in any other disclosure required by applicable law or regulation. This Paragraph does not prohibit Agency employees from providing truthful responses about Appellant to an investigator or fact finder during the course of a background investigation or other investigation or inquiry, and the Agency will not be considered in breach of this Agreement for providing truthful responses in any investigation or inquiry.

c. That this Agreement contains the full and complete agreement between the parties. No promises or representations other than those stated herein have been made by either party.

d. That any amendment, modification, or addition to this Agreement must be made in writing and signed by both Parties. The waiver by one party of any breach of this Agreement shall not be deemed a waiver of any other prior or subsequent breach of this Agreement. Neither the Agency nor the Appellant shall be considered to have drafted this agreement for purposes of construing ambiguities against the drafter.

e. That this Agreement is for their mutual benefit and will not establish any precedent, nor will this Agreement be used as a basis for Appellant or any other person(s) or group(s) to seek or justify similar terms in any other case.

f. That any monetary payments of any kind are made to Appellant under the terms of this Agreement, the Agency makes no representation as to the tax consequences or liability arising from said payments. The Parties understand and agree that any tax consequences and/or liability from the payments to Appellant shall be the sole responsibility of Appellant.

g. No other promises or agreements shall be binding on the Parties unless mutually agreed to in writing and made a part of this Agreement by amendment.

h. That there is sufficient consideration supporting this Agreement.

i. That this Agreement shall be binding upon Appellant, his heirs, administrators, representatives, successors and assigns. The Agreement is also binding on the Agency and its successors.

EX F

    j.   That all matters discussed during mediation are confidential, subject to limited exceptions pursuant to the Administrative Dispute Resolution Act of 1996, 5 U.S.C. § 574, as amended.

4.  The Parties agree that this Agreement will be filed with the MSPB, which will retain jurisdiction of the matter only for the purpose of enforcing the terms of this Agreement.

5.  The Parties agree that this Agreement may be executed in counterparts. Signatures received via facsimile or email PDF shall constitute originals for purposes of the Agreement.

6.  This Agreement shall become effective as of the last date on which the Parties or Parties' representatives sign below.


_____
Appellant

_____
Appellant's Representative


_____
Agency Management Official
*(Title, Division/Unit)*


_11/23/2015_____
Date

_Nov 23, 2015____
Date


_____
Date


5

EX F

From:          To:9915403384841      11/23/2015 14:39    #056 P.001/005

UNITED STATES OF AMERICA
MERIT SYSTEMS PROTECTION BOARD
WASHINGTON REGIONAL OFFICE

STEVEN H. HALL,                    DOCKET NUMBER
      Appellant,             DC-0752-14-0243-I-1

    v.                             ADMINISTRATIVE JUDGE
                                 MICHELLE M. HUDSON
DEPARTMENT OF HOMELAND
    SECURITY,
      Agency.

## SETTLEMENT AGREEMENT

This is a global Settlement Agreement ("Agreement") resolving all claims, issues, and causes of action raised or which could have been raised between Steven H. Hall ("Appellant") and the Department of Homeland Security ("Agency") (collectively, the "Parties"), up to the date of this Agreement, including Appellant's MSPB Appeal Docket Number DC-0752-14-0243-I-1.

1. In exchange for the promise(s) of the Agency contained in Paragraph 2, below, Appellant agrees to the following:

   a. Appellant's signature on this Agreement constitutes his immediate withdrawal of the above-referenced appeal with prejudice. Once effective, this Agreement shall act as Appellant's withdrawal of his appeal to be filed with the MSPB and the above-referenced Administrative Judge.

   b. Appellant's signature on this Agreement also constitutes his withdrawal of the following:

   MSPB Appeals: to withdraw, release, or waive, with prejudice, any and all MSPB appeals, petition for review, grievances, or other actions initiated or filed against the Department of Homeland Security or its current or past agents or employees, as of the date of the signing of this Agreement, including, but not limited to:

       (1) MSPB No. DC-0752-14-0723-I-1; and
       (2) MSPB No. DC-0752-15-1063-I-1.

Agreement 3

1

Exhibit G

EEO Complaints: To withdraw, release, or waive, with prejudice, any and all formal and informal EEO claims, complaints, appeals, grievances, or other actions initiated or filed against the Department of Homeland Security or its current or past agents or employees. as of the date of the signing of this Agreement, including, but not limited to:

> (1) Agency No. HS-HQ-22253-2012/EEOC No. 570-2013-00245X;
> (2) Agency No. HS-HQ-00478-2013/EEOC No. 570-2013-00968X;
> (3) Agency No. HS-HQ-00804-2013;
> (4) Agency No. HS-HQ-02179-2013/EEOC No. 570-2014-00583X; and
> (5) Agency No. HS-HQ-23609-2015.

FTCA Claims: To withdraw, release, or waive, with prejudice, any and all pending Federal Tort Claims Act claims, as well as any and all actionable appeals, grievances, district court actions, or other actions initiated, arising out of and or filed against the Department of Homeland Security or its current or past agents or employees. as of the date of the signing of this Agreement, including, but not limited to:

> (1) 186-MGMT-14, Standard Form (SF) 95 dated July 30, 2014; denied on November 24, 2015;
> (2) 186-MGMT-14, first request for reconsideration denied on May 28, 2015;
> (3) 186-MGMT-14, second request for reconsideration denied on July 2, 2015;
> (4) 215-MGMT-15, SF 95 dated November 13, 2014, denied on August 20, 2015;
> (5) 216-MGMT-15, SF 95 dated October 28, 2014: denied on August 20, 2015; and
> (6) 231-MGMT-15, dated June 25, 2015.

FOIA: To withdraw, release, or waive, with prejudice, any and all claims and litigation arising from Freedom of Information Act claims, appeals, grievances or other actions initiated or filed against Department of Homeland Security or its current or past agents or employees, as of the date of the signing of this Agreement.

c.   Appellant's withdrawal of the above matters, as detailed in Paragraph 1.b., above, in no way affects any claims he may have before OWCP, *i.e.*, the Department of Labor.

d.   To accept the terms set forth herein in full satisfaction of any and all claims, issues, and causes of action through the date of the execution of this Agreement;

e.   By entering into this Agreement and as a condition thereto, Appellant, including Appellant's heirs, executors, representatives, attorneys, successors and assigns, hereby settles, releases, relinquishes, waives, and forever discharges the United States of America, Department of Homeland Security, their agents and employees, from any and all demands, rights, claims, or causes of action for any kind of relief whatsoever, whether before any forum, arbitrator, administrative agency, or court which he has raised, or which he may raise, and which arise out of, or are in any manner connected with, or related to Appellant's appeal and other matters referenced in Paragraph 1.b.,

2

EX G

above. Appellant agrees not to institute any lawsuit, complaint, grievance, appeal, or other action against the Agency, or any employee or member of the same, based on any matter which is the subject of the above-referenced Appeal and other matters referenced in Paragraph 1.b., above, or concerning any matter which could have been the subject of the Appeal or other matter referenced in Paragraph 1.b., above, up to and including the date when all parties have executed this Agreement;

f. That Appellant enters into this Agreement with the Agency knowingly, voluntarily, and with full knowledge of its terms, and absent any coercion or duress;

g. That he fully understands all of the terms and conditions of this Agreement and has been given a reasonable amount of time to consider this Agreement and to thoroughly discuss all aspects of this Agreement with his representative. In accordance with the Older Worker Benefit Protection Act, 29 U.S.C. § 626(f), Appellant was advised and understands that he can take up to twenty-one (21) days to consider this Agreement. Appellant also acknowledges that the Department advised him that could consult with his attorney before signing this Agreement, and the he has done so, having been represented by Rosemary Dettling, Esq., Federal Employee Legal Services Center, 1629 K Street, NW, Suite 300, Washington, DC 20006, during negotiations and prior to signing this Agreement. Appellant acknowledges that he was further advised that he may revoke this Agreement at any time within seven (7) days after signing it.

h. That he is physically and mentally fit so as to comprehend the terms of this Agreement in its entirety; and

i. To expressly waive any rights or claims he possesses or may possess to any and all remedies, damages, back pay, attorney's fees or costs, interests, payments or benefits of any kind arising from the above-referenced complaint and the matters that were raised or could have been raised therein.

2. In exchange for the promises of Appellant contained in Paragraph 1 (above), the Agency, subject to the conditions and limits set forth herein, agrees to:

   a. Pay Appellant the total sum of $55,000.00.

   b. Pay Appellant's representative the sum total of $30,000.00 for attorney's fees to be paid directly to Rosemary Dettling, Esq., Federal Employee Legal Services Center, 1629 K Street, NW, Suite 300, Washington, DC 20006. Each party shall otherwise be responsible for its/his own costs and attorney's fees arising from or related to the above-referenced Appeal and other matters referenced in Paragraph 1.b.

3. The Parties further understand and agree to the following terms:

   a. That this Agreement does not constitute an express or implied admission by any party of any liability, fault, wrongdoing, or of any violation of law, rule, or regulation, or of

EXG

any fact or allegation with respect to the matters giving rise to this Agreement and to the above-referenced Appellant.

b.  That the content of this Agreement is confidential and is not to be disclosed by any person, except as follows: (1) to any governmental agency when such disclosure is required by federal, state, or local law; (2) to any party when such disclosure is required by a subpoena issued by a court of competent jurisdiction or by an administrative body; (3) to any Agency officials who are responsible for carrying out the terms of the Agreement or Agency employees or officials who otherwise have a need to know; (4) in any future proceedings involving the Parties to this Agreement; (5) to Appellant's family, attorney(s), and/or tax advisor; and (6) in any other disclosure required by applicable law or regulation. This Paragraph does not prohibit Agency employees from providing truthful responses about Appellant to an investigator or fact finder during the course of a background investigation or other investigation or inquiry, and the Agency will not be considered in breach of this Agreement for providing truthful responses in any investigation or inquiry.

c.  That this Agreement contains the full and complete agreement between the parties. No promises or representations other than those stated herein have been made by either party.

d.  That any amendment, modification, or addition to this Agreement must be made in writing and signed by both Parties. The waiver by one party of any breach of this Agreement shall not be deemed a waiver of any other prior or subsequent breach of this Agreement. Neither the Agency nor the Appellant shall be considered to have drafted this agreement for purposes of construing ambiguities against the drafter.

e.  That this Agreement is for their mutual benefit and will not establish any precedent, nor will this Agreement be used as a basis for Appellant or any other person(s) or group(s) to seek or justify similar terms in any other case.

f.  That any monetary payments of any kind are made to Appellant under the terms of this Agreement, the Agency makes no representation as to the tax consequences or liability arising from said payments. The Parties understand and agree that any tax consequences and/or liability from the payments to Appellant shall be the sole responsibility of Appellant.

g.  No other promises or agreements shall be binding on the Parties unless mutually agreed to in writing and made a part of this Agreement by amendment.

h.  That there is sufficient consideration supporting this Agreement.

i.  That this Agreement shall be binding upon Appellant, his heirs, administrators, representatives, successors and assigns. The Agreement is also binding on the Agency and its successors.

4



From:                          To 9915403584541          11/23/2015 14:42     POBG P.005/005

    j.   That all matters discussed during mediation are confidential, subject to limited exceptions pursuant to the Administrative Dispute Resolution Act of 1996, 5 U.S.C. § 574, as amended.

4.  The Parties agree that this Agreement will be filed with the MSPB, which will retain jurisdiction of the matter only for the purpose of enforcing the terms of this Agreement.

5.  The Parties agree that this Agreement may be executed in counterparts. Signatures received via facsimile or email PDF shall constitute originals for purposes of the Agreement.

6.  This Agreement shall become effective as of the last date on which the Parties or Parties' representatives sign below.


_____        _____
Appellant                                    Date  11/23/2015


_____        _____
Appellant's Representative                  Date


_____        _____
Agency Management Official                 Date  Nov. 23, 2015
(Title, Division/Unit)


5

EX G



U.S. Department of Homeland Security
Washington, DC 20528

October 15, 2012

**VIA ELECTRONIC E-MAIL**

MEMORANDUM FOR:   Roy Neigh
                  Management and Program Analyst
                  Chief Readiness Support Office
                  Department of Homeland Security

FROM:             Kathleen Lane  **M K LANE**
                  Disability Employment Program Manager
                  Headquarters Equal Employment Opportunity (HQ EEO)

SUBJECT:          Reasonable Accommodation Request
                  DHS Case Number - HQ-12-RA-0031 – Steven H. Hall

This memorandum constitutes our response to the request of Mr. Stephen H. Hall, Administrative
Specialist, GS-0301-12, for a reasonable accommodation, received in this office on September 13, 2012.

A request for reasonable accommodation is the first step in an informal, interactive process between the
individual and the manager. Effective communication between the manager and employee is vital to
identifying and implementing effective accommodations. DHS is required to make reasonable
accommodations to a known physical or mental limitation of a "qualified individual with a disability".
This requirement may be waived when DHS can show that there is no effective accommodation that
would not pose an undue hardship on the agency. (29 C.F.R. §§ 1620.2 (o) and (p))

Due to impairments that substantially limit several of Mr. Hall's major life activities (including
breathing and concentrating), Mr. Hall requested to work from alternative location other than Saint
Elizabeth's office, located at 2701 Martin Luther King Jr. Ave., SE, Washington, DC. In support of the
reasonable accommodation request, the following documents were provided to this office: Mr. Hall's
medical documentation from his medical providers, dated September 4 and September 6, 2012, received
on September 13, 2012. Additional medical documentation was requested by this office on September
20, 2012 and received on October 4, 2012. Based on my review of the submitted documentation, Mr.
Hall has shown that he is an "individual with a disability" who may be entitled to a reasonable
accommodation under the Rehabilitation Act of 1973, as amended.

1                                    Exhibit H

At this time, you as a management official must take the following steps in order to comply with the Rehabilitation Act of 1973, as amended:

- Continue to engage in an interactive process with Mr. Hall regarding his request, considering the requested accommodation, as well as considering whether there may be other accommodations that would also be effective for him. (Examples include: Additional air cleaners for the office location, limiting Mr. Hall's exposure to outside construction dust, supplying Mr. Hall with a filter mask for times where the dust is pervasive.)

- To document your decision regarding the reasonable accommodation, you should provide your response, in writing, to Mr. Hall, as soon as possible, within a reasonable amount of time. Please, provide a copy of your response to this office, for inclusion in the Reasonable Accommodation Request File.

- If you wholly deny the request for a reasonable accommodation, you must issue a written decision to Mr. Hall, with a copy to Carl Lucas, EEO Director, DHS Headquarters at carl.lucas@hq.dhs.gov. The explanation for the denial of the requested accommodation should be written in plain English, clearly stating the specific reasons for the denial, for example, why there is no accommodation that would be effective or why a specific accommodation would result in undue hardship. For more information about what constitutes "undue hardship", please consult the Equal Employment Opportunity Commission's Enforcement Guidance on "Reasonable Accommodation and Undue Hardship under the Americans with Disabilities Act", located at http://eeoc.gov/policy/docs/accommodation.html.

- The written notice of denial of reasonable accommodation must also inform the individual that he/she has the right to file an EEO complaint. An example of the appropriate language: *"If you believe this action resulted from prohibited discrimination based on race, color, religion, sex, national origin, physical or mental disability, age (40 or over), genetic information, and/or participation in the Equal Employment Opportunity process, you may contact the HQ DHS EEO Office at 202-245-1133 or james.cooley@hq.dhs.gov. If you choose to contact the EEO Office, you must do so within 45 calendar days of the effective date of this action."* The employee may also have rights to pursue Merit Systems Protection Board (MSPB) procedures.

I hope this information is helpful. If you questions, please contact me on 202-245-1132 or via email at kathleen.lane@hq.dhs.gov.


Cc: Steven H. Hall

2

EX H



U.S. Department of Homeland Security
Washington, DC 20528

May 13, 2013

**VIA ELECTRONIC E-MAIL**

MEMORANDUM FOR:    Christopher Mills
Director Technical Support and St. Elizabeth's Program Manager
Chief Readiness Support Office
Department of Homeland Security

FROM:              Kathleen Lane    *M Kathleen Lane*
Disability Employment Program Manager
Headquarters Equal Employment Opportunity (HQ EEO)

SUBJECT:           Reasonable Accommodation Request
DHS Case Number - HQ-12-RA-0031 – Steven H. Hall

This memorandum constitutes our advice to you regarding your employee; Mr. Steven Hall's request for reasonable accommodations and response to Mr. Hall's email of February 26, 2013, where he indicated that he was unable to work at St. Elizabeth's, and where he stated that the accommodations provided by the Chief Readiness Support Office (CRSO), did not accommodation his conditions.

Your office indicated that there is no other location where he could perform your current job where there would be a secure computer connection. CRSO management also indicated that the 650 Mass. Avenue N.W., location he requested, is not available due to a previous management decision.

DHS is required to make reasonable accommodations to a known physical or mental limitation of a "qualified individual with a disability". This requirement may be waived when DHS can show that there is no effective accommodation that would not pose an undue hardship on the agency. (29 C.F.R. §§ 1620.2 (o) and (p)).

Under these circumstances where Mr. Hall cannot continue to perform essential functions of his job, as a last resort, DHS must consider whether there is a reassignment for which he would qualify at the Agency, and to which he could be non-competitively reassigned. Non-competitive reassignment as a reasonable accommodation will require searching beyond the present position, and outside of CRSO. Your organization will work with DHS, Office of the Chief Human Capital Office (CHCO), the responsible office for taking the lead on searching for a position that would accommodate Mr. Hall.

In order to narrow the search for potential vacancies, I have attached DHS's standard questionnaire, which Mr. Hall completed, a current resume, and a copy of Mr. Hall's current position description. Mr. Hall also provided an additional parameter from an email dated May 7, 2013, "*...Just make sure the new*

3                                                                EX H

Based on the information provided, CHCO will attempt to identify vacant positions for which he may be eligible for non-competitive reassignment. The job search will focus on positions that are or will become vacant within 30 days and that are as free from dust as possible. In order to be reassigned, Mr. Hall must be qualified for the reassigned position. Any offer for reassignment will be in writing to Mr. Hall, and a copy of the position description; career level definition, and job analysis for the position, will be attached for his review.

He must indicate his acceptance or declination of the offer by signing and dating the offer, and returning the form to the point of contact no later than ten (10) business days from the receipt of the notice. Failure to return the completed form within this timeframe will be considered a declination of this offer. He may fax his reply the point of contact within CHCO.

If you have questions, please contact me on 202-245-1132 or via email at _____.

Attachments (3)

cc: Mr. Steven H. Hall

4                                                    EX H

## COVER SHEET

Total sheets including fax cover sheet: **12**

Date: March 6, 2016

To:   Merit Systems Protection Board

Fax:   (703) 756-7112

From:  Steven Hall

Cell:  (301) 801-6506
Fax/Home  (410) 286-7170

Subject: **COMPLAINT AGAINST DHS GENERAL COUNSEL ATTORNEY(S)**

Comments: I am providing the Board a copy of my latest complaint against DHS General Counsel Attorney(s) and providing proof that DHS General Counsel Attorneys have received a copy via facsimile.  For further information contact me at my cellular (301) 801-6506 or email: Steven.H.Hall@comcast.net.

Very respectfully,

STEVEN H. HALL
Navy Chief Petty Officer (Retired)
Veterans Affairs Service-connected
Disabled Veteran

RECEIVED MSPB
2016 MAR -9 PM 2: 33

Exhibit I

**HP Officejet Pro 8610 Series**

**Fax Log for**
Steven Hall Home Fax
(410) 286-7170
Mar 06 2016 10:32PM

### Last Transaction

| Date | Time | Type | Station ID | Duration | Pages | Result |
|------|------|------|-----------|----------|-------|--------|
| | | | | Digital Fax | | |
| Mar 6 | 10:29PM | Fax Sent | 17037567112 | 3:31<br>N/A | 12 | OK |

Z                    EX I

## STEVEN HALL HOME FAX COVER SHEET

Total sheets including fax cover sheet: **10**

Date: March 6, 2016

To: Ms. Letitia Byers/Mary K. Monahan,          Fax:   1 (202) 447-3111
    DHS General Counsel Attorneys

From:  Steven Hall                              Cellular: (301) 801-6506
                                            Home Phone/Fax: (410) 286-7170

Subject: COMPLAINT AGAINST DHS GENERAL COUNSEL ATTORNEY(S)

Comments: I am providing you a copy of my latest MSPB complaint, you have already been provided the initial portion of my complaint on July 9, 2015 and a second copy around January 21, 2016.  For further information contact me by writing to 7141 Chesapeake Village Blvd, Chesapeake Beach, MD 20732, call (301) 801-6506, and/or email: Steven.H.Hall@comcast.net.

STEVEN H. HALL
United States Navy Chief Petty Officer, Retired
Veterans Affairs Service-connected Disabled Veteran

3                    EX I

**HP Officejet Pro 8610 Series**

**Fax Log for**
Steven Hall Home Fax
(410) 286-7170
Mar 06 2016 10:08PM

## Last Transaction

| Date | Time | Type | Station ID | Duration | Pages | Result |
|------|------|------|------------|----------|-------|--------|
| | | | | Digital Fax | | |
| Mar 6 | 10:04PM | Fax Sent | 12024473111 | 3:17 N/A | 10 | OK |

4        EX I

**UNITED STATES OF AMERICA**
**MERIT SYSTEMS PROTECTION BOARD**
**OFFICE OF THE CLERK OF THE BOARD**

**STEVEN H. HALL,**                                **DOCKET NUMBER**
                   **Appellant,**
                                                   _____

**v.**

**DEPARTMENT OF HOMELAND,**          **Date: March 7, 2016**
         **SECURITY**
                   **Agency.**

## COMPLAINT AGAINST GENERAL COUNSEL ATTORNEY(S)

Under 5 C.F.R 1201.114 and 5 C.F.R 1201.115, I am filing this complaint regarding

prohibited personnel practices and retaliation by Department of Homeland Security, General

Counsel Attorney(s). I was informed by Ms. Jacqueline Ivey, a U.S. Equal Employment

Opportunity Commission (EEOC) Administrative Judge that the EEOC Washington Field

Office does not have jurisdiction regarding this complaint. (See Exhibit A).

Around July 2, 2015 I received a letter from the Department of Labor (DOL), Office of

Workers' Compensation Program (OWCP), District 3 office that Ms. Letitia Byers had inquired

about my compensation regarding OWCP case #252510109. (See Exhibit B). Ms. Byers had

possessed vital case information that was provided to her by Ms. Grace Lee, a former DHS

General Counsel attorney. Also, OWCP recommended to Ms. Lee to "let the matter go" because

DHS Management did not provide sufficient evidence to recoup alleged overpayments

(Continuation of Pay) from September 23, 2012 to March 29, 2013.

5                                    EX I

On May 22, 2013, I provided OWCP District 25 detailed work related medical information. On June 10, 2013, OWCP District 25 office rescinded my workers compensation benefits stating that I did not establish a casual relationship and that DHS Air Quality Test (AQT) indicated that the air quality was normal inside three DHS trailers at St. Elizabeth's.  On June 24, 2013, I had requested reconsideration from OWCP District 25 office regarding my work-related injuries; respiratory issues suffered at St. Elizabeth's construction site.

On November 7, 2013, OWCP District 25 office denied my requested reconsideration. On January 9, 2014, I had appealed my case to DOL, Employees Compensation Advisory Board (ECAB).  On May 8, 2013, OWCP District 25 and DHS Workers' Compensation Advisor met during a secret meeting and discussed my medical issues and an AQT conducted around September 28, 2012 for which was biased, untimely, and inconclusive.

DHS Management did not allow me to establish a casual relationship, challenge the AQT that was provided to OWCP, or gave me the opportunity to provide the burden of proof regarding my Reactive Airway Disease.  On June 18, 2014, ECAB denied my case stating that I had provided new material after OWCP's decision date.

On July 3, 2014 and August 11, 2014, I appealed ECAB's decision and provided medical documentation that established a casual relationship and explained employment compensable factors that were related to my work-related injuries suffered in a performance of duty at the St. Elizabeth's in August 2012 and February 2013.  On October 1, 2014, OWCP transferred my OWCP case from the District 25 office in Washington, DC to District 3 in Philadelphia.

EX I

On October 7, 2014, I had informed OWCP District 3 that Mr. VandenBosche failed to provide any information that Types of particles (dust) existed in the HMD1 and Security trailers. (See Exhibit C). Around October 16, 2014, I requested reconsideration based on my established casual relationship and employment compensable factors. ECAB granted me reconsideration based on the fact that OWCP and DHS Workers' Compensation Advisor did not allow me the opportunity to establish a casual relationship or challenge DHS Management AQT.

On January 12, 2015, OWCP District 3 failed to review Exhibit C and made a decision to decline my request for workers' compensation benefits. On January 20, 2015, I had appealed my case to ECAB and provided my appeal information from July 2014 and August 2014. On July 2, 2015, I received Exhibit B and DHS Management was aware that I had requested reconsiderations from OWCP and appealed my case to ECAB. On September 21, 2015, ECAB denied my request for benefits and I responded immediately and requested another appeal.

On November 20, 2015, Ms. Byers fail to inform Ms. Michelle Hudson, a Merit Systems Protection Board (MSPB) Administrative Judge during a Pre-Hearing Conference regarding MSPB case #DC-0752-14-0243-I-1 that I had filed workers' compensation cases to include a respiratory issue, mental stress, and retaliation. Ms. Byers fail to inform Judge Hudson in her response to my Petition for Review (Removal/Termination) that my appeal for respiratory was still pending with ECAB.

On December 10, 2015 I filed a Petition for Review (Indefinite Suspension) regarding MSPB case DC-0752-15-1063-I-1. Also, Ms. Byers fail to inform MSPB Administrative Judge Sarah

EX I

Clement that workers' compensation cases were pending.  Ms. Byers fail to contact Rosemary

Dettling, my former attorney or admit to contacting OWCP District 3 in regards to handling

my workers' compensation when it was known to her that my cases were pending a resolution.

Ms. Byers' lack of communication and conflict of interest eliminated fair due process by

opposing parties and counsel while secretly defending the agency and protecting herself from

being questioned by DHS Equal Employment Office.

   Ms. Byers was aware that I had challenged, requested reconsideration, and appealed my

workers' compensation cases.  Ms. Byers abused her authority, manipulated the MSPB process,

provided false statements, and purposely withheld vital evidence and information from two

MSPB Administrative Judges, and my attorney.  Ms. Byers collaborated and corroborated with

DHS Management employees in an attempt to eliminate my workers' compensation cases

without obtaining all pertinent and factual air quality information.  Ms. Byers denied me fair due

process regarding my MSPB cases; indefinite suspension and removal/termination from Federal

service.  I am requesting that this complaint is accepted regarding prohibited personnel practices

and retaliation by DHS General Counsel Attorney(s) and Management employees.

STEVEN H. HALL
Veterans Affairs
Service-connected Disable Veteran

8                    EX I

**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**
**Washington, D.C. Field Office**
**131 M Street, NE, Fourth Floor**
**Washington, D.C. 20507**

February 25, 2016

Mr. Steven Hall
7141 Chesapeake Village Blvd.
Chesapeake Beach, MD 20732

Dear Mr. Hall,

I am returning the enclosed documents to you as the EEOC Washington Field Office does not have jurisdiction over this matter.  Once you file a hearing request then the EEOC Washington Field Office will have jurisdiction over your case.

Sincerely,


Jacqueline M. Ivey
Administrative Judge

9

Exhibit I

File Number: 252510109
ff-O-NO

U.S. DEPARTMENT OF LABOR

OFFICE OF WORKERS' COMP PROGRAMS
PO BOX 8300 DISTRICT 3 PHI
LONDON, KY 40742-8300
Phone:  (267) 687-4160

June 29, 2015

Date of Injury: 08/04/2012
Employee:  STEVEN H. HALL

DEPARTMENT OF HOMELAND SECURITY
MANAGEMENT DIRECTORATE
CHCO-HRMS-WORKERS' COMP COORDINATOR
245 MURRAY LANE, SW, STOP 0175
WASHINGTON, DC 20528

ATTN: Letitia Byers, Esquire

Dear Ms. Beyers:

I am writing in response to your recent phonecalls concerning the compensation claim of Steven H. Hall, Case #252510109.

You have inquired regarding whether DOL will be handling the overpayment or will Homeland Security.  Please be advised that we will address this matter as soon as possible.

I trust that this is responsive to your inquiries.

Sincerely,

Ann Bazik
Supervisory Claims Examiner

STEVEN H HALL
7141 CHESAPEAKE VILLAGE BLVD
CHESAPEAKE BEACH, MD 20732

10                                    Exhibit I

If you have a disability (a substantially limiting physical or mental impairment), please contact our office/claims examiner for information about the kinds of help available, such as communication assistance (alternate formats or sign language interpretation), accommodations and modifications.

October 7, 2014

U.S. Department of Labor
DFEC/Office of Workman Compensation Programs
P.O. Box 8300
London, KY 40742

Subject: RECONSIDERATION REGARDING CONCEALED AND VITAL INFORMATION FOR
OWCP CASE FILE 252510109 AND ECAB DOCKET 2014-1766

DHS Management deceived and manipulated OWCP claims examiners by providing inaccurate information
and concealed vital information regarding asbestos and lead contamination in building 37 at St. Elizabeth's in
late 2010 and early January 2011.

*On September 11, 2012, Mr. Neigh informed me that AQT'S were being performed as confirmed from
attachment (1), but he concealed the early September 2012 AQT results from me.* My physicians and I
were not informed that Mr. VandenBosche was scheduled to perform an AQT on Sep 28, 2012. Mr. Neigh
concealed the vital information while disputing my claims for worker's compensation benefits. OWCP
claims examiners were aware that DHS Management concealed vital information.

→ *GSA hired Mr. VandenBosche of TTL Arc Environmental to perform AQT's in HMD 1/2 trailers and he
failed to provide any AQT results pertaining to the Types of Particles in HMD 1 and the Security trailers,
and he was not aware of any employee complaint concerns.* GSA, DHS, and Mr. VandenBosche never
contacted my physicians and I regarding air quality issue in the HMD trailers and building 37.

GSA owns the HMD 1/2 trailers and the AQT was scheduled for September 28, 2012 and this was a
contractual agreement with DHS. OWCP claims examiners made an inaccurate decision to deny me
worker's compensation benefits and they were not aware that GSA owned the HMD 1/2 trailers. *GSA
initiated the AQT's at St. Elizabeth's and DHS Management never informed GSA of any employee
complaint concerns regarding my respiratory; reactive airway disease and obstructive sleep apnea.*

DHS Management waited almost eight months (September 2012 - May 2013) to provide OWCP claims
examiners an Air Quality Sample Report (AQSR) that was bias, untimely, and inconclusive. OWCP claims ←
examiners failed to validate, evaluate, and analyze the AQSR and were unfamiliar with GSA Scope of Work.

→ *OWCP claims examiners and DHS Management collaborated in a conspiracy to deny worker's
compensation benefits and this resulted in me being removed me from the Federal service unjustly.* The
Office of Worker's Compensation Program division must modify the previous decision and pay me worker's
compensation benefits from March 2013 through October 18, 2013.

Bldg. 37 is Hitchcock Hall
ECOMP DCN 143 2126

STEVEN H. HALL
Veterans Affairs Service-connected

Disabled Veteran

11                                                      Exhibit I

CERTIFICATE OF SERVICE

   I certify that the attached Documents(s) was (were) sent as indicated this day to each of the following:

<u>Agency Representatives</u>

Facsimile   Ms. Letitia Byers and Ms. Mary K. Monahan
      Department of Homeland Security
      245 Murray Lane, SW
      Mail Stop 0485
      Washington, DC 20528
      Facsimile (202) 447-3111

Facsimile   <u>Merit Systems Protection Board</u>

      Clerk for the Merit Systems Protection Board
      Merit Systems Protection Board
      1901 South Bell Street, Suite 950
      Arlington, VA 22202-4802
      Facsimile (703) 756-7112

<u>March 6, 2016</u>              
  (Date)          STEVEN H. HALL
              Appellant

12

**Exhibit** I

**Clerk for the Merit Systems Protection Board**

Table of Contents

Complaint against DHS General Counsel Attorney(s)                    1-4

Exhibit A - EEOC Notification Letter                                5

Exhibit B - OWCP District 3 Office Letter                           6

Exhibit C - My letter to DFEC/OWCP                                  7

Exhibit D - Certificate of Service                                  8-9

*[signature]*
3/6/2016

13                                                  EX I

# ATTACHMENT 2

| | |
|---|---|
| **From:** | Rosemary Dettling |
| **To:** | Byers, Letitia |
| **Cc:** | JDekke@felsc.com |
| **Subject:** | Re: Hall, MSPB Appeal No. DC-0752-14-0243-I-1 |
| **Date:** | Saturday, November 21, 2015 12:09:39 AM |

Hi Ms. Byers:

11/20/15 →   I was in a hearing today and was not able to participate in the teleconference with Judge Hudson. I was happy to hear the parties were close to settling.

I wanted to update you on some things. After work today, Mr. Hall reached out to me and Ms. Dekker. He said he was grateful the agency was willing to settle, but he had serious reservations about settling without having the termination expunged from his record. While he is currently working at the Department of the Navy, his job is a "not to exceed one year" position. It ends next September 2016. He is very worried that at the end of that term he will be unemployed and will not be able to find a new job. He has a family to support and he is worried about their future.

As a former federal employee, I know that it is virtually impossible for a fired federal employee to get another federal job when they have a termination in their record. In fact, it is difficult to get **any** job, as most private sector employers also ask prospective employees if they have been terminated.

I know the agency's settlement offer was exceedingly generous. Please don't get me wrong. However, I can't help but agree with Mr. Hall that it is very important to get the termination out of his record.

I know that the agency does not want to do this and I can appreciate the agency's reservations. I have been his representative for the last few years and I know that he has done certain things that the agency finds annoying and/or threatening.

Please consider this. I believe we can agree to other terms that would appease the agency, while allowing Mr. Hall to work again. If the agency agrees to rescind the termination, Mr. Hall will agree (in writing) to never apply to the agency again. He will agree to: never contact the agency officials again; to cease and desist from sending letters to the agency; and to never threaten any agency employees. He will also agree to keep the settlement terms and the termination confidential. That stipulation would prohibit Mr. Hall from bad-mouthing the agency in any forum, publicly or privately. He understands that he would be required to reimburse the agency the 85k if he breaches these terms.

Please pass this request on to the settlement official and let me know if you would like to discuss these terms. We are open to other suggestions and are hopeful that this case can be resolved.

Rosemary Dettling, Esq.
Federal Employee Legal Services Center
1629 K Street, NW
Suite 300
Washington, DC 20006

Exhibit J

# ATTACHMENT 1

| | |
|---|---|
| **From:** | Rosemary Dettling |
| **To:** | Byers, Letitia; Joanne Dekker; Steven Hall |
| **Cc:** | Rosemary Dettling |
| **Subject:** | Re: Hall, MSPB Appeal No. DC-0752-14-0243-I-1 |
| **Date:** | Thursday, November 12, 2015 3:17:54 PM |

Hi Ms. Byers,

I am in a deposition today and cannot call you. I talked to Mr. Hall about settlement. I told him the judge recommended that we settle for a clean record. He informed me that he does not want to settle for a clean record. He still wants the job, back pay, and attorney fees.

Please be on notice that Joanne Dekker will be working with me on this case. She is copied here. She will be the main point of contact from here on out.

Thanks.


Rosemary Dettling, Esq.
Federal Employee Legal Services Center
1629 K Street, NW
Suite 300
Washington, DC 20006
rdettling@felsc.com
Tel. 202-390-4741
Fax 202-379-9772



On Nov 12, 2015, at 3:11 PM, Byers, Letitia <letitia.byers@hq.dhs.gov> wrote:

Ms. Dettling:

The Administrative Judge in this matter suggested that I contact you directly regarding Appellant's settlement offer to withdraw this appeal in exchange for a "clean paper" resignation. Would you please contact me to discuss?

Letitia M. Byers
Attorney-Advisor for Labor & Employment
General Law Division
U.S. Department of Homeland Security
Office of the General Counsel
Washington, DC 20528
Tel. (202) 447-3507
Mob. (202) 495-9485
Fax (202) 447-3111
Letitia.Byers@hq.dhs.gov

This communication, along with any attachments, is covered by federal and state law governing electronic communications and may contain confidential and legally privileged information. If the reader of this message is not the intended recipient, you are hereby notified that any dissemination, distribution, use or copying of this message is strictly prohibited. If you have received this in error,

2                                                                          EX J

Tel. 202-390-4741
Fax 202-379-9772
rdettling@felsc.com


On Nov 12. 2015, at 3:11 PM, Byers, Letitia <letitia.byers@hq.dhs.gov> wrote:

Ms. Dettling:

The Administrative Judge in this matter suggested that I contact you directly regarding Appellant's settlement offer to withdraw this appeal in exchange for a "clean paper" resignation.  Would you please contact me to discuss?

Letitia M. Byers
Attorney-Advisor for Labor & Employment
General Law Division
U.S. Department of Homeland Security
Office of the General Counsel
Washington, DC 20528
Tel. (202) 447-3507
Mob. (202) 495-9485
Fax (202) 447-3111
Letitia.Byers@hq.dhs.gov

This communication. along with any attachments, is covered by federal and state law governing electronic communications and may contain confidential and legally privileged information.  If the reader of this message is not the intended recipient, you are hereby notified that any dissemination. distribution. use or copying of this message is strictly prohibited.  If you have received this in error. please reply immediately to the sender and delete this message.  Thank you.

3                    EX J

## Hall, Steven H CIV CNIC HQ, N13

| | |
|---|---|
| **From:** | Joanne Dekker <jdekker@felsc.com> |
| **Sent:** | Monday, November 23, 2015 10:33 |
| **To:** | Hall, Steven H CIV CNIC HQ, N13; Rosemary Dettling |
| **Subject:** | [Non-DoD Source] Re: AWARDS BOARD MEETING |

**Importance:**      High

Steven:

The agency has offered to pay $30,000 and give you a clean record.  Please respond immediately as we are under ←——
deadlines.

From: Hall, Steven H CIV CNIC HQ, N13 <steven.h.hall3@navy.mil>
Sent: Monday, November 23, 2015 9:46 AM
To: Joanne Dekker; Rosemary Dettling
Cc: Hall, Steven H CIV CNIC HQ, N13
Subject: AWARDS BOARD MEETING

Please email DHS paperwork to Steven.H.Hall3@navy.mil because my work email firewall will not allow my personal email to transmit through.  Also, I think we suppose to dial into MSPB ( 1 800-793-9878 PIN 1234104) at 1pm or 2pm. Thanks.

V/r

Steven Hall
Managemen and Program Analyst, N13
716 Sicard St., SE Suite 1000
Washington Navy Yard, DC 20374-5140
Tel: (202) 685-8408
DSN: 288-8408
Fax: (202) 433-2389
Cellular (301) 801-6506 (please call this number during normal working hours from 7:30am to 4pm)

**FOR OFFICIAL USE ONLY-PRIVACY SENSITIVE** This e-mail, including any attachments, may contain information that requires protection from unauthorized disclosure.  Do not disseminate this e-mail, or its contents, to anyone who does not have an official need for access.  Any misuse or unauthorized disclosure can result in both civil and criminal penalties.

4                                          EX J

## Hall, Steven H CIV CNIC HQ, N1

| | |
|---|---|
| **From:** | Joanne Dekker <jdekker@felsc.com> |
| **Sent:** | Monday, November 23, 2015 13:43 ← |
| **To:** | Hall, Steven H CIV CNIC HQ, N13 |
| **Cc:** | Rosemary Dettling |
| **Subject:** | [Non-DoD Source] Fw: Settlement agreement 11-23-15 |
| **Attachments:** | Settlement agreement 11-23-15.doc |

Hi, Steven,


Attached is the settlement agreement for your review and signature.  Please sign the document and return it to me either by fax or by email.  My fax number is also my direct line, 540-338-4841.

Agreement 1


Thanks,


Joanne


_____

From: Byers, Letitia <letitia.byers@hq.dhs.gov>
Sent: Monday, November 23, 2015 1:39 PM
To: Joanne Dekker
Subject: Settlement agreement 11-23-15




Letitia M. Byers

Attorney-Advisor for Labor & Employment

General Law Division

U.S. Department of Homeland Security

Office of the General Counsel

5   EX J

Thanks,


Joanne


_____

From: Byers, Letitia <letitia.byers@hq.dhs.gov>
Sent: Monday, November 23, 2015 2:12 PM   ⟵
To: Joanne Dekker
Subject: Settlement agreement 11-23-15


REVISED – Use this version.


See 1.g.  I forgot to add the language from the ADEA.   ⟵ *OW BPA*


Please forgive the oversight.


Letitia M. Byers

Attorney-Advisor for Labor & Employment

General Law Division

U.S. Department of Homeland Security

Office of the General Counsel

Washington, DC 20528

Tel. (202) 447-3507

Mob. (202) 495-9485

*6*                    *EX J*

## Hall, Steven H CIV CNIC HQ, N1

| | |
|---|---|
| **From:** | Joanne Dekker <jdekker@felsc.com> |
| **Sent:** | Monday, November 23, 2015 14:15 |
| **To:** | Hall, Steven H CIV CNIC HQ, N13 |
| **Cc:** | Rosemary Dettling |
| **Subject:** | [Non-DoD Source] REVISED: Fw: Settlement agreement 11-23-15 |
| **Attachments:** | Settlement agreement 11-23-15.doc |

Steven:

Attached is a revised agreement that includes a release of any age discrimination claims that you may have or had.

Please sign and return this version via fax at 540-338-4841 or by return email.

Thanks,                           Agreement 2

Joanne

---

From: Byers, Letitia <letitia.byers@hq.dhs.gov>
Sent: Monday, November 23, 2015 2:12 PM
To: Joanne Dekker
Subject: Settlement agreement 11-23-15

REVISED – Use this version.

See 1.g.  I forgot to add the language from the ADEA.

Please forgive the oversight.

211            7            EXJ

## Hall, Steven H CIV CNIC HQ, N1

| | |
|---|---|
| **From:** | Joanne Dekker <jdekker@felsc.com> |
| **Sent:** | Monday, November 23, 2015 14:34 ← |
| **To:** | Hall, Steven H CIV CNIC HQ, N1 |
| **Subject:** | [Non-DoD Source] Fw: REVISED: Fw: Settlement agreement 11-23-15 |
| **Attachments:** | Settlement agreement 11-23-15.doc |

Hi, Steven,`

I need you to sign and return this version of the settlement agreement.  The ones you signed and forwarded do not contain the ADEA language.

Thanks,

Joanne

_____

From: Joanne Dekker
Sent: Monday, November 23, 2015 2:14 PM
To: Hall, Steven H CIV CNIC HQ, N13
Cc: Rosemary Dettling
Subject: REVISED: Fw: Settlement agreement 11-23-15

Steven:

Attached is a revised agreement that includes a release of any age discrimination claims that you may have or had.

Please sign and return this version via fax at 540-338-4841 or by return email.

8    EX J

**Hall, Steven H CIV CNIC HQ, N1**

| | |
|---|---|
| **From:** | Joanne Dekker <jdekker@felsc.com> |
| **Sent:** | Monday, November 23, 2015 15:00 |
| **To:** | Letitia Byers |
| **Cc:** | Rosemary Dettling |
| **Subject:** | [Non-DoD Source] Hall settlement agreement |
| **Attachments:** | Hall executed settlement.pdf |

Letitia:

Attached is the executed settlement agreement.  Please let me know if you have any difficulty opening the attachment. Please forward a fully-executed copy to me so that our files will be complete.

I realize with Thanksgiving this week that payment may be slowed down, but if you can give me an estimate on when we can expect payment that would be helpful.

Best regards,

*Agreement 2*

Joanne

*EX J*

## Hall, Steven H CIV CNIC HQ, N13

| | |
|---|---|
| **From:** | Joanne Dekker <jdekker@felsc.com> |
| **Sent:** | Monday, November 23, 2015 16:38 ← |
| **To:** | Hall, Steven H CIV CNIC HQ, N13 |
| **Cc:** | Rosemary Dettling |
| **Subject:** | [Non-DoD Source] Fw: Hall settlement agreement |
| **Attachments:** | Settlement Agreement 11-23-15 FINAL.pdf |

For your files.

Joanne

---

From: Byers, Letitia <letitia.byers@hq.dhs.gov>
Sent: Monday, November 23, 2015 4:33 PM
To: Joanne Dekker
Cc: Rosemary Dettling
Subject: RE: Hall settlement agreement

Joanne:

Attached is a copy of the executed agreement.   Agreement 3

I will follow-up on the payment information, as soon as possible.

I will contact the AJ to update her and file a copy of the agreement.

Letitia M. Byers

Attorney-Advisor for Labor & Employment

General Law Division

U.S. Department of Homeland Security

10                                                          EX J

# ATTACHMENT 3

| | |
|---|---|
| **From:** | Byers, Letitia |
| **To:** | Joanne Dekker |
| **Cc:** | Rosemary Dettling |
| **Subject:** | RE: Hall v. DHS |
| **Date:** | Tuesday, November 24, 2015 10:24:11 AM |

Joanne:

The OWBPA clause applies to waiver of any age discrimination claims, which Mr. Hall has not raised in any of his EEO cases. It is the Agency's position, therefore, that the parties have a fully executed agreement, which the MSPB retains jurisdiction for enforcement purposes.

I am available after 11:45 a.m. today for a call with Administrative Judge Hudson should you wish to contact her.

Letitia M. Byers
Attorney-Advisor for Labor & Employment
General Law Division
U.S. Department of Homeland Security
Office of the General Counsel
Washington. DC 20528
Tel. (202) 447-3507
Mob. (202) 495-9485
Fax (202) 447-3111
Letitia.Byers@hq.dhs.gov

This communication, along with any attachments. is covered by federal and state law governing electronic communications and may contain confidential and legally privileged information. If the reader of this message is not the intended recipient. you are hereby notified that any dissemination. distribution. use or copying of this message is strictly prohibited. If you have received this in error. please reply immediately to the sender and delete this message. Thank you.

**From:** Joanne Dekker [mailto:jdekker@felsc.com]
**Sent:** Tuesday, November 24, 2015 8:24 AM
**To:** Byers, Letitia
**Cc:** Rosemary Dettling
**Subject:** Hall v. DHS

*I compatance*

Good morning, Letitia.

Mr. Hall has advised us that he wishes to exercise his rights under OWBPA to reconsider the settlement agreement, and as provided by paragraph 1.g of the settlement agreement.

Best regards,

11        EX J

## Hall, Steven H CIV CNIC HQ, N13

| | |
|---|---|
| **From:** | Hall, Steven H CIV CNIC HQ, N13 |
| **Sent:** | Friday, November 27, 2015 7:41 |
| **To:** | Joanne Dekker |
| **Cc:** | RDettling@felsc.com; Hall, Steven H CIV CNIC HQ, N13 |
| **Subject:** | Revoking Settlement Agreement |
| **Signed By:** | steven.h.hall3@navy.mil |

Ms. Dekker and Ms. Dettling,

I am requesting that one of you at least respond to my request to revoke settlement agreement no later than 2pm today.  Thanks.

V/r

Steven Hall
Managemen and Program Analyst, N13
716 Sicard St., SE Suite 1000
Washington Navy Yard, DC 20374-5140
Tel: (202) 685-8408
DSN: 288-8408
Fax: (202) 433-2389
(301) 801-6506 (please call me on my personal cellular)
Steven.H.Hall@comcast.net (personal email)

**FOR OFFICIAL USE ONLY-PRIVACY SENSITIVE** This e-mail, including any attachments, may contain information that requires protection from unauthorized disclosure.  Do not disseminate this e-mail, or its contents, to anyone who does not have an official need for access.  Any misuse or unauthorized disclosure can result in both civil and criminal penalties.

P2                                    EXJ

## Hall, Steven H CIV CNIC HQ, N13

| | |
|---|---|
| **From:** | Hall, Steven H CIV CNIC HQ, N13 |
| **Sent:** | Friday, November 27, 2015 8:35 |
| **To:** | 'Steven.H.Hall@comcast.net' |
| **Subject:** | FRAMED |
| **Signed By:** | steven.h.hall3@navy.mil |

-----Original Message-----
From: Hall, Steven H CIV CNIC HQ, N13
Sent: Thursday, November 19, 2015 8:11 AM
➔ To: Joanne Dekker
Cc: Hall, Steven H CIV CNIC HQ, N13; steven.h.hall@comcas.net
Subject: FRAMED

Ms. Dekker,

Clearly I was framed as confirmed from the first page of the information I provided you last night.  In late October 2012, I discussed with Mr. Roy Neigh FMLA and he stated that he would get back with me, but that never happened.  Around November 19, 2012, I contacted Mr. Neigh wanting to know the status of FMLA, but I was gaffed off a second time.  On November 20, 2012, I requested worker's compensation because it was clear at that time DHS Management was not going to offer FMLA.  Mr. Neigh and DHS Management was already aware that the air quality test results would indicate that the air quality was within normal standards and this would justify documenting AWOL on my time sheets starting November 21, 2012.  DHS Management did not allow me a window of opportunity (10-30 days) to challenge the air quality results before documenting AWOL.

From September 24, 2012 through November 20, 2012 (27 days), DHS Management had no problem documenting Leave Without Pay while waiting on favorable air quality results.  The favorable air quality results excluded Large and Types of Particles (Amorphous Debris; dust) regarding HMD 1 and DHS Security trailers, HMD2 Local Area Network (LAN) Server room, Hitchcock Hall (Bldg. 37), and all areas/locations Outdoors.  I had worked and visited all areas/locations inside and outdoors while performing escorts and tours onboard the St. Elizabeth's campus along with rising and wiping down golf carts outdoors of HMD 1 and HMD 2 trailers.

➔ On April 19, 2013, Mr. Chris Mills admitted that outdoors air quality tests for HMD 1 and HMD 2 trailers were not provided to me as confirmed by a DHS FOIA investigation.  I would have challenged the air quality test if Mr. Mills had provided this information to me in November 2012 and this would have prevented Mr. Neigh from documenting AWOL from November 21, 2012 through February 18, 2012.

V/r
Steven Hall
Managemen and Program Analyst, N13
716 Sicard St., SE Suite 1000
Washington Navy Yard, DC 20374-5140
Tel: (202) 685-8408
DSN: 288-8408
Fax: (202) 433-2225
Cellular: (301) 801-6506  (Please call this number during working hours)   i3        EXJ

**\*\*FOR OFFICIAL USE ONLY-PRIVACY SENSITIVE\*\*** This e-mail, including any attachments, may contain information that requires protection from unauthorized disclosure.  Do not disseminate this e-mail, or its contents, to anyone who does

## Hall, Steven H CIV CNIC HQ, N1

| | |
|---|---|
| **From:** | Rosemary Dettling <rdettling@felsc.com> |
| **Sent:** | Friday, November 27, 2015 11:56 |
| **To:** | Hall, Steven H CIV CNIC HQ, N13 |
| **Cc:** | Joanne Dekker |
| **Subject:** | [Non-DoD Source] Re: Revoking Settlement Agreement |

Steven,

The agency gave us their final offer. They told us they do not want to be presented with more settlement demands. I will be out of town at a hearing, starting Monday. Joanne will tell the agency that you want to revoke the agreement. The agency will want to get the judge on the phone. The judge will then tell you if you can revoke the agreement. Our office is closed today. You will most likely hear from Joanne on Monday.


Rosemary Dettling, Esq.
Federal Employee Legal Services Center
1629 K Street, NW, Ste. 300
Washington, DC 20006
Tel. 202-3904741
Fax 202-379-9772


> On Nov 27, 2015, at 7:40 AM, Hall, Steven H CIV CNIC HQ, N13 <steven.h.hall3@navy.mil> wrote:
>
> Ms. Dekker and Ms. Dettling,
>
> I am requesting that one of you at least respond to my request to revoke settlement agreement no later than 2pm today.  Thanks.
>
> V/r
>
> Steven Hall
> Managemen and Program Analyst, N13
> 716 Sicard St., SE Suite 1000
> Washington Navy Yard, DC 20374-5140
> Tel: (202) 685-8408
> DSN: 288-8408
> Fax: (202) 433-2389
> (301) 801-6506 (please call me on my personal cellular)
> Steven.H.Hall@comcast.net (personal email)
>
> **FOR OFFICIAL USE ONLY-PRIVACY SENSITIVE** This e-mail, including any attachments, may contain information that requires protection from unauthorized disclosure.  Do not disseminate this e-mail, or its contents, to anyone who does not have an official need for access.  Any misuse or unauthorized disclosure can result in both civil and criminal penalties.
>
>

14            EX J

## Hall, Steven H CIV CNIC HQ, N13

| | |
|---|---|
| **From:** | Hall, Steven H CIV CNIC HQ, N13 |
| **Sent:** | Friday, November 27, 2015 12:15 |
| **To:** | 'Rosemary Dettling' |
| **Cc:** | Joanne Dekker |
| **Subject:** | Revoking Settlement Agreement |
| **Signed By:** | steven.h.hall3@navy.mil |

Of course the agency don't want to be presented with more demands based on the fact that the current settlement agreement benefits the agency.  If the judge tells me that I can or cannot revoke the agreement, will the court date still take place on Thursday, December 3, 2015?

Steven

-----Original Message-----
From: Rosemary Dettling [mailto:rdettling@felsc.com]
Sent: Friday, November 27, 2015 11:56 AM
To: Hall, Steven H CIV CNIC HQ, N13
Cc: Joanne Dekker
Subject: [Non-DoD Source] Re: Revoking Settlement Agreement

Steven,

The agency gave us their final offer. They told us they do not want to be presented with more settlement demands. I will be out of town at a hearing, starting Monday. Joanne will tell the agency that you want to revoke the agreement. The agency will want to get the judge on the phone. The judge will then tell you if you can revoke the agreement. Our office is closed today. You will most likely hear from Joanne on Monday.


Rosemary Dettling, Esq.
Federal Employee Legal Services Center
1629 K Street, NW, Ste. 300
Washington, DC 20006
Tel. 202-3904741
Fax 202-379-9772


> On Nov 27, 2015, at 7:40 AM, Hall, Steven H CIV CNIC HQ, N13 <steven.h.hall3@navy.mil> wrote:
>
> Ms. Dekker and Ms. Dettling,
>
> I am requesting that one of you at least respond to my request to revoke settlement agreement no later than 2pm today.  Thanks.
>
> V/r
>
> Steven Hall
> Managemen and Program Analyst, N13

15                    EXJ

1

---

**XFINITY Connect**                                                        **Steven.H.Hall@comcast.net**
                                                                                    + Font Size -

---

**Revoking Settlement Agreement**

---

**From :** Steven H CIV CNIC HQ Hall, N13 <steven.h.hall3@navy.mil>          Fri, Nov 27, 2015 02:07 PM
                                                                                    1 attachment
**Subject :** Revoking Settlement Agreement

**To :** Rosemary Dettling <rdettling@felsc.com>

**Cc :** Joanne Dekker <jdekker@felsc.com>, Steven H Hall <Steven.H.Hall@comcast.net>

Ms. Dettling,

I forgot to tell you that I was under the impression that either the judge made a pre-determined decision/ruling that my MSPB and 5 EEO complaints would be dropped or that Ms. Dekker and Ms. Byers agreed that my MSPB and all EEO complaints would be dropped.  For this reason, I never said anything during or after the Pre-hearing conference because no one had ask me if I agreed to drop the MSPB and 5 EEO cases.

Steven

-----Original Message-----
From: Hall, Steven H CIV CNIC HQ, N13
Sent: Friday, November 27, 2015 12:15 PM
To: 'Rosemary Dettling'
Cc: Joanne Dekker
Subject: Revoking Settlement Agreement

Of course the agency don't want to be presented with more demands based on the fact that the current settlement agreement benefits the agency.  If the judge tells me that I can or cannot revoke the agreement, will the court date still take place on Thursday, December 3, 2015?

Steven

-----Original Message-----
From: Rosemary Dettling [mailto:rdettling@felsc.com]
Sent: Friday, November 27, 2015 11:56 AM
To: Hall, Steven H CIV CNIC HQ, N13
Cc: Joanne Dekker
Subject: [Non-DoD Source] Re: Revoking Settlement Agreement

Steven,

The agency gave us their final offer. They told us they do not want to be presented with more settlement demands. I will be out of town at a hearing, starting Monday. Joanne will tell the agency that you want to revoke the agreement. The agency will want to get the judge on the phone. The judge will then tell you if you can revoke the agreement. Our office is closed today. You will most likely hear from Joanne on Monday.


Rosemary Dettling, Esq.
Federal Employee Legal Services Center
1629 K Street, NW, Ste. 300
Washington, DC 20006
Tel. 202-3904741
Fax 202-379-9772


> On Nov 27, 2015, at 7:40 AM, Hall, Steven H CIV CNIC HQ, N13 <steven.h.hall3@navy.mil> wrote:
>
> Ms. Dekker and Ms. Dettling,
>
> I am requesting that one of you at least respond to my request to revoke settlement agreement no later than 2pm today. Thanks.
>
> V/r

16                                        EX J

**XFINITY Connect**                                                    Steven.H.Hall@comcast.ne

+ Font Size -

**Termination of Attorneys regarding MSPB No. DC-0752-14-0243-I-1**

**From :** Steven Hall <Steven.H.Hall@comcast.net>                    Sun, Nov 29, 2015 09:40 PM

**Subject :** Termination of Attorneys regarding MSPB No. DC-0752-14-0243-I-1

**To :** Letitia Byers <Letitia.Byers@hq.dhs.gov>

**Cc :** Steven <steven.h.hall@comcast.net>

Ms. Byers,

I have terminated Ms. Dettling and Ms. Dekker as confirmed by the below email.  Also, I am requesting that me and you contact Judge
Hudson and discuss me revoking the settlement agreement.  Thank you.

Mr. Hall

**From:** "Steven" <Steven.H.Hall@comcast.net>
**To:** "Rosemary Dettling" <rdettling@felsc.com>, JDekke@felsc.com
**Cc:** "Steven" <steven.h.hall@comcast.net>
**Sent:** Saturday, November 28, 2015 4:39:16 PM
**Subject:** Termination of Attorneys regarding MSPB No. DC-0752-14-0243-I-1

Ms. Rosemary Dettling and Ms. Joanne Dekker,

I have decided to move in a different direction based on the fact that I was being ill-advised, misrepresented, and that the MSPB judge
witness incompetence during the prehearing conference.  Immediately your assistance is no longer required and I am terminating our
working relationship.

Steven H. Hall
United States Navy Chief Petty Officer, Retired
Veterans Affairs Service-connected Disabled Veteran

17                              EXJ

# ATTACHMENT 4

| | |
|---|---|
| **From:** | Steven Hall |
| **To:** | Byers, Letitia |
| **Cc:** | Steven |
| **Subject:** | Termination of Attorneys regarding MSPB No. DC-0752-14-0243-I-1 |
| **Date:** | Sunday, November 29, 2015 9:41:03 PM |

Ms. Byers,

I have terminated Ms. Dettling and Ms. Dekker as confirmed by the below email. Also, I am requesting that me and you contact Judge Hudson and discuss me revoking the settlement agreement.  Thank you.

Mr. Hall

**From:** "Steven" <Steven.H.Hall@comcast.net>
**To:** "Rosemary Dettling" <rdettling@felsc.com>, JDekke@felsc.com
**Cc:** "Steven" <steven.h.hall@comcast.net>
**Sent:** Saturday, November 28, 2015 4:39:16 PM
**Subject:** Termination of Attorneys regarding MSPB No. DC-0752-14-0243-I-1

Ms. Rosemary Dettling and Ms. Joanne Dekker,

I have decided to move in a different direction based on the fact that I was being ill-advised, misrepresented, and that the MSPB judge witness incompetence during the prehearing conference.  Immediately your assistance is no longer required and I am terminating our working relationship.

Steven H. Hall
United States Navy Chief Petty Officer, Retired
Veterans Affairs Service-connected Disabled Veteran

18                                        EX J

**XFINITY Connect**

Steven.H.Hall@comcast.net
- Font Size

---

**Requesting That The Do Not Admit (DNA) Restriction Is Lifted**

---

**From :** Steven Hall <Steven.H.Hall@comcast.net>

**Subject :** Requesting That The Do Not Admit (DNA) Restriction Is Lifted

**To :** Janene Corrado <Janene.Corrado@hq.dhs.gov>, Dorthea Hammond
<Dorthea.Hammond@hq.dhs.gov>

**Cc :** Steven <steven.h.hall@comcast.net>

Sat, Jul 02, 2016 12:39 PM
1 attachment

Ms. Corrado,

Mr. Taylor's Out of Office Reply is directed to you as the next point of contact.
V/r

Mr. Hall

---

**From:** "Steven" <Steven.H.Hall@comcast.net>
**To:** "John Cox" <John.Cox@hq.dhs.gov>, "Charles Taylor" <Charles.Taylor@hq.dhs.gov>
**Cc:** "letitia byers" <letitia.byers@hq.dhs.gov>, "Steven" <steven.h.hall@comcast.net>
**Sent:** Saturday, July 2, 2016 12:23:41 PM
**Subject:** Requesting That The Do Not Admit (DNA) Restriction Is Lifted

Mr. Cox and Mr. Taylor,

I was recently informed that my picture and information was recycled back on your DNA restriction list.
I have only visited the Nebraska Avenue Complex (NAC) on three occasions; early 2011, May 2013,
and July 1, 2016 and have never threatened any employees. This DNA restriction falsely singles me out
as a threat to all DHS employees at the NAC and denies me employment opportunities throughout the
agency.

I am requesting that the DNA restriction is lifted based on the fact that there is no evidence that I have
verbally or physically threatened any DHS employees from August 2010 to the present date.
Presumably, the decision to place me on the DNA restriction list are based on misinterpretations and
assumptions. For further information contact me at 7141 Chesapeake Village Blvd, Chesapeake Beach,
MD 20732, or call (301) 801-6506, or email: Steven.H.Hall@comcast.net.

Very respectfully,

STEVEN H. HALL
Veterans Affairs,
Service-connected Disabled Veteran

---

DNA Letter.pdf
474 KB

1                              Exhibit K