UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

STEVEN H. HALL,

     Plaintiff,

        v.

DEPARTMENT OF HOMELAND
SECURITY, *et al.*,

     Defendants.

Civil Action No. 16-1471 (JEB)

## MEMORANDUM OPINION

In the American judicial system, lawyers must act both as zealous advocates for their clients and as officers of the court. When an attorney loses sight of both duties in pursuit of his own ill-conceived personal objectives, however, the court must act in defense of the system's integrity. This Court, unfortunately, now finds itself in such a position with regard to attorney Glenn Stephens. Stephens briefly intervened in this case after its termination and, in so doing, filed numerous frivolous pleadings, many in direct violation of court orders. These actions, as well as the content of his filings, clearly and convincingly show that his true aim in pursuing this matter was the advancement of his own personal vendetta against *pro se* Defendant Rosemary Dettling, his former employer. As she has now reasonably responded by moving for sanctions against him, the Court will grant her Motion.

## I.    Background

The proof of this Motion's success lies in its factual pudding. For ease of digestion, in the first two sections, the Court lays out the pre-litigation relationship between Stephens and Dettling

that spurred his decision to intervene here.  The next two sections explain the procedural history of this action before and then after his ill-fated appearance.

A.  Employment

Dettling is an attorney who specializes in plaintiff-side employment cases, and her firm is called the Federal Employee Legal Services Center (FELSC).  Stephens is a lawyer who also represents that he has a Ph.D.  The origins of their feud are hardly sensational.  For fewer than three weeks in June 2015, Dettling paid Stephens to return phone calls and assist prospective clients in retaining her as counsel.  See ECF No. 26, Exh. A (Affidavit of Rosemary Dettling), ¶ 8; ECF No. 26-1 (Motion to Disqualify) at 2.  She quickly decided to part ways with Stephens, however, when he began complaining about his pay.  See Mot. to Disq. at 2.

At the same time, Dettling was also representing Plaintiff Steven Hall with several claims he was pursuing against the Department of Homeland Security – his former employer – over his own removal from service in November 2013.  See ECF No. 30 (Motion for Sanctions); ECF No. 36, Exh. 4 at 9, Exh. 5 at 3 (MSPB Billing Records); ECF No. 1 (Complaint) at 4.

B.  Post-Employment

This tale might reasonably have ended there, but, alas, reason has not been the driving force behind the events that gave rise to this Opinion.  The Court must reconstruct what happened next, though, almost exclusively from Dettling's proffered record evidence, as Stephens does not bother to contest most of the facts that she has provided.  Instead, in his Response, he spends his time attacking her character, rather than defending his conduct that is the subject of Dettling's Motion.

After his termination, Stephens immediately began cyberstalking Dettling, seeking to entice her clients to dump her as counsel, and posting negative reviews about her and her firm on

the internet.  <u>See</u> Mot. to Disq. at 2-3.  For example, he posted the following review of FELSC

on Google:

> Worked for FELSC as a consultant for two plus weeks. When
> Rosemary Dettling started trying to nickel and dime me, in violation
> of our contract, I protested, Rather than honoring the terms of our
> contract, she said my services were no longer needed. I made
> somewhere in the neighborhood of $24-$36k for her in those weeks
> ($6 a retainer). And yet she was trying to cheat me out of a dozen
> dollars by claiming she would not pay for administrative tasks that
> were expressly part of our contract. So many federal employees are
> under siege but Rosemary only wants to help those who can afford
> her steep $6 retainer and $350 an hour. She loses clients left and
> right because of this. [*sic*]

<u>Id.</u> at 2.  On other websites, Stephens made little effort to be professional, instead electing to

denigrate Dettling as "dishonest," "greedy," "creepy," and a "slimeball."  <u>Id.</u> at 2-3 (citing

attached exhibits).  He also claimed to have taken over representation of at least one of her

clients.  <u>Id.</u> at 3.

      Stephens, moreover, did not restrict himself to such public critiques.  When he found

information about Dettling's representation of other clients through internet searches, he

sometimes reached out to her personally to pan her handling of the case.  <u>Id.</u>  In one instance,

Stephens discovered that Dettling had withdrawn from a case transferred by this Court to a

federal district court in Florida.  <u>See</u> ECF No. 17 at 2-3 & Exh. F.  The Florida court had notified

Dettling that she needed to apply for *pro hac vice* admission before the case could proceed.  <u>Id.</u>

Stephens, having discovered this notification, emailed it to Dettling and her former clients, as

well as to a District of Columbia Bar representative, with a narrative indicating that Dettling may

have violated the professional code of conduct prohibiting the unauthorized practice of law.  <u>Id.</u>

He also copied Dettling and the D.C. Bar on a later single-line email to the same former clients

he was now representing, stating only: "You should file your ethics complaint against Rosemary

if you haven't already."  ECF No. 26, Exh. E.

Stephens continued this conduct in 2016, and on May 11, Dettling filed a complaint against him with the D.C. Bar's Office of Disciplinary Counsel. <u>See</u> Mot. to Disq. at 3.

    C.  <u>Procedural History Prior to Stephens's Intervention</u>

While Stephens was waging this campaign against Dettling, Hall continued to pursue a legion of employment-related claims against DHS that were pending before the Equal Employment Opportunity Commission and the Merit Systems Protection Board. <u>See</u> Compl. at 2-3. Dettling represented him in these administrative cases and, in November 2015, negotiated a settlement of his claims, allegedly with some prodding from the presiding administrative law judge at the MSPB. <u>See</u> ECF No. 36 (Opposition) at 3. Hall, however, felt the settlement was unfair and fired Dettling for pressuring him to agree to it. <u>Id.</u> at 4. While the record is a bit hazy on the timing of this termination, Plaintiff, around this same time, nevertheless signed the settlement agreement and finalized it before the agency. <u>See</u> Opp. at 4-7.

Hall quickly came down with a bad case of buyer's remorse, however, and revoked his assent shortly thereafter. <u>See</u> ECF No. 1, Exh. A (MSPB Final Order) at 2. He later changed his mind again, though, and rescinded that revocation, too. <u>Id.</u> By the time of this rescission, the record is clear that he had already fired Dettling. <u>Id.</u> In other words, Hall eventually decided to proceed with the settlement <u>after</u> he had terminated Dettling's representation. <u>See</u> Reply, Exh. A. But, at some later point, Hall changed his mind yet a third time and petitioned the MSPB to review the validity of the settlement, claiming that he had been misled into signing it and that the presiding administrative law judge had shown bias in pushing him to do so. <u>See</u> MSPB Final Order at 2.

The Board disagreed and dismissed his claim in June 2016 as being previously settled. <u>Id.</u> In so doing, the MSPB held that Hall could not show that he had been misled about the

settlement terms by any alleged misrepresentation from DHS because he had revoked the agreement and then changed his mind only after "carefully considering [his] options." Id. at 4. The Board went on to conclude that Hall's bias claim also failed because it was rooted in a theory that the ALJ had improperly discussed the weakness of his case with Dettling, despite the fact that such conversations are within the Board's applicable rules for such proceedings. Id. at 5.

Dissatisfied with this resolution, on July 15, 2016, Hall filed this *pro se* suit against DHS, the attorney who represented the agency in the administrative proceedings, FELSC, Dettling, and another FELSC attorney. In his Complaint, Hall alleged that the attorneys had misrepresented the terms of the settlement he signed. See Compl. at 1. He further accused Dettling and her firm of incompetence, asserting she had failed to fully explain a clause that restricted his ability to renege on the agreement, fraudulently executed the agreement papers, and coerced him into signing the settlement. Id. at 1, 5. Finally, he accused DHS of violating the Americans with Disabilities Act and other federal laws during his employment. Id. at 11-14.

Before Defendants could answer the Complaint, however, Hall filed a motion revising his initial claims and seeking to cancel his "demand for a jury trial and damages from" Defendants DHS and FELSC. See ECF No. 7. The Court interpreted this motion as seeking a voluntary dismissal of all Defendants except Dettling and granted his request via Minute Order on August 18, 2016. The Court further ordered Hall to show cause why it retained subject-matter jurisdiction over his remaining claims against Dettling. Id. Four days later, Hall responded by requesting that portions of the case be remanded to the MSPB, while other portions be sent to the Superior Court for the District of Columbia, most notably his ineffective-representation claims against Dettling. See ECF No. 8. This Court, accordingly, dismissed the entirety of the case on

August 25, explaining that Hall had implicitly conceded that the Court lacked jurisdiction over his extant claims against Dettling by his latest filing and his concomitant failure to provide any potential basis for such jurisdiction.  See ECF Nos. 9, 10.

      D. Stephens's Entrance

      Meanwhile, Stephens had caught wind of the existence of this suit and began making moves to intervene in it.  See Mot. to Disq. at 4.  On August 4, he emailed Dettling to say that Hall's Complaint – which he also attached – showed that there were more cases that she and her firm had "botched."  Id., Exh. F.  That very same day, Stephens also copied her on another brief email, asking her to forward Hall's email address so that he could offer to represent Hall in the suit for free.  See Mot. to Disq. at 4 (citing exhibit).  At the time, Stephens had not yet been admitted to practice before this Court.  Id.

      A few days after the Court terminated this case, Hall suddenly moved to withdraw his previous requests for a dismissal; almost simultaneously, Stephens sought leave to file an *amicus curiae* brief to establish that this Court did have jurisdiction.  See ECF Nos. 11, 13.  The Court denied the latter motion, stating in the plainest of terms that it could not be granted as the "[c]ase has been dismissed."  See ECF No. 13.  In the interests of justice, however, the Court also ordered that the parties in the case appear for a status hearing in late September.  See 9/6/16 Minute Order.  Prior to this hearing, Stephens filed an appearance to represent Hall, see ECF No. 15, which Dettling quickly responded to with her own sealed motion requesting that Stephens be disqualified from serving as counsel given that he had been cyberstalking her and that she had paid him to process the retainer agreements that were at issue in the case, thus creating a conflict of interest.  See ECF Nos. 16, 17; Mot. at 7.  Because Dettling filed her motion under seal and

Stephens failed to properly register an email with the Court to receive a copy of such motions electronically, she also overnighted a paper copy to him. <u>See</u> Mot. at 7 & Exh. K.

This bevy of motions was only the tip of the disturbing iceberg to follow. Stephens next contacted the D.C. Bar several times on September 24 to lodge ethics complaints against Dettling for an email she copied Hall on to seek his approval to file the motion for disqualification under seal. <u>Id.</u>, Exhs. L, M. Then, rather than seek to vacate the dismissal of the case or wait for the imminent hearing to discuss the same, Stephens filed a motion to amend the Complaint on September 26, though he failed to attach any such revised complaint to the motion, as required by the local rules. <u>See</u> ECF No. 18. Stephens instead spent a significant amount of space in this purported motion laying out facts related to Dettling's allegedly poor representation of other clients. <u>Id.</u> He also referred to her previous motion to disqualify him as an *ex parte* communication with this Court, even though he had been mailed a copy, and oddly attached an unrelated bar complaint against Dettling that he had encouraged her former clients to file. <u>Id.</u> at 7 & Exh. 3. Stephens also sent an email to the Chief Judge of the MSPB around this time, accusing Dettling of lying about her interactions with the ALJ in Hall's case. <u>See</u> Mot. to Disq., Exh. O.

Days later, at the scheduled hearing, this Court sought to straighten out the growing mess created by Stephens's frenetic intervention in this case. The Court, in particular, asked Stephens to articulate why it would have jurisdiction over Hall's claims and, as later memorialized in a Minute Order, explained to him that he would need to move on Plaintiff's behalf to vacate the dismissal before proceeding with any other motions activity in the suit. <u>See</u> 9/28/16 Minute Order. In addition, the Court denied Stephens's motion to amend without prejudice, directing

him that Plaintiff could "not move to amend his complaint until he has obtained a vacatur of the dismissal." 9/30/16 Minute Order.

Despite these admonitions, that very same day, Stephens mailed Dettling a Memorandum of Law Supporting Motion for Lien. See Mot., Exh. R. This "motion" purported to seek a lien for attorney fees in the amount of $15,500, though Stephens failed to send it to any other Defendants and did not file it with the Court. Id. He also later filed a motion seeking to establish jurisdiction, but did not explain why vacatur of the dismissal would be appropriate, despite this Court's direction to do so. See ECF No. 19 (self-titled "Motion for this Court find Subject Matter Jurisdiction, Motion to Vacate Order on Sealed Motion for Leave to File Document Under Seal"). Stephens also failed to wait for the Court to rule on this motion before inexplicably filing a motion for default judgment against Dettling on October 8, 2016. See ECF No. 20. It bears restating that he filed this latter motion even though the dismissal had not yet been vacated and Dettling was under no duty whatsoever to respond to the still-dismissed Complaint. Id. Worse still, three days later, he filed yet another motion, this time seeking to disqualify Dettling from representing herself as a *pro se* defendant. See ECF No. 21.

This unbelievable motions activity – typically seen only by *pro se* litigants with no conception of the rules of civil procedure – forced the Court to issue another Minute Order on October 11, again repeating that the previously filed motions must be denied as Hall would first need to succeed in vacating the dismissal before he could seek any other affirmative relief. See 10/11/16 Minute Orders. In a separate Minute Order, the Court also pointed out that Stephens should be well aware that a *pro se* litigant like Dettling could not be disqualified from representing herself. Id. The next day, the Court was obliged to hold a second status conference in this still-terminated case to try to impose some sense of order on the proceedings. As

memorialized in a Minute Order after that hearing, the Court clearly instructed all of the parties that the case would proceed in the following manner: Dettling would first file a supplemental motion renewing her request for Stephens's disqualification, and "no further motion may be filed until the Court <u>rules</u> on [that] disqualification motion." 10/12/16 Minute Order (emphasis added).

The Court might as well have saved its breath rather than issue this second admonition, as the Order had no apparent effect on Stephens's improper conduct. Just four days later, he filed another motion for entry of default against Dettling. <u>See</u> ECF No. 23. The Court denied his motion again, pointing out that it violated the Order not to file further motions before a ruling on Dettling's motion for disqualification. <u>See</u> 10/17/16 Minute Order. Stephens, however, immediately filed another response to "clarify" that he thought this motion for default was an appropriate supplement to the first motion for the same, which, as a reminder, the Court had already denied as inappropriate weeks earlier. <u>See</u> ECF No. 24.

Still undeterred, Stephens then filed a notice to withdraw his motion to disqualify Dettling, despite the fact that this motion, too, had already been denied weeks earlier. <u>See</u> ECF No. 28. In this new filing, Stephens also inexplicably continued to argue that Dettling should be disqualified from representing herself, ignoring the Court's previous explanation that a *pro se* litigant could not be so disqualified. <u>Id.</u> Beyond all reason, he also attempted to file another amended complaint six days later, which this Court again struck. <u>See</u> ECF No. 29; 10/27/16 Minute Order.

To cap things off, on October 30, perhaps fearing his disqualification was imminent, Stephens moved to withdraw his appearance in the case, claiming that Plaintiff could no longer "afford counsel." <u>See</u> ECF No. 31. In response, this Court granted the request, denied as moot

Dettling's motion for his disqualification, and ordered a third status hearing to determine whether Plaintiff (*pro se* once again) still planned to seek vacatur of the dismissal. See 10/31/16 Minute Order. Before that hearing, however, Stephens filed yet another motion, this time to purportedly supplement the amended complaint that the Court had already stricken from the record. See ECF No. 32. The Court struck this new motion, too, "as it was inexplicably filed by counsel who has withdrawn from the case." 11/1/16 Minute Order.

At the subsequent hearing, Hall expressed a desire to return the case to the posture it had been in before Stephens' ill-fated intervention so that he could pursue his claims in other fora. See 11/14/2016 Minute Order. As a result, the last motion left to be resolved in this still-terminated case is the intact Motion for Sanctions against Stephens that Dettling pressed in the midst of his final flurry of activity. See ECF No. 30.

True to form, Stephens has not responded appropriately to the accusations leveled against him, first requesting a 24-day extension for leave to file his response, see ECF No. 35, and then filing two separate responses within three days thereafter. See ECF Nos. 36, 38. The Court, accordingly, denied his request for an extension as moot and struck his latter response as improperly duplicative. See 11/7/16 Minute Order. At the same time, Stephens also filed a request for transcripts from all previous status hearings in the case, and the Court instructed him that he could obtain such transcripts directly from the court reporter. See 11/9/16 Minute Order. Since then, he has also filed a third response, focused almost exclusively on attacking both Dettling and this Court, including, *e.g.*, a lengthy footnote on "misplaced empathy" that quotes questions and answers given during the Court's Senate confirmation hearings. See ECF No. 42; Id. at 4-5 n.4. This third Response was struck as Stephens had never sought leave to supplement his initial response before filing it. See 11/29/2016 Minute Order. The Motion for Sanctions

against him is now ripe, regardless, and the Court finds ample grounds upon which sanctions should be imposed.

## II.    Legal Standard

In seeking sanctions here, Dettling principally invokes 28 U.S.C. § 1927. That section provides that "any attorney . . . who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." To qualify as unreasonable and vexatious behavior, there must be "evidence of recklessness, bad faith, or improper motive" present in the attorney's conduct. LaPrade v. Kidder Peabody & Co., Inc., 146 F.3d 899, 906 (D.C. Cir. 1998) (quoting Travelers Ins. v. St. Jude Hosp. of Kenner, La., 38 F.3d 1414, 1416-17 (5th Cir. 1994)). A court may infer this malicious intent "from a total lack of factual or legal basis" in an attorney's filings. Knorr Brake Corp. v. Harbil, Inc., 738 F.2d 223, 227 (7th Cir. 1984). The issuance of such an award is ultimately vested in the discretion of the district court. See, e.g., Lipsig v. Nat'l Student Mktg. Corp., 663 F.2d 178, 181-82 (D.C. Cir. 1980).

This statutory sanction supplements, but does not displace, the court's inherent authority to impose sanctions necessary to achieve the orderly and expeditious disposition of cases before it. See Chambers v. NASCO, Inc., 501 U.S. 32, 46-47 (1991). Under this broader authority, which Dettling also cites, a federal court may sanction an attorney who has "acted in bad faith, vexatiously, wantonly, or for oppressive reasons." Id. at 45 (quoting Aleyska Pipeline Serv. Co. v. Wilderness Soc'y, 421 U.S. 240, 258-59 (1975)). Actions that "evince[] bad faith or an egregious disrespect for the Court or judicial process" may garner sanctions, including contempt citations, fines, awards of attorney fees, and such other orders and sanctions as the court finds

necessary. <u>Ransmeier v. Mariani</u>, 718 F.3d 64, 68 (2d Cir. 2013); <u>see also</u> <u>Shepherd v. Am.</u>

<u>Broad. Cos.</u>, 62 F.3d 1469, 1477 (D.C. Cir. 1995).

## III.   Analysis

The facts underlying this Motion largely speak for themselves.  Dettling requests that this

Court sanction Stephens for his frivolous pleadings, misrepresentations, contemptuous behavior,

and failure to abide by the Court's orders. <u>See</u> Mot. at 2-3.  She asks, in particular, that this

Court refer his conduct to the D.C. Bar, find him in contempt, enjoin him from filing further

pleadings in this matter, and order him to pay costs and expenses that resulted from his improper

behavior in this case. <u>Id.</u> at 33.

As mentioned above, rather than seek to justify his conduct, Stephens doubles down in

his Response on his attacks against Dettling's character. <u>See</u> Resp. (focusing exclusively on

Dettling's honesty, billing practices, and past performance in other cases).  In essence, he seems

to argue that the Court should discount her accounting of his misdeeds in this litigation because

she is untrustworthy.  But the Court need only look to the record to find clear and convincing

evidence that Stephens intentionally and maliciously disregarded his professional duties here.

Although the bar for imposing Section 1927 sanctions is high, his conduct rises to the

challenge.  Stephens's filings did not merely seek the advancement of meritless positions, but

they were also composed of largely irrelevant diatribes against Dettling that "utterly" lacked any

"colorable basis" in law. <u>See</u> <u>Patton Boggs, LLP v. Chevron Corp.</u>, 825 F. Supp. 2d 35, 42

(D.D.C. Aug. 8, 2011) (quoting <u>Kassatly v. Dynaco Acquistion Corp.</u>, 1997 WL 31104, at *3

(D.D.C. Jan. 22, 1997)).  In several instances, he filed motions to allegedly supplement filings

that this Court had already denied or stricken from the record as improper. <u>See, e.g.</u>, ECF No. 28

(Motion to Withdraw).  He also used these motions to insert extraneous attacks against Dettling's

character back into the public record – in open defiance of the Court's prior orders denying or striking his previous motions. Id. His filings, in short, were not germane to the merits of this case and easily constituted "a path that a reasonably careful attorney would have known, after appropriate inquiry, to be unsound." In re TCI Ltd., 769 F.2d 441, 445 (7th Cir. 1985); see also Robertson v. Cartinhour, 883 F. Supp. 2d 121 (D.D.C. 2012) (collecting D.C. Circuit precedents supporting imposition of Section 1927 sanctions for attorney's filing of frivolous or harassing motions); Walter v. Fiorenzo, 840 F.2d 427, 432-33 (7th Cir. 1988) (affirming Section 1927 sanctions imposed for "repeatedly raising arguments previously found to be meritless").

Nor does the Court have any difficulty finding bad faith or improper motive. Stephens's efforts did not stem from his desire to zealously represent his client, but rather from an intent to harm Dettling and smear her reputation. That purpose motivated his entry into this case as "amicus" all the way through his sudden and voluntary withdrawal. In sum, the Court finds by clear and convincing evidence that Stephens improperly sought to hijack this terminated suit solely to advance his own personal vendetta against Dettling. See Oliveri v. Thompson, 803 F.2d 1265, 1273 (2d Cir.1986) ("Like an award made pursuant to the court's inherent power, an award under § 1927 is proper when the attorney's actions are so completely without merit as to require the conclusion that they must have been undertaken for some improper purpose such as delay."). This is the definition of bad faith.

So what is the appropriate remedy? The most obvious in this type of case is to reimburse the opponent's attorney fees. The difficulty here is that Dettling proceeded as a *pro se* litigant and thus did not incur such fees. She nevertheless likely expended some money in having to defend against Stephens's frivolous motions and their attacks on her character. See Manion v. Am. Airlines, Inc., 395 F.3d 428, 432-33 (D.C. Cir. 2004) (rejecting sanctions awarding

13

defendant lost income for cost of attending hearing under Section 1927, but upholding sanctions for other related costs and expenses). The Court will thus impose sanctions against Stephens, pursuant to Section 1927, in the amount of any costs and expenses that Dettling, in an affidavit, can establish arose from Stephens's filing of ECF Nos. 20, 21, 23, 24, 28, 29, and 32, as well as those associated with her preparation of her own motion for sanctions. See First Bank of Marietta v. Hartford Underwriters Ins. Co., 307 F.3d 501 (6th Cir. 2002) (affirming sanctions for fees associated with filing successful motion for sanctions). These cited motions obliged the Court to call Defendants back into court several times in this terminated case, and Dettling is entitled to receive expenses related to these conferences as well. The Court is aware that these sums are not likely to be substantial, but it believes such sanctions will have some deterrent effect on Stephens and others who would conduct themselves in similar fashion.

The harassing and repeated nature of Stephens's filings, as well as his open disregard of the Court's repeated and clear orders to cease such behavior, justify the imposition of further sanctions under the Court's inherent authority as well. As a result, the Court will, in addition, submit this Opinion to the D.C. Bar and the District Court's Committee on Grievances, either of which may take disciplinary action. Should this Court's sanctions fail to deter him, it may need to consider additional measures to protect the institutional integrity of its proceedings and the interests of the litigants that appear before it. See Eash v. Riggins Trucking Inc., 757 F.2d 557, 561 (3d Cir. 1985) ("Commentators have also noted occasions in which, under its inherent power, a court has disbarred, suspended from practice, or reprimanded attorneys for abuse of the judicial process.").

## IV.     Conclusion

For the reasons explained above, the Court will issue a contemporaneous Order referring this matter to the D.C. Bar and the District Court's Committee on Grievances and requiring Stephens to pay any documented expenses arising from Dettling's defense against his earlier improper actions.

/s/ *James E. Boasberg*
JAMES E. BOASBERG
United States District Judge

Date:  December 1, 2016